UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                 :

UNITED STATES OF AMERICA,           :

              v.              :

CHI PING PATRICK HO, a/k/a/ "Patrick C.P. Ho,"  :     No. 17-cr-779 (KBF)
a/k/a/ "He Zhiping,"             :

                  Defendant.    :

------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNT 1 AND COUNTS 4 THROUGH 8 OF THE INDICTMENT

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel.: (212) 698-3500
Fax: (212) 698-3599

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue
34th Floor
New York, NY 10110
Tel.: (212) 390-9550

*Attorneys for Chi Ping Patrick Ho*

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 3

ARGUMENT .......................................................................................................... 5

POINT I  THE INDICTMENT'S REPEATED ALLEGATIONS THAT DR. HO WAS A "DOMESTIC CONCERN" ARE INCONSISTENT WITH THE COUNTS THAT ALLEGE HE VIOLATED § 78DD-3 OR THAT HE CONSPIRED TO DO SO ............ 7

    A.    Because The Indictment Alleges That Dr. Ho Was A "Domestic Concern," He Cannot Be Guilty Of Violating § 78dd-3, Which Expressly Does Not Apply To Domestic Concerns ............................................................................. 7

    B.    Because One Object Of The Conspiracy Charged In Count 1 Is Legally Defective, That Count Must Be Dismissed ........................................................ 11

POINT II  COUNTS 6 THROUGH 8 DO NOT ALLEGE VIOLATIONS OF § 1956(A)(2)(A), AND EVEN IF THEY DID THE PROSECUTION OF DR. HO ON THESE COUNTS WOULD VIOLATE DUE PROCESS ...................................... 12

    A.    The Wires At Issue In This Case Were Neither "To" Nor "From" The United States, And Therefore Do Not Fall Within § 1956(a)(2)(A ..................... 12

    B.    Prosecution Of Dr. Ho For Money Laundering Based On The Three Wires Sent From Hong Kong To Dubai Or Uganda Would Violate His Right To Due Process ......................................................................................................... 19

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

CASES

*Crockett Telephone Co. v. FCC,*
   963 F.2d 1564 (D.C. Cir. 1992) ..................................................................14

*Griffin v. United States,*
   502 U.S. 46 (1991) ..................................................................................12

*Marinello v. United States,*
   138 S. Ct. 1101 (2018) ...........................................................................10

*Nwozuzu v. Holder,*
   726 F.3d 323 (2d Cir. 2013) .....................................................................15

*RJR Nabisco, Inc. v. European Community,*
   --- U.S. ---, 136 S. Ct. 2090 (2016) ..........................................................17

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   513 B.R. 222 (S.D.N.Y. 2014) .................................................................20

*Stromberg v. California,*
   283 U.S. 359 (1931) ...............................................................................12

*United States v. Al Kassar,*
   660 F.3d 108 (2d Cir. 2011) .....................................................................19

*United States v. All Assets Held at Bank Julius Baer & Co.,*
   251 F. Supp. 3d 82 (D.D.C. 2017) ......................................................18-19

*United States v. Bordeaux,*
   No. 17-cr-486, --- F.3d ---, 2018 WL 1473693 (2d Cir. Mar. 27, 2018) ...........8

*United States v. Budovsky,*
   No. 13-cr-368, 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) .......................20

*United States v. Cullen,*
   499 F.3d 157 (2d Cir. 2007) .....................................................................10

*United States v. Dauray,*
   215 F.3d 257 (2d Cir. 2000) .....................................................................10

*United States v. Davis,*
   689 F.3d 179 (2d Cir. 2012) .....................................................................21

*United States v. Davis,*
   905 F.2d 245 (9th Cir. 1990) ....................................................................21

*United States v. Dinero Express, Inc.,*
    313 F.3d 803 (2d Cir. 2002)...................................................................15

*United States v. Garcia,*
    992 F.2d 409 (2d Cir. 1993)..................................................................12

*United States v. Gastelum,*
    273 F. App'x 524 (7th Cir. 2008) .........................................................18

*United States v. Harris,*
    79 F.3d 223 (2d Cir. 1996).....................................................................14

*United States v. Hawit,*
    No. 15-cr-252, 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017) ....................... 15, 16-17

*United States v. Hoskins,*
    123 F. Supp. 3d 316 (D. Conn. 2015) .....................................................9

*United States v. Hurtado,*
    38 F. App'x 661 (2d Cir. 2002) .............................................................18

*United States v. Krasinski,*
    545 F.3d 546 (7th Cir. 2008) .................................................................18

*United States v. Lanier,*
    520 U.S. 259 (1997)...............................................................................10

*United States v. Lloyds TSB Bank PLC,*
    639 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................... 20-21

*United States v. Mohammad-Omar,*
    323 F. App'x 259 (4th Cir. 2009) ..........................................................21

*United States v. Mostafa,*
    965 F. Supp. 2d 451 (S.D.N.Y. 2013)............................................... 19-20

*United States v. Peterson,*
    394 F.3d 98 (2d Cir. 2005).....................................................................14

*United States v. Santos,*
    553 U.S. 507 (2008)...............................................................................16

*United States v. Savage,*
    67 F.3d 1435 (9th Cir. 1995) .................................................................18

*United States v. Yousef,*
    327 F.3d 56 (2d Cir. 2003).....................................................................19

*Williams v. N. Carolina,*
    317 U.S. 287 (1942) ........................................................................12

*Yates v. United States,*
    354 U.S. 298 (1957) .......................................................................12

## STATUTES

15 U.S.C. § 78dd-2 ....................................................................... *passim*

15 U.S.C. § 78dd-3 ....................................................................... *passim*

18 U.S.C. § 371 ....................................................................................1, 5

18 U.S.C. § 1956(a)(2)(A) ........................................................... *passim*

18 U.S.C § 1956(c) ..................................................................................19

18 U.S.C. § 1956(f) ...........................................................16, 17, 19, 21

18 U.S.C. § 1956(h) ........................................................1, 2, 4, 22

## LEGISLATIVE HISTORY

S. Rep. No. 99-433 (1986) .....................................................................17

S. Rep. No. 105-277 (1998) .....................................................................8

## OTHER AUTHORITIES

AMERICAN HERITAGE COLLEGE DICTIONARY (4TH ED. 2004) .................. 13-14

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988) ...................... 13-14

Defendant Chi Ping Patrick Ho respectfully moves to dismiss counts 1 and 4 through 8 of the indictment. As detailed below, the government has ignored the fundamental distinction between the provisions of the Foreign Corrupt Practices Act ("FCPA") applicable to domestic concerns and those applicable to non-domestic concerns. Here, the two counts applicable to non-domestic concerns, as well as the fatally-flawed conspiracy count, should be dismissed. Similarly, the indictment ignores the explicit language of the applicable provisions of the Money Laundering Control Act ("MLCA"), as a consequence of which each of the money laundering counts should be dismissed.

Counts 2 through 5 allege substantive violations of the FCPA, arising out of two alleged schemes, the "Chad Scheme" and the "Uganda Scheme." Counts 2 and 4 allege violations of the FCPA arising out of the Chad Scheme: Count 2 alleges that Dr. Ho violated 15 U.S.C. § 78dd-2, which prohibits "domestic concern[s]" from bribing foreign officials, and count 4 alleges that Dr. Ho violated 15 U.S.C. § 78dd-3, which prohibits a person other than a "domestic concern" from doing acts "within the territory of the United States" in furtherance of a bribe of a foreign official. Counts 3 and 5 allege the same pair of violations (domestic concern/U.S. activity by non-domestic concern) with respect to the Uganda Scheme. Count 1 alleges a conspiracy in violation of 18 U.S.C. § 371. The conspiracy is alleged to have two objects: To violate Sections 78dd-2 and 78dd-3.

The problem with counts 4 and 5 is that they allege that Dr. Ho violated § 78dd-3 (in the Chad and Uganda Schemes, respectively), but the indictment repeatedly alleges that Dr. Ho is a "domestic concern" and an employee and agent of a domestic concern. Section 78dd-3 states expressly that it does not apply to domestic concerns. It was enacted 21 years after § 78dd-2 to bring entities *other than* domestic concerns within the statute. The indictment's allegation that

Dr. Ho was a "domestic concern" means that he cannot be alleged to have violated § 78dd-3. Counts 4 and 5 must therefore be dismissed. *See infra* Point I.A.

The same flaw dooms count 1. The count charges that one of the objects of the conspiracy was to violate § 78dd-3. That object is legally defective, however, because as an alleged "domestic concern," Dr. Ho could not violate § 78dd-3. The conspiracy count is therefore legally inadequate, and must be dismissed. *See infra* Point I.B.

As to the money laundering charges, counts 7 and 8 allege that Dr. Ho violated 18 U.S.C. § 1956(a)(2)(A), in connection with the Chad Scheme and the Uganda Scheme, respectively. Count 6 alleges that Dr. Ho engaged in a conspiracy to violate 18 U.S.C. § 1956(a)(2)(A) in connection with both schemes, in violation of 18 U.S.C. § 1956(h).

There are two fatal problems with counts 7 and 8. First, the allegations of the indictment and of the underlying criminal complaint show that the transfers of funds on which the government relies for these counts fall outside the ambit of the statute. The transfers were neither "*from* a place in the United States," nor "*to* a place in the United States." 18 U.S.C. § 1956(a)(2)(A) (emphasis added). The wire transfers merely passed *through* the United States, and the statute on its face does not apply to such wires. Thus, counts 7 and 8 are fatally defective. *See infra* Point II.A.

The second problem with counts 7 and 8 – and an independent basis on which to dismiss them – is that Dr. Ho's activity within the United States that was part of the alleged offense was so slight that the nexus between the alleged criminal activity and the United States is inadequate as a matter of law. Prosecuting Dr. Ho in a federal court for that activity therefore violates his rights under the due process clause. *See infra* Point II.B.

Because counts 7 and 8 are legally inadequate, count 6, which alleges a conspiracy to violate those counts, is similarly defective. *See id.* Dismissal is therefore well warranted.

## Background

The indictment charges Dr. Ho with attempting to bribe foreign officials in Chad and in Uganda during the period 2014-16 on behalf of a Shanghai-based energy conglomerate (the "Chinese Energy Company"). (*See* Indictment ¶¶ 2-3, 5-8, ECF No. 24.)

*Background Relevant to the FCPA Counts*

The indictment alleges that Dr. Ho violated 15 U.S.C. § 78dd-2 twice, once in connection with alleged efforts to bribe the President of Chad, and again in connection with alleged efforts to bribe the Ugandan Foreign Minister. Insofar as relevant here, § 78dd-2 makes it a crime for a "domestic concern," its agents or stockholders, to use the mails or wires of the United States in furtherance of payment of a bribe to a foreign public official. *See* 15 U.S.C. § 78dd-2. In support of its claim as to § 78dd-2, the indictment repeatedly alleges that Dr. Ho was a "domestic concern." (*See* Indictment ¶¶ 2 ("the defendant, and others known and unknown, being a domestic concern and an officer, director, employee, and agent of a domestic concern[,] and a stockholder thereof, . . ."), 5 (same), 6 (same).)

The indictment also alleges that Dr. Ho's activities in connection with the very same schemes that underlie the two § 78dd-2 counts also violated § 78dd-3, which makes it a crime for a person or entity "corruptly" to use the mails or another instrumentality of interstate commerce or to "do any . . . act in furtherance" of a bribe of a foreign public official "while in the territory of the United States." *See* 15 U.S.C. § 78dd-3. By its express terms, § 78dd-3 does not apply to activity by domestic concerns. *See id.*

*Background Relevant to the Money Laundering Counts*

Count 6 charges Dr. Ho with conspiracy to engage in money laundering (18 U.S.C.

§ 1956(h)), and counts 7 and 8 charge him with money laundering (18 U.S.C. § 1956(a)(2)(A)),

in connection with the Chad Scheme and the Uganda Scheme, respectively. Section

1956(a)(2)(A) provides that it is a crime to "transmit . . . funds":

> [i] from a place in the United States to or through a place outside of the United
> States or [ii] to a place in the United States from or through a place outside of the
> United States
>
> (A)　　with the intent to promote the carrying on of specified unlawful activity . . . .

The government contends that Dr. Ho violated this provision when he "transmitted and caused to

be transmitted funds from China to and through the United States, and from the United States to

foreign countries." (*See* Indictment ¶¶ 11, 12.)

The only wires that the government identifies as giving rise to these violations, however,

are ones that were sent from Hong Kong to Dubai and Uganda. There were three such wires, as

follows:

- March 25, 2015 payment from the Hong Kong account of the Chinese Energy Company
  or an alleged affiliate of the Chinese Energy Company (the "NGO") to the Dubai account
  belonging to the business of Dr. Ho's alleged co-conspirator, Cheikh Gadio, allegedly as
  part of the Chad Scheme (*see* Complaint ¶¶ 29(f), 30, ECF No. 1);

- July 3, 2015 payment from the Hong Kong account of the Chinese Energy Company or
  the NGO to the same Dubai account, also allegedly as part of the Chad Scheme (*see*
  Complaint ¶ 31(e)); and

- May 6, 2016 payment from the Hong Kong account of the Chinese Energy Company or the NGO to the Kampala, Uganda account belonging to a Ugandan charitable foundation, allegedly as part of the Uganda Scheme, (*see* Complaint ¶ 41(a-c)).

According to the complaint, these wires – which originated outside of the United States and terminated outside of the United States – satisfied § 1956(a)(2)(A) because they travelled ***through*** a bank in the United States. (*See* Complaint ¶¶ 30 (". . . through a bank in New York, New York, . . ."), 31(e) (same), 41(c) (same).) The indictment similarly describes the wires as being "from Hong Kong, ***through*** New York, New York, to an account in Dubai," (Indictment ¶¶ 4(f), 4(g) (emphasis added)), or "from Hong Kong, ***through*** New York, New York, to an account in Uganda," (*id.* ¶ 4(i) (emphasis added)).

## **Argument**

The government has charged that Dr. Ho's alleged participation in the Chad Scheme and his alleged participation in the Uganda Scheme each violated both of 15 U.S.C §§ 78dd-2 and 78dd-3. However, the language and the legislative history of § 78dd-3 (which was added to the FCPA 21 years after it was enacted) make clear that § 78dd-3 was intended not to apply to domestic concerns or their agents. Congress's concern in adding § 78dd-3 to the FCPA was to bring within the ambit of the statute persons or entities who were not already covered by it, *i.e.*, who were not issuers, domestic concerns, or their agents. Therefore, it is improper as a matter of law to charge both statutes. Because the indictment alleges, and the grand jury presumably found, that Dr. Ho was a domestic concern, he cannot be charged with violating § 78dd-3. *See infra* Point I.A.

Because the first count of the indictment charges a § 371 conspiracy with two objects, both objects must be legally sound for the count to be valid. But the second object of the alleged conspiracy was to violate § 78dd-3, which Dr. Ho, as an alleged domestic concern, could not do.

The conspiracy's second object is therefore legally defective, and the conspiracy count must be dismissed. *See infra* Point I.B.

The plain language of the money laundering statute, § 1956(a)(2)(A), mandates that the transmission of funds constituting the *actus reus* for the offense must be either [i] "*from* a place in the United States to or through a place outside of the United States" or [ii] "*to* a place in the United States from or through a place outside of the United States." But the wires identified by the government are neither of these. They are *from* a place outside of the United States (Hong Kong) *to* a place outside of the United States (Dubai and Uganda). The government itself describes the wires as going *through* the United States. But that is not a violation of § 1956(a)(2)(A). Temporarily passing "through" a correspondent bank in the United States is not the same as coming "from" or going "to" the United States. The terms are not equivalent, and they are each used in the same statute to convey different meanings. The wires in this case went through the United States, but neither to it nor from it, and they therefore do not fall within the clear language of § 1956(a)(2)(A). The money laundering counts must be dismissed. *See infra* Point II.A.

Even if the wires satisfied the requirements of § 1956(a)(2)(A), which they do not, the counts would still have to be dismissed because the nexus between the alleged criminal activity giving rise to each money laundering count and the United States is so *de minimis* that it would offend principles of fairness to try Dr. Ho on either count. According to the complaint and the indictment, Dr. Ho caused funds to be sent from Hong Kong to Dubai and to Uganda. That the wires would pass "through" the United States was a result of the decisions and operations of a private party (the bank), that could not be reasonably anticipated by Dr. Ho. Predicating federal

criminal jurisdiction on the acts of a private party unrelated to the defendant violates his right to

due process. *See infra* Point II.B.

**POINT I**

**THE INDICTMENT'S REPEATED ALLEGATIONS THAT DR. HO
WAS A "DOMESTIC CONCERN" ARE INCONSISTENT WITH
THE COUNTS THAT ALLEGE HE VIOLATED § 78dd-3 OR
THAT HE CONSPIRED TO DO SO**

As noted above, the indictment alleges Dr. Ho's participation in two "schemes," the Chad

Scheme and the Uganda Scheme. Each scheme is the subject of two counts of the indictment.

Count 2 alleges that the Chad Scheme violates 15 U.S.C. § 78dd-2, and count 4 alleges that the

Chad Scheme violates 15 U.S.C. § 78dd-3. Likewise, count 3 alleges that the Uganda Scheme

violates § 78dd-2, and count 5 alleges that the Uganda Scheme violates § 78dd-3.

**A.      Because The Indictment Alleges That Dr. Ho Was A "Domestic Concern," He
         Cannot Be Guilty Of Violating § 78dd-3, Which Expressly Does *Not* Apply
         To Domestic Concerns**

Section 78dd-2 proscribes certain foreign trade practices – specifically, the payment of

bribes to foreign governmental officials in order to obtain or retain business – by a "domestic

concern," its owners or agents. Section 78dd-3 proscribes essentially the same foreign trade

practices by one who undertakes any steps "while in the territory of the United States," in

furtherance of those practices. Section 78dd-2 applies only to "domestic concerns" and their

agents. By contrast, § 78dd-3, which is titled "Prohibited Foreign Trade Practices by Persons

Other Than . . . Domestic Concerns," states that it applies only to persons "other than . . . a

domestic concern."

The Indictment alleges repeatedly that Dr. Ho was a domestic concern. (*See* Indictment

¶¶ 2 ("***the defendant***, and others known and unknown, ***being a domestic concern*** and an officer,

director, employee, and agent of a domestic concern[,] and a stockholder thereof. . . .")

(emphasis added); 5 (same); 6 (same).) Nonetheless, counts 4 and 5 purport to charge Dr. Ho with violating § 78dd-3. Thus, counts 4 and 5 are legally defective and must be dismissed.

The legislative history of § 78dd-3, which was added to the FCPA in 1998, shows that the provision was intended to broaden the scope of the FCPA to cover persons and entities who were not already covered by it. *Cf. United States v. Bordeaux*, No. 17-cr-486, --- F.3d ---, 2018 WL 1473693, at *4 (2d Cir. Mar. 27, 2018) (using legislative history to clarify statutory purpose) (citing *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2505-06 (2014)). The Senate Committee Report for the new provision states that

> Section 4 creates a new section in the FCPA [§ 78dd-3] providing for criminal and civil penalties ***over persons not covered under the existing FCPA provisions regarding issuers and domestic concerns***.

S. Rep. No. 105-277, at *5 (1998) (emphasis added). The Report also explains that it was the express purpose of the 1998 amendments to bring the coverage of the FCPA to the level required by the Organization for Economic Cooperation and Development Convention on Combatting Bribery of Foreign Public Officials in International Business Transactions (the "OECD Convention") by expanding the coverage of the FCPA to include those who previously had been beyond its scope:

> [T]he OECD Convention calls on parties to cover 'any person'; the current FCPA covers only issuers with securities registered under the 1934 Securities Exchange Act and "domestic concerns." The Act, therefore, expands the FCPA's coverage to include all foreign persons who commit an act in furtherance of a foreign bribe while in the United States.

*See id.* at *2-3.

There is no suggestion in the legislative history that Congress intended § 78dd-3 to provide an additional basis for prosecution of those who were already subject to § 78dd-2. To the contrary, "Congress added 15 U.S.C. § 78dd-3(a), which prohibited those individuals [and]

entities *that did not already fall under other provisions of the statute* from taking action 'while in the territory' of the United States in furtherance of corrupt payments." *United States v. Hoskins*, 123 F. Supp. 3d 316, 326 (D. Conn. 2015) (citation and footnote omitted; emphasis added).

The mutual exclusivity of §§ 78dd-2 and 78dd-3 is illustrated by comparing the two statutes' elements:

| 15 U.S.C. § 78dd-2 | 15 U.S.C. § 78dd-3 |
|---|---|
| It shall be unlawful . . . | It shall be unlawful . . . |
| . . . for any domestic concern . . . or agent of such domestic concern . . . | . . . for any person **other than . . . a domestic concern** . . . |
|  | . . . **while in the territory of the United States** . . . |
| . . . to make use of the mails or any means or instrumentality of interstate commerce corruptly . . . | . . . corruptly to make use of the mails or any means or instrumentality of interstate commerce . . . |
| . . . in furtherance of an offer . . . of the giving of anything of value . . . | . . . in furtherance of an offer . . . of the giving of anything of value . . . |
| . . . to . . . any foreign official . . . | . . . to . . . any foreign official . . . |
| . . . for purposes of . . . influencing [or] inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official . . . | . . . for purposes of . . . influencing [or] inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official . . . |
| . . . in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person. | . . . in order to assist such person in obtaining or retaining business for or with, or directing business to, any person. |

This comparison shows that the only difference in the elements of §§ 78dd-2 and 78dd-3 is that the latter requires the defendant to engage in the wrongful activity "while in the territory of the United States," while the former applies only to domestic concerns and their agents. That means that if the two crimes could be charged together, as the government has done here, then any agent or owner of a domestic concern would be liable under both sections – and subject to increased punishment – so long as he was in the United States when he engaged in any portion of the alleged wrongdoing. Such a result is directly at odds with what Congress intended. The

comparison confirms that §§ 78dd-2 and 78dd-3 were meant to be mutually exclusive, and Dr. Ho cannot be charged with both.

If there were doubt as to the scope of § 78dd-3 – although, as demonstrated above, there should not be any – such doubt should be resolved in favor of a narrow construction of the statute. "[T]he canon of strict construction of criminal statutes" commands interpreting "a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal quotation marks omitted); *see also Marinello v. United States*, 138 S. Ct. 1101, 1006 (2018) ("[W]e 'have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'") (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.)); *United States v. Cullen*, 499 F.3d 157, 163 (2d Cir. 2007) (same). "Due process requires that a criminal statute 'give fair warning of the conduct that it makes a crime.'" *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964)).

Given the clear demarcation between the coverage of §§ 78dd-2 and 78dd-3, it is no surprise that almost no defendant has been criminally charged with violating both statutes. We reviewed every complaint, information, and indictment filed in cases alleging criminal violations of § 78dd-3, according to the Stanford Law School Foreign Corrupt Practices Act Clearinghouse (the "Stanford Clearinghouse"). Declaration of Katherine M. Wyman in Support of Motion to Dismiss, dated April 16, 2018 ("Wyman Decl.") ¶¶ 2-3.[1] Excluding the complaint and

---

[1]     The Stanford Clearinghouse is "a comprehensive website for all things FCPA-related," which "track[s] all FCPA-related actions brought by the SEC or DOJ since the statute's enactment in

indictment filed in this case, there were 22 such complaints, informations, and indictments (including both original indictments and superseding indictments) involving 23 separate defendants, both corporate and individual. *Id.* ¶ 4. Of these, only one superseding indictment charged any defendant with violations of both §§ 78dd-2 and 78dd-3 for the same underlying conduct. *Id.* ¶ 6. That occurred in the recent case of *United States v. Ng Lap Seng*, No. 15-cr-706 (S.D.N.Y), in which two defendants were charged with violations of both sections arising out of the same conduct (though these charges against one of the two defendants were voluntarily dismissed). *Id.* The mutually-exclusive charges appear not to have been challenged by either defendant. *Id.* The rarity of such double-charging strongly supports the conclusion set forth above, well-founded in the text of the statute, in its legislative history, and in its logic: Sections 78dd-2 and 78dd-3 are alternatives, and if conduct gives rise to a charge under § 78dd-2, as the indictment expressly alleges in this case, then it would constitute legal error also to charge under § 78dd-3.

**B.** **Because One Object Of The Conspiracy Charged In Count 1 Is Legally Defective, That Count Must Be Dismissed**

Count 1 alleges that Dr. Ho was a member of a conspiracy with two objects, to violate § 78dd-2 and to violate § 78dd-3. (*See* Indictment ¶ 1 (alleging that the defendant "did combine, conspire, confederate, and agree [with others] to commit offenses against the United States, to wit, to violate Title 15, United States Code Sections 78dd-2 and 78dd-3."); *see also id.* ¶¶ 2, 3 (alleging that it was a "part and an object of the conspiracy" to violate §§ 78dd-2 and 78dd-3, respectively).) As demonstrated, the two statutory provisions are mutually exclusive, and the

---

1977." Wyman Decl. ¶ 2. It provides, among other things, a searchable dataset of proceedings raising FCPA or FCPA-related claims. *Id.* Using the "Advanced Search" function, we searched for any "DOJ Criminal Proceeding" involving an alleged violation of 18 U.S.C. § 78dd-3 ("Anti-Bribery; Primary, Other"). *Id.* ¶ 3.

indictment's allegation that Dr. Ho was a domestic concern means that he could not be charged with a violation of § 78dd-3. Thus, the second object of the alleged conspiracy is legally defective.

Where an object of an alleged conspiracy is legally insufficient, the conspiracy allegation is itself also, necessarily, legally insufficient. *See Yates v. United States*, 354 U.S. 298, 312 (1957); *Williams v. N. Carolina*, 317 U.S. 287, 292 (1942); *Stromberg v. California*, 283 U.S. 359, 368 (1931); *see also Griffin v. United States*, 502 U.S. 46, 53-56 (1991); *United States v. Garcia*, 992 F.2d 409, 415-16 (2d Cir. 1993). Although these cases apply the rule to petit juries, the same conclusion follows for grand juries and indictments. A majority of grand jurors may have voted in favor of count 1 because they agreed that an object of the conspiracy was to violate § 78dd-3, and that legal error cannot be the predicate for a valid charge. Nor can the problem be remedied by simply striking the invalid object (paragraph 3) from the indictment, because while striking the invalid object would eliminate the risk that a trial jury's verdict would be predicated on legal error, it cannot change the fact that the grand jury's decision to indict Dr. Ho on the first count of the indictment was predicated on such error.

### POINT II

### COUNTS 6 THROUGH 8 DO NOT ALLEGE VIOLATIONS OF § 1956(a)(2)(A), AND EVEN IF THEY DID THE PROSECUTION OF DR. HO ON THESE COUNTS WOULD VIOLATE DUE PROCESS

**A.** **The Wires At Issue In This Case Were Neither "To" Nor "From" The United States, And Therefore Do Not Fall Within § 1956(a)(2)(A)**

The relevant language of § 1956(a)(2)(A) was quoted above, but we quote it again for the Court's convenience. It prohibits the transmission of funds:

> [i] from a place in the United States to or through a place outside of the United States or [ii] to a place in the United States from or through a place outside of the United States

(A)     with the intent to promote the carrying on of specified unlawful activity . . . .

The three wires on which the government predicates counts 6 and 7 went from Hong Kong to Dubai (two wires, both part of the alleged Chad Scheme), or from Hong Kong to Uganda (one wire, part of the alleged Uganda Scheme). None of them was "from a place in the United States," or "to a place in the United States."

The government presumably will contend that the wires satisfy the statute because, by virtue of their having passed through the United States, they necessarily went "to a place in the United States from . . . a place outside of the United States," and then went "from a place in the United States to . . . a place outside the United States." That is, the government will argue, the wires went from Hong Kong to the United States, and then from the United States to Dubai or Uganda.

The government's argument fails because it rests on the proposition that anytime a transfer goes "through" the United States, it also goes "to" it and "from" it. But "to," "from" and "through" each have distinct meanings. One would not say that one was coming "from New York," when one's train from Boston to Washington stops in New York along the way; rather one would say that one was going "from" Boston, "to" Washington, and "through" New York.

Dictionary definitions establish the distinct meanings of "from," "to," and "through." "From" indicates a starting point, not a midpoint. *See, e.g.*, *The American Heritage College Dictionary* 557 (4th ed. 2004) (first definition of "from": "Used to indicate a specified place or time *as a starting point*: walked home from the station") (emphasis added); *Webster's Ninth New Collegiate Dictionary* 490 (1988) (first definition of "from": "used . . . to indicate a *starting point*: (1) a place where a physical movement begins") (emphasis added). "To" indicates movement toward and reaching, not passing, another point. *The American Heritage College*

*Dictionary* 1445 (4th ed. 2004) (first definition of "to": "[i]n a direction toward *so as to reach*.")
(emphasis added); *Webster's Ninth New Collegiate Dictionary* 1238 (1988) (first definition of
"to": "used . . . to indicate movement . . . toward a place . . . or thing *reached*") (emphasis
added). By contrast, "through" denotes continuing movement. *The American Heritage College
Dictionary* 1436 (4th ed. 2004) ("through": "[i]n one side and out the opposite or another side,"
or "[b]y way of."); *Webster's Ninth New Collegiate Dictionary* 1230 (1988) ("used . . . to
indicate movement into at one side or point and out at another"; "by way of").

The fact that the very statute in question, § 1956(a)(2)(A), uses all three terms shows that
they have distinct meanings, and that Congress specifically intended to apply the terms to
distinct situations. It proscribes certain wires going "from" a place in the United States "to or
***through***" a place outside the United States, and it proscribes certain wires going "to" a place in
the United States "from or through" a place outside of the United States. The use of the three
terms in the same statute establishes that they have separate meanings. *See, e.g., Crockett
Telephone Co. v. FCC*, 963 F.2d 1564, 1570 (D.C. Cir. 1992) (concluding use of different words
"may" and "shall" in same sentence of statutory provision confirms they have different
meanings). The government's alternative interpretation – that anytime a transfer goes "through"
the United States, it also goes "to" it and "from" it – would render the term "through"
superfluous, and thereby "violate[] the well-known canon of statutory construction that a statute
should not be construed to render a word or clause inoperative." *United States v. Peterson*, 394
F.3d 98, 106 (2d Cir. 2005).

The government's argument would also be contrary to the Second Circuit's decision in
*United States v. Harris*, 79 F.3d 223, 231 (2d Cir. 1996), *cert. denied*, 519 U.S. 851 (1996). The
defendant in that case was charged with violating § 1956(a)(2)(B)(i), which prohibits

international transfers made to conceal funds and shares the same "from a place in the United States . . . or to a place in the United States" language found in § 1956(a)(2)(A). The defendant argued that a transfer of funds via wire from an account in New York to an account in Connecticut, and then from the account in Connecticut to an account in Switzerland, should be regarded as two separate transfers. If viewed as separate, neither transfer violated the statute, because the first transfer was entirely domestic and the second was not made to conceal the funds. The Second Circuit rejected that claim, explaining that because the two wires were merely "stages" in "a single plan to transfer funds," the transfer was "from New York to Switzerland." 79 F.3d at 231; *see also United States v. Dinero Express, Inc.*, 313 F.3d 803, 806 (2d Cir. 2002) ("a multi-step plan to transfer money from one location to another should be viewed as a single 'transfer' under § 1956(a)(2)") (citing *Harris*). The same analysis applies here: The alleged transfers were parts of a single plan arising from a single customer instruction directing money *from* Hong Kong *to* Dubai or *to* Uganda. Although the transfers briefly passed *through* the United States, they were neither *to* it nor *from* it under § 1956(a)(2)(A). *See United States v. Hawit*, No. 15-cr-252, 2017 WL 663542, at *8 n.12 (E.D.N.Y. Feb. 17, 2017) ("Section 1956(a)(2) . . . by its terms applies to money laundering transactions that *originate* or *terminate* in the United States . . . ." (emphasis added)).

"'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *See Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). It is thus significant that § 1956(a)(1), which is part of the same act of Congress as § 1956(a)(2), does

apply to transfers that pass "through" a financial institution in the United States.[2]  Unlike

§ 1956(a)(1), § 1956(a)(2)(A) does not apply to transfers that are merely through a U.S. financial

institution.  *See generally United States v. Santos*, 553 U.S. 507, 514 (2008) (applying rule of

lenity to interpretation of MLCA with respect to interpretation of the term "proceeds": "From

the face of the statute, there is no more reason to think that 'proceeds' means 'receipts' than there

is to think that 'proceeds' means 'profits.' Under a long line of our decisions, the tie must go to

the defendant.").

> Nor can the indictment be sustained by reference to § 1956(f), which provides that:
>
> There is extraterritorial jurisdiction over the conduct prohibited by this section if –
>
> (1)    the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and
>
> (2)    the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

On its face, § 1956(f) only addresses the court's jurisdiction over conduct that is otherwise

prohibited by the statute.  It does not create a separate offense.  Specifically, § 1956(f) provides

that "[t]here is exterritorial jurisdiction *over the conduct prohibited by [§ 1956]*" if certain

conditions are satisfied.  But, for the reasons stated above, the three wires that are at issue in this

case do not constitute "conduct prohibited by" § 1956(a)(2)(A), because they are not "from" or

"to" "a place in the United States."  *See Hawit*, 2017 WL 663542 at *8 n.12 ("[W]here, as here,

the government seeks to charge a Section 1956(a)(2) money laundering offense against a foreign

defendant, the application of the statute is extraterritorial, and the charging instrument must

---

[2]    Section 1956(a)(1) proscribes certain types of "transaction[s]," a term defined in § 1956(c)(3) to include a "payment, transfer, or delivery by, *through*, or to a financial institution" (emphasis added)).

include allegations that meet all of the elements of the charged offense under the section as well as subsection (f).").[3]

That point is further underscored by the legislative history regarding the jurisdictional limitations of § 1956(f). The Senate Report specifically noted that it was "not the [Judiciary] Committee's intention to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws." S. Rep. No. 99-433, at 14 (1986). Thus, the bill expressly limited jurisdiction to "situations in which the interests of the United States are involved, either because the defendant is a U.S. citizen or because the transaction occurred in whole or in part in the United States." *Id.* The Senate Report provided two examples: "a situation in which a person transfers by wire the proceeds of a drug transaction from a bank in the United States to a bank in a foreign country; another example is a situation in which a person telephones instructions from the United States to one foreign bank to transfer such proceeds to another foreign bank." *Id.* The Senate did not intend that the statute would encompass an electronic transfer of funds from one foreign bank to another, requested by a foreign defendant operating outside of the United States.

Like the FCPA charges discussed above, the indictment's money laundering charges are far from the norm. The paradigmatic criminal cases alleging violations of § 1956(a)(2)(A)

---

[3] Dr. Ho does not contest that § 1956 was intended to apply extraterritorially in certain situations. Section 1956(f) is an explicit statement of the section's extraterritorial reach. *See RJR Nabisco, Inc. v. European Community*, --- U.S. ---, 136 S. Ct. 2090, 2101 (2016) ("At the first step, we ask whether the presumption against extraterritoriality has been rebutted – that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially."). Nevertheless, as the Supreme Court instructed in *RJR Nabisco*, "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 2102 (internal quotation marks omitted). Regardless of the scope of § 1956(f), the underlying criminal statute simply does not prohibit the activity in which Dr. Ho allegedly engaged.

involve movements of funds that originate in the United States, or at least that the funds come to rest in the United States for more than the few minutes it takes for a wire to pass through the system. *See, e.g., United States v. Hurtado*, 38 F. App'x 661, 664 (2d Cir. 2002) (affirming conviction under § 1956(a)(2)(A) where trial evidence showed the defendant "attempted to cross into Canada with over a half-million dollars in cash – carried in bags that bore a residual odor of either narcotics or firearms"); *United States v. Krasinski*, 545 F.3d 546, 550-51 (7th Cir. 2008) (finding sufficient conduct to support conviction under § 1956(a)(2)(A) where defendant "received money in the United States and brought it back with him to Canada to pay for the pills that were eventually resold in the United States as part of the conspiracy"); *United States v. Gastelum*, 273 F. App'x 524, 528 (7th Cir. 2008) (affirming conviction under § 1956(a)(2)(A) where, based on the evidence at trial, the "jury could have reasonably inferred that the nearly $900,000 found in [the defendant's] car [in the United States] was, in fact, headed for Mexico"); *United States v. Savage*, 67 F.3d 1435, 1440-41 (9th Cir. 1995) (affirming conviction under 1956(a)(2)(A) where the defendant, acting through co-conspirators, instructed transfers from bank accounts in the United States to Austria).

*United States v. All Assets Held at Bank Julius Baer & Co.*, 251 F. Supp. 3d 82 (D.D.C. 2017) ("*Bank Julius Baer*"), provides a recent and instructive contrast to this case. *Bank Julius Baer* was a civil forfeiture action that involved questions regarding certain transfers. The primary bases on which the government alleged domestic conduct were "numerous financial transactions to, from, and through the United States." *Id.* at 87. The case was not a criminal action alleging violations of 18 U.S.C. § 1956(a)(2)(A), but instead involved § 1956(a)(1)(B)(i) and § 1956(a)(2)(B)(i). However, it raised the question of whether an electronic funds transfer that "'passed through a correspondent bank account' in the United States" is prohibited conduct

that occurs in part in the United States for purposes of 18 U.S.C. § 1956(f). *Id.* at 93. The court

concluded that such transfers were conduct occurring in the United States within § 1956(f)

because they were "transactions," which are defined in § 1956(c) as "a deposit, withdrawal,

transfer between accounts, . . . or any other payment, transfer, or delivery by, ***through***, or to a

financial institution, by whatever means effected." *Id.* at 95 (emphasis original) (quoting 18

U.S.C § 1956(c)). Recognizing that § 1956(f) does not define the proscribed conduct, the court

focused on the word "through," which is incorporated in § 1956(a)(1)(B) by the definition of

"transaction" in § 1956(c). The court similarly relied on the word "through" in its analysis of 18

U.S.C. § 1957. *See id.* at 97. In contrast, the absence of the word "transaction" in

§ 1956(a)(2)(A) shows that the wires in this case do not fall within the terms of § 1956(a)(2)(A).

The difference between, on the one hand, the language of § 1956(a)(2)(A), which proscribes only

transfers of funds passing "through a place outside the United States," and, on the other hand,

other subsections of the MLCA, which encompass transactions "through" a U.S. financial

institution, further supports dismissal of counts 6 through 8.

**B.      Prosecution Of Dr. Ho For Money Laundering Based On The Three Wires Sent From Hong Kong To Dubai Or Uganda Would Violate His Right To Due Process**

The defendant has a right under the due process clause that the charges against him be

dismissed unless there is "a sufficient nexus between the defendant and the United States, so that

[the] application [of the criminal statute to his conduct] would not be arbitrary or fundamentally

unfair." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (quoting *United States v.*

*Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990)); *United States v. Yousef*, 327 F.3d 56, 111-12 (2d

Cir. 2003). In this District, courts have focused the due process inquiry on whether "the *aim* of

[the defendant's] activity is to cause harm inside the United States or to U.S. citizens or

interests." *Al Kassar*, 660 F.3d at 118 (emphasis added); *see also United States v. Mostafa*, 965

F. Supp. 2d 451, 459 (S.D.N.Y. 2013) (noting that when analyzing whether a sufficient nexus exists, "the *determinative issue* is whether defendant's actions were calculated to harm American citizens and interests.") (emphasis added). Outside of the national security and drug trafficking contexts, a sufficient nexus has typically been found only where the charged conduct has a substantial and direct connection to the United States. *See, e.g.*, *United States v. Budovsky*, No. 13-cr-368, 2015 WL 5602853, at *5 (S.D.N.Y. Sept. 23, 2015) (finding nexus where company "had over 200,000 users in the United States; [and] the site's users included criminal rings operating in the United States").

Prosecuting Dr. Ho for money laundering when the only connection between Dr. Ho and the United States that is relevant to the money laundering charges is that three wires momentarily passed through the United States would violate due process. The wires that Dr. Ho allegedly caused were from an account in Hong Kong to accounts in Dubai and Uganda, (*see* Indictment ¶¶ 4(f)-(i)), and Dr. Ho had no control over whether the wires went through the United States, much less where in the United States they went through, or how long they were in the United States. The determination to send the wires through the United States was made by the originating bank, in this case HSBC Hong Kong. Dr. Ho did not purposefully avail himself of the wires of the United States, and the Hong Kong bank's selection of a United States correspondent bank does not give the United States an interest in the transactions. *Cf. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014) (use by a foreign bank of "correspondent banks in the United States to process dollar-denominated transfers [is not] sufficient to make these foreign transfers domestic"); *United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 314, 324 n.4 (S.D.N.Y. 2009) (transfers by Lloyds Bank

through U.S. correspondent accounts were "too peripheral and transitory" to support subject matter jurisdiction for money laundering claims under § 1956(f) in civil forfeiture action).

The government may argue that Dr. Ho was a frequent visitor to the United States, and that he was the head of a not-for-profit entity that had an office here. But those facts are insufficient. The question for due process purposes is whether the acts underlying the alleged crime have sufficient links to the United States such that it would not be arbitrary for the crime be prosecuted in the United States. *See, e.g.*, *United States v. Mohammad-Omar*, 323 F. App'x 259, 261-62 (4th Cir. 2009) (finding jurisdiction proper where defendant's partner knew contraband was destined for United States and defendant met with agent he believed to be American drug distributor); *United States v. Davis*, 905 F.2d at 249 (reviewing defendant's U.S. contacts related to the charged crimes); *see also United States v. Davis*, 689 F.3d 179, 189 (2d Cir. 2012) (to prove venue, government must show that "it was more probable than not that [the defendant] understood the likelihood" that an act in furtherance of the offense would take place in the district of prosecution). The only acts underlying the crime of money laundering that took place in the United States were the ones already mentioned – the Hong Kong bank's transfer of three wires through correspondent accounts in New York. These monetary acts were neither controlled nor foreseeable by Dr. Ho.[4] Dismissal is therefore well warranted.

---

[4] The argument in the text has focused on counts 7 and 8, the substantive counts of money laundering. The same arguments apply to count 6, which charges a conspiracy to violate the money laundering statute, 18 U.S.C. § 1956(h). Count 6 alleges a conspiracy to violate Section 1956(a)(2)(A), but since the activity that Dr. Ho allegedly engaged in did not constitute a violation of that section, it cannot constitute a conspiracy to do so.

## Conclusion

For the reasons stated herein, the Court should dismiss counts 1, 4, 5, 6, 7, and 8 of the indictment.

Dated: New York, New York
      April 16, 2018

Respectfully submitted,

By: _Benjamin E. Rosenberg_

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel.: (212) 698-3622
Fax: (212) 698-3599
andrew.levander@dechert.com
benjamin.rosenberg@dechert.com
katherine.wyman@dechert.com

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue
34th Floor
New York, NY 10110
Tel.: (212) 390-9550
Edward.Kim@KKLllp.com
Paul.Krieger@KKLllp.com
Jonathan.Bolz@KKLllp.com
Jon.Bodansky@KKLllp.com

*Attorneys for Chi Ping Patrick Ho*