

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

ANDREW J. LEVANDER

andrew.levander@dechert.com
+1 212 698 3683  Direct
+1 212 698 3843  Fax

April 16, 2018

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Chi Ping Patrick Ho*, 17 Cr. 779 (KBF)

Dear Judge Forrest:

We represent Dr. Patrick Ho in the above referenced case and respectfully submit this letter to renew our request that Dr. Ho be released on bail. At the prior hearing on February 5, 2018, the Court described the decision on bail as a "difficult" one (Tr. 74, ECF No. 49), and explicitly invited the defense to renew its bail application (Tr. 77). This application responds to that invitation and primarily focuses on three issues raised by the Court on February 5th: the availability of family property as additional security for the bail package (Tr. 73-74), the range of sentences imposed in FCPA cases (Tr. 69), and the supposed strength of the government's case (Tr. 67-68, 76-77). While we respectfully suggest that the prior submission amply stated the case for bail under the Bail Reform Act and substantial precedent in this Court and elsewhere, we provide supplemental information with regard to each of these three factors in support of our renewed application.

Before turning to those three factors, we briefly reiterate the applicable standards. Under the Bail Reform Act, the government bears the burden of demonstrating both the likelihood of flight and that no condition or combination of conditions will reasonably assure the defendant's appearance at trial. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The Second Circuit has emphasized that "the law thus generally favors bail release" and that the Court should impose the least restrictive conditions that assure the defendant's appearance. *Id.* Hence, "[o]nly in rare circumstances should release be denied," *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (Kennedy, J.), and any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* (citing, *inter alia*, *Herzog v. United States*, 75 S. Ct. 349, 351, 99 L. Ed. 1299 (1955) (Douglas, J., in chambers)). Application of these standards to this case compels the conclusion that bail is well warranted.

Revised Bail Package

We had previously offered the Court as security for Dr. Ho's appearance to defend himself: (1) home incarceration in the Southern District of New York with electronic monitoring, (2) a $10 million personal recognizance bond, (3) secured by 5 co-signors who are substantial United States residents and long-time friends of Dr. Ho, (4) $2 million cash security from Dr. Ho, and



(5) a global waiver of extradition. In considering this bail package, the Court noted that it had released another foreign defendant on bail when that defendant's extradition waiver was coupled with "other attachments to property . . . akin to a deed in lieu." (Tr. 73-74.) In light of the Court's remarks, we are now proposing to add to our initial bail package further security in the form of two familial properties: the homes of (a) Dr. Ho's mother, which in fact is beneficially owned by Dr. Ho, and (b) Dr. Ho's brother. These properties, both of which are located in Hong Kong, have net equity worth approximately $2.8 million and $1.2 million, respectively.[1] We are prepared to provide a lien running to the benefit of the government so that it may readily seek to forfeit those familial homes in the highly unlikely event that Dr. Ho fails to appear for trial.

With these additional two family homes, the total bail package more than reasonably assures that Dr. Ho will appear in Court as directed. *See* 18 U.S.C. § 3142; *Sabhnani*, 493 F.3d at 76-78 (vacating order of pretrial detention where there were "conditions adequate to assure defendants' presence at trial" despite "serious concerns" regarding defendants' motive and ability to flee, including strong personal and professional ties to foreign countries); *United States v. Bronson*, 433 F.2d 537, 540 (D.C. Cir. 1970) ("[A] lack of close . . . community ties is not an insurmountable obstacle to pretrial release . . . ."). Dr. Ho's $10 million bond would now be secured by hard assets worth approximately $6 million plus the pledge of the co-signers. Perhaps more importantly, the overall package provides powerful elements of moral suasion as well as financial deterrence. Flight by Dr. Ho would not only imperil the well-being of five long-time American friends, but forfeit the homes of his mother and brother as well as his own money, property and reputation. Given the totality of these proposed conditions, the moral cost of flight -- irreparably harming close family and friends -- far outweighs Dr. Ho's supposed incentive to flee.

The Court has recognized that Dr. Ho has an admirable history of public service and good deeds. (Tr. 68-69.) In light of that history and Dr. Ho's determination to vindicate his name at trial, the government cannot plausibly contend that Dr. Ho would purposefully jeopardize his family, friends and own reputation by fleeing. At the prior hearing, the Court, based on the government's argument, referenced that the foreign press had suggested this case was a political prosecution and therefore Dr. Ho's flight might not severely damage Dr. Ho's standing in the international community. (Tr. 70-71.) In fact, however, there has been a barrage of international press coverage casting Dr. Ho in a negative light.[2] Furthermore, public reports suggest that the

---

[1] The brother's house, which is worth approximately $1.7 million, is subject to a mortgage of almost $500,000.

[2] Hong Kong's two leading English-language newspapers -- the South China Morning Post and The Standard -- have published opinion pieces rejecting the characterization of this case as political. Stephen Vines, *What the reaction to the Patrick Ho case says about China's Global Ambitions*, South China Morning Post, Nov. 29, 2017, Exhibit A; *Ho conspiracy theorists out of line*, The Standard, Nov. 23, 2017, Exhibit B. The Hong Kong Economic Journal has described the alleged conduct in this case as an example of "Hong Kong do[ing] the dirty work for mainland companies." Chung Man, Alan Lee trans.,



Chairman of the Chinese Energy Company referenced in the indictment is now under investigation in China. *See, e.g.,* Alexandra Stevenson, *Hard-Charging Chinese Energy Tycoon Falls From Xi Government's Graces*, New York Times, Mar. 14, 2018. Hence, if Dr. Ho were to flee, it is doubtful he could find refuge in Hong Kong or China (where he has no resident identification in any event), and he would be viewed as a criminal and not a political hero in the international community.

Nor should the Court give any weight to the government's prior argument that Dr. Ho may have access to undisclosed wealth that would allow him to repay his friends' and family's financial losses should he flee. Notably, in *United States v. Bodmer*, No. 03 Cr. 947 (SAS), 2004 WL 169790, at **2-3 (S.D.N.Y. Jan 28, 2004), the Court squarely rejected that very argument for good reason. The government bears the burden of demonstrating that the determination to deny bail is warranted based on the evidence and not baseless speculation. *Id.* at *3; *see also United States v. Montoya-Vasquez*, No. 08 Cr. 3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009) ("Speculation is not evidence, much less preponderating evidence."). Likewise, in this case, the Court should reject the government's baseless speculation.

Sentences in FCPA Cases

On February 5, Your Honor cited the serious sentencing exposure in this case as a factor that was relevant to the Court's bail determination. (Tr. 43-44.) The Court "assume[d] that a duration of a FCPA sentence may be somewhere in the vicinity of . . . three to ten years," (Tr. 69), while noting that "[i]f it turns out that most FCPA cases either result in no jail time or three years of jail time, that's a different kettle of fish, I think, than if we're talking about ten years." (Tr. 44.) In actuality, sentences in FCPA cases are not three to ten years but "a different kettle of fish." As shown in Exhibit D, during the three-year period between 2015 and 2017, a total of 20 individual defendants were sentenced in FCPA cases. The longest sentence was 60 months, and the shortest was probation. The average sentence was 18.5 months, and the median was 15 months.[3]

As this Court expressly anticipated, these statistics strongly support the argument that Dr. Ho has a much greater incentive to fight the charges against him than he has to flee and thereby ruin his family, friends and personal wealth and reputation. The facts regarding FCPA sentences also demonstrate the unfairness of his continued detention. If bail is denied, Dr. Ho will have been incarcerated for approximately 13 months -- 87% of the median sentence in FCPA cases -- by the time trial is over, whether or not he is convicted of a crime. Accordingly, even if the government's case were overwhelming (it is not, as we demonstrate below), the supposed weight

---

*Why should Hong Kong do the dirty work for China mainland companies?*, Hong Kong Economic Journal, Nov. 24, 2017, Exhibit C.

[3] Like Dr. Ho, several of those defendants were also charged with money laundering. *See, e.g., United States v. Bethancourt*, 13 Cr. 670 (S.D.N.Y.) (24 month sentence); *United States v. Lujan*, 13 Cr. 671 (S.D.N.Y.) (24 month sentence); *United States v. Hurtado*, 13 Cr. 673 (S.D.N.Y.) (36 month sentence).


Dechert
LLP

The Honorable Katherine B. Forrest
April 16, 2018
Page 4

of the government's case cannot justify the conclusion that Dr. Ho, despite the rigorous bail conditions proffered to the Court, will likely flee and be a fugitive rather than face the possibility of relatively little or no extra time in jail in the event he were convicted.

## The Weight of the Evidence

At the February 5 hearing, the Court stated that its decision to deny bail was based largely on the perceived strength of the government's case. The Court described the weight-of-the-evidence factor as "exceedingly important" and explained that "a very significant portion of the court's view [was] based upon its lack of any reason . . . to have anything seriously to undermine the weight of the evidence as proffered by the government." (Tr. 67, 76.) However, as detailed below, the supposed strength of the government's case does not justify denial of bail either as a matter of law or fact.

As an initial matter, we respectfully submit that the perceived strength of the government's case at this early stage should not weigh heavily in the Court's determination of bail. To be sure, courts regularly consider evidence of guilt in connection with bail applications. *See, e.g., Sabhnani*, 493 F.3d at 76. However, as Your Honor previously noted, the defendant is entitled to a presumption of innocence. (*See* Tr. 77.) Because of this presumption, "the [Bail Reform Act] neither requires nor permits a pretrial determination that the person is guilty," *Motamedi*, 767 F.2d at 1408; *see also United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969) ("No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of Anglo-American jurisprudence."). Consequently, "[i]f [a] court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Motamedi*, 767 F.2d at 1408. Such an approach would violate due process. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

In light of the difficulty of assessing evidence of guilt at the bail stage and the tension between the weight-of-the-evidence factor and the presumption of innocence, Justice Kennedy in the *Motamedi* case observed that the weight of the evidence is "the least important of the [§ 3142(g)] factors." 767 F.2d at 1408. Various courts in this Circuit have followed that approach. *See, e.g., United States v. Fama*, No. 13 Cr. 234 (JFK), 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013); *United States v. Jones*, No. 08 Mag. 1228 (HBP), 2008 WL 2434131, at *5 (S.D.N.Y. June 12, 2008); *United States v. Parker*, 65 F. Supp. 3d 358, 365 (W.D.N.Y. 2014); *United States v. Streater*, No. 97 Cr. 232 (EBB), 1999 WL 1067837, at *6 (D. Conn. Nov. 5, 1999). Hence, as a matter of law, the Court should not deny Dr. Ho bail on the basis of the government's pleadings in this case.

In any event, we strongly believe that Dr. Ho has powerful defenses to the pending charges. We are prepared, if necessary, to submit a more detailed defense in an *ex parte* submission, as suggested by the Court in the February 5 hearing. (*See* Tr. 77 (noting it may be appropriate for the defense to make a submission *in camera* because it necessarily involves "previewing a



The Honorable Katherine B. Forrest
April 16, 2018
Page 5

[defense] strategy.").)[4] We believe, however, that even a cursory review of the government's allegations raises significant doubts about the strength of the government's case. The motion to dismiss we have filed raises substantial questions about the sufficiency of many of the charges based solely on the allegations in the Indictment. Nor can the government allege that any actual benefit was received by Dr. Ho, the Energy NGO or the Energy Company for either of the purported bribes. In short, there is no actual "quo" for the alleged "quid."[5]

Furthermore, the government's selective quotations from certain emails utterly fails to put those communications in their fair context. For example, the government's complaint cites an email dated November 14, 2014, as if it were an admission that Dr. Ho discussed a Brazilian bribery scheme with the president of Chad. Complaint ¶ 26(a)(iv).



---

[4] During the February 5th conference, the government indicated that it would object to the Court allowing the defendant to make an *ex parte* submission. Dr. Ho should not, however, have to jeopardize his defense at trial in order to win pretrial release. Indeed, numerous courts have permitted defendants to make pretrial submissions *ex parte* for this reason. *See, e.g., United States v. Gomez*, No. 17 Cr. 602 (JMF), 2018 WL 501607, at *3 n.2 (S.D.N.Y. Jan. 19, 2018) (granting leave to file a submission seeking confidential informant information *ex parte* and under seal because it disclosed "confidential and privileged possible defenses and strategies" (quotation marks omitted)); *United States v. Wey*, 252 F. Supp. 3d 237, 243 (S.D.N.Y. 2017) (granting a defendant's request to make an *ex parte* application for the issuance of Rule 17 subpoenas because of its "disclosure of certain elements of the defense's trial strategy"); *United States v. Weisberg*, No. 08 Cr. 347 (NGG), 2010 WL 5027537, at *2 n.2 (E.D.N.Y. Dec. 3, 2010) (permitting defendant to make an *ex parte* showing in support of the issuance of Rule 17 subpoenas because it would "require the disclosure of confidential defense strategy"). Moreover, here the government has not yet completed its production of documents. Thus, the defendant is at a great disadvantage in detailing his defenses at this stage.

[5] We recognize that proof of a successful bribe is not an element of an FCPA offense. Nonetheless, the absence of such proof as to both alleged schemes surely undermines the strength of the government's case.

**Dechert**
LLP

The Honorable Katherine B. Forrest
April 16, 2018
Page 6



Such communications are fundamentally at odds with the notion that Dr. Ho acted corruptly, which the government must prove beyond a reasonable doubt at trial. In these circumstances and in light of the presumption of innocence and the legal standards canvassed above, the Court cannot justify denying Dr. Ho bail on the purported strength of the government's case.

Denial of Bail Will Hinder Dr. Ho's Defense

Finally, here as in *United States v. Bodmer*, "pretrial detention" will hinder the defendant's ability to "prepare for his defense." *Bodmer*, 2004 WL 169790, at *3 (quoting *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). As the Court explained in *Bodmer*:

> Because of the nature of the charges, the Government expects discovery to be voluminous. . . . It will be far easier for [the defendant] to assist his counsel in reviewing and responding to discovery if counsel has regular, uninterrupted access to him. Moreover, [the defendant] will undoubtedly be crucial to his lawyers' understanding of the complicated financial transactions that are the subject of the indictment.

*Id.* So too, in this case, bail is warranted to permit regular, uninterrupted access to the client. Such access is particularly important since many of the documents are not in English and the defendant is best able to explain the linguistic nuances and cultural context of the numerous discussions and documents relevant to this case.



The Honorable Katherine B. Forrest
April 16, 2018
Page 7

Conclusion

For the reasons stated above and in our prior letter dated January 5, 2018, Dr. Ho should be granted bail. The strength of his character and desire to protect his name; the multiple stringent conditions of, and security for, the proposed bail package; the obvious questions regarding the government's case; and the likely range of sentences in an FCPA prosecution even if Dr. Ho were to be convicted all demonstrate that Dr. Ho has no intention of fleeing and will not risk ruining his own reputation and financial well-being, much less the lives of his close family and friends, by doing so. Accordingly, even without a detailed analysis of the powerful defenses in this case, the application for bail pending trial should be granted. If the Court nonetheless is still not inclined to grant bail, we request the opportunity to provide the Court with an *ex parte* submission.

Respectfully submitted,

Andrew J. Levander

cc: Counsel Of Record
Enclosures