UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                              :        17 Cr. 779 (KBF)

CHI PING PATRICK HO,                         :
  a/k/a "Patrick C.P. Ho,"
  a/k/a "He Zhiping,"                           :

                 Defendant.            :

------------------------------------------------------------------x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS
<u>COUNT ONE AND COUNTS FOUR THROUGH EIGHT OF THE INDICTMENT</u>**


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
Attorney for the United States of America

SANDRA MOSER
Acting Chief, Fraud Section
Criminal Division

Daniel C. Richenthal
Douglas S. Zolkind
Thomas McKay
Assistant United States Attorneys

David A. Last
Paul A. Hayden
Trial Attorneys

- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ...................................................................................................... 3

    A.    Procedural History ................................................................................ 3

    B.    Factual Background ................................................................................ 4

ARGUMENT .......................................................................................................... 6

I.    THE FCPA DOMESTIC CONCERN ALLEGATIONS DO NOT INVALIDATE
THE FCPA TERRITORIAL JURISDICTION CHARGES ................................... 6

    A.    The FCPA Charges Are Not Mutually Exclusive As To This Defendant .. 6

    B.    Even If The FCPA Charges Were Mutually Exclusive, The Government
May Charge In The Alternative And Present Alternative Theories To The
Jury........................................................................................................ 12

II.    COUNTS SIX THROUGH EIGHT ADEQUATELY ALLEGE VIOLATIONS
OF THE MONEY LAUNDERING STATUTE AND DO NOT VIOLATE DUE
PROCESS ......................................................................................................... 14

    A.    Counts Six Through Eight Adequately Allege Violations of
Section 1956(a)(2)(A) .............................................................................. 15

    B.    The Correspondent Bank Wires Were Transmitted "To" the United States
and "From" the United States Within the Meaning of
Section 1956(a)(2)(A) .............................................................................. 18

    C.    This Prosecution Does Not Violate The Defendant's Due Process Rights
.............................................................................................................. 24

CONCLUSION........................................................................................................ 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNITED STATES OF AMERICA            :

   -v.-                              :            17 Cr. 779 (KBF)

CHI PING PATRICK HO,                 :
  a/k/a "Patrick C.P. Ho,"
  a/k/a "He Zhiping,"                :

                  Defendant.            :

----------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS
<u>COUNT ONE AND COUNTS FOUR THROUGH EIGHT OF THE INDICTMENT</u>**

The Government respectfully submits this memorandum of law in opposition to the

motion of defendant Chi Ping Patrick Ho, a/k/a "Patrick C.P. Ho," a/k/a "He Zhiping," to dismiss

Count One and Counts Four through Eight of the Indictment.

**<u>PRELIMINARY STATEMENT</u>**

In a memorandum of law filed on April 16, 2018 ("MTD Br."), the defendant moves this

Court: (1) to dismiss certain counts charging him with violations of the Foreign Corrupt Practices

Act ("FCPA") on the basis that those counts purportedly conflict as a matter of law with other

FCPA counts charged in the Indictment, and (2) to dismiss each of the money laundering counts

because (i) he expects that the evidence the Government will offer at trial will be insufficient to

establish the elements of the offenses, and (ii) it allegedly would violate the defendant's due

process rights to prosecute him for money laundering.  Each of these arguments fails.

The defendant is charged with substantive violations of two different FCPA statutes—the

domestic concern statute, 15 U.S.C. § 78dd-2, based on actions taken in his capacity as an

officer, director, and agent of U.S.-based organizations (Counts Two and Three), and the territorial jurisdiction statute, 15 U.S.C. § 78dd-3, based on actions taken in the United States (Counts Four and Five); and he is also charged with conspiring to violate both statutes (Count One). The defendant's contention that the domestic concern statute and territorial jurisdiction statute are mutually exclusive is wrong. Although a "domestic concern," such as a U.S. citizen, may be charged only under the domestic concern statute, the defendant is not a domestic concern; he is an officer, director, and agent *of* a domestic concern. As such, he may be charged under either or both statutes. *See* 15 U.S.C. § 78dd-3(a). Furthermore, even if the statutes were mutually exclusive alternatives (which they are not), it is settled law that the Government is entitled to charge in the alternative and to present alternative theories to the jury. Thus, even if the defendant's premise were correct, there would be no basis for dismissal.

The defendant's motion to dismiss the money laundering counts is equally meritless. As an initial matter, because (as the defendant does not dispute) the Indictment alleges each and every element of the charged offenses, there is no basis for dismissal. There is no summary judgment in criminal cases. In any event, his argument that correspondent bank wires do not fall within the scope of 18 U.S.C. § 1956(a)(2)(A) fails as a matter of both law and logic. The evidence at trial is expected to show that the wires at issue went from Hong Kong to the United States, and then from the United States to Dubai and Uganda. As multiple courts have held, consistent with the statute's plain language, the U.S. component of those wires, even if short in duration, is more than sufficient to bring the conduct within the statutory ambit. And finally, the defendant's contention that it would violate his due process rights to prosecute him for money laundering is utterly baseless. His conduct had multiple, significant connections to the United States. He used U.S. dollars, the U.S. financial system, and a U.S.-based organization registered

with the Internal Revenue Service to further two bribery schemes, including through meetings he attended in New York. There is nothing arbitrary or fundamentally unfair about requiring the defendant to stand trial in the United States for what he did.

## BACKGROUND

### A. Procedural History

The defendant was arrested on November 18, 2017, at John F. Kennedy International Airport after he arrived on a flight from Hong Kong. He was charged by a complaint (the "Complaint"), docketed as 17 Mag. 8611, with FCPA violations, money laundering, and conspiracy to commit the same. Cheikh Gadio was charged in the same complaint. An indictment (the "Indictment") was filed on or about December 18, 2017, charging the defendant as follows:[1]

| FCPA Charges | |
|---|---|
| Count One | Conspiracy to violate the FCPA's domestic concern statute (15 U.S.C. § 78dd-2) and territorial jurisdiction statute (15 U.S.C. § 78dd-3)  18 U.S.C. § 371 |
| Count Two | FCPA violation – domestic concern statute – Chad scheme  15 U.S.C. § 78dd-2 |
| Count Three | FCPA violation – domestic concern statute – Uganda scheme  15 U.S.C. § 78dd-2 |
| Count Four | FCPA violation – territorial jurisdiction statute – Chad scheme  15 U.S.C. § 78dd-3 |

---

[1]     Cheikh Gadio has not been indicted to date.

| | |
|---|---|
| Count Five | FCPA violation – territorial jurisdiction statute – Uganda scheme<br><br>15 U.S.C. § 78dd-3 |
| **Money Laundering Charges** | |
| Count Six | Conspiracy to commit money laundering in violation of 18 U.S.C. 1956(a)(2)(A)<br><br>18 U.S.C. § 1956(h) |
| Count Seven | Money laundering – Chad scheme<br><br>18 U.S.C. § 1956(a)(2)(A) (predicated on violations of Counts Two and Four, and violations of Chadian bribery law) |
| Count Eight | Money laundering – Uganda scheme<br><br>18 U.S.C. § 1956(a)(2)(A) (predicated on violations of Counts Three and Five, and violations of Ugandan bribery law) |

Trial is scheduled to commence on November 5, 2018.  On April 16, 2018, the defendant filed his motion to dismiss certain FCPA charges (Counts One, Four, and Five) and all money laundering charges (Counts Six through Eight).

**B. Factual Background**

The factual allegations against the defendant are set forth in detail in the Complaint and the Indictment and in certain disclosures made to the defendant by the Government.  In sum, the defendant is the Secretary-General of a non-governmental organization based in Hong Kong and Virginia (the "Energy NGO"), which holds "Special Consultative Status" with the United Nations ("UN") Economic and Social Council, and which is funded by a Shanghai-based oil and gas conglomerate (the "Energy Company").  The charges in the Indictment are based on two schemes in which the defendant offered and/or provided payments to high-level officials of

African countries for the purpose of obtaining lucrative business advantages for the Energy Company.

In the first scheme, the defendant offered a $2 million bribe to the President of Chad. This money was offered in an effort to obtain and secure advantages for the Energy Company in its pursuit of valuable oil rights and other business opportunities in Chad. Cheikh Gadio—the former Foreign Minister of Senegal and a lawful permanent resident of the United States, who at the time was acting as the head of a consulting firm that he founded—introduced the defendant to the President of Chad and acted as the defendant's intermediary for discussions and negotiations with the President of Chad and other Chadian officials. The defendant had met with Gadio at and around the UN in New York, New York, in or about late September 2014, to engage him for this role. In exchange for Gadio's work, the defendant paid his firm $400,000 through two wires that were transmitted from a bank account in Hong Kong, to correspondent banks in New York, New York, and then to a bank account in Dubai in the name of Gadio's firm.

In the second scheme, the defendant caused a $500,000 bribe to be wired from a bank in Hong Kong, to a correspondent bank in New York, New York, and then to a bank account in Uganda that had been designated by the Foreign Minister of Uganda (the "Ugandan Foreign Minister") in the name of a purported charitable foundation. The defendant caused this bribe to be paid for the purpose of obtaining business advantages for the Energy Company in its efforts to secure contracts in Uganda, including in Uganda's financial and energy sectors. The corrupt relationship between the defendant and the Ugandan Foreign Minister had developed during the preceding year in which the Ugandan Foreign Minister had been serving as President of the UN General Assembly, including through multiple meetings in New York, New York. The

defendant also provided the Ugandan Foreign Minister, as well as the President of Uganda, with promises of future benefits, including proposing to partner with both officials' families in potentially lucrative joint ventures.

**ARGUMENT**

**I.    THE FCPA DOMESTIC CONCERN ALLEGATIONS DO NOT INVALIDATE THE FCPA TERRITORIAL JURISDICTION CHARGES**

The defendant contends that because he is charged with violating, and conspiring to violate, the FCPA's domestic concern statute, he cannot simultaneously be charged with violating, and conspiring to violate, the FCPA's territorial jurisdiction statute.  (MTD Br. 7.)  He is wrong for two independent reasons.  First, the two FCPA statutes are not mutually exclusive as to this defendant.  And second, even if they were, the Government is permitted to charge in the alternative and to submit alternative theories to the jury.

**A.  The FCPA Charges Are Not Mutually Exclusive As To This Defendant**

**1.  Applicable Law**

The FCPA's prohibitions are set forth in three statutes: Sections 78dd-1, 78dd-2, and 78dd-3.  Section 78dd-1 applies to "issuers" (foreign or domestic) listed on a U.S. exchange and to "any officer, director, employee, or agent of such issuer or any stockholder thereof acting on behalf of such issuer"; and the statute prohibits, *inter alia*, the use of any means of interstate commerce in furtherance of certain specified corrupt acts.  15 U.S.C. § 78dd-1(a).

Section 78dd-2 applies to "any domestic concern, other than an issuer which is subject to section 78dd-1" and to "any officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern"; and like Section 78dd-1, the statute prohibits, *inter alia*, the use of any means of interstate commerce in furtherance of certain specified corrupt acts.  *Id.* § 78dd-2(a).  A "domestic concern" is defined as "any individual who

is a citizen, national, or resident of the United States" or any entity with its principal place of

business in the United States or organized under the laws of any U.S. state or territory.

*Id.* § 78dd-2(h)(1).

Finally, Section 78dd-3 applies to "any person other than [i] an issuer that is subject to

section 78dd-1 of this title or [ii] a domestic concern (as defined in section 78dd-2 of this title),"

and to "any officer, director, employee, or agent of such person or any stockholder thereof acting

on behalf of such person"; and it makes it unlawful for such person to engage in specified

corrupt acts "while in the territory of the United States." *Id.* § 78dd-3(a). Unlike Sections 78dd-

1 and 78dd-2, this statute does not require the use of interstate commerce. *Id.*

Importantly, the qualifying language applicable to the term "any person" under Section

78dd-3 (*i.e.*, "any person other than . . . a domestic concern") does *not* include officers, directors,

or agents of domestic concerns. *Id.* Similarly, the qualifying language only applies to "any

person"; it does not apply to officers, directors, or agents *of* any "such person." *Id.* Thus,

although the three FCPA statutes can be mutually exclusive in certain circumstances, they are

not mutually exclusive in all circumstances and as to all defendants. For instance, if a defendant

is an issuer, the defendant may be prosecuted under Section 78dd-1 (which expressly applies to

issuers), but not as a "domestic concern" under Section 78dd-2 even if the defendant is, in fact, a

"domestic concern," because Section 78dd-2 expressly excludes issuers. Similarly, if a

defendant is a domestic concern (and not an issuer), the defendant may be prosecuted under

Section 78dd-2 (which expressly applies to domestic concerns), but not as "any person" under

Section 78dd-3, because Section 78dd-3 expressly excludes domestic concerns.

By contrast, an officer, director, or agent of an issuer may be prosecuted not only under

Section 78dd-1, but also under Section 78dd-2 (if he or she is a domestic concern or an officer,

director, or agent of a domestic concern) as well as Section 78dd-3 (if he or she otherwise meets the elements of the statute). Similarly, an officer, director, or agent of a domestic concern may be prosecuted not only under Section 78dd-2, but also under Section 78dd-3 (if he or she otherwise meets the elements of the statute). This is because Section 78dd-3 expressly exempts "domestic concerns," but does not exempt officers, directors, or agents of domestic concerns.

## 2. Discussion

The defendant is not himself a domestic concern. That is, he is not "a citizen, national, or resident of the United States." 15 U.S.C. § 78dd-2(h)(1)(A). Rather, he is a citizen and national of China, and a resident of Hong Kong. In the charging language for the conspiracy count (Count One) and each of the substantive domestic concern counts (Counts Two and Three), the Indictment recites that the defendant is "a domestic concern and an officer, director, employee, and agent of a domestic concern and a stockholder thereof acting on behalf of such domestic concern." (Ind. ¶¶ 2, 5, 6.) But as defense counsel knows, it is the typical and longstanding practice in this district and elsewhere to include each component of a statute in the charging language of an indictment or complaint.

The Government is not—and the defendant knows that the Government is not—pursuing a theory that the defendant is, himself, a domestic concern. Indeed, defense counsel submitted a letter to the Government in which they inquired as to the applicable domestic concerns alleged in the Indictment, and the Government responded on March 2, 2018, with a list of entities and an individual, which list did not include the defendant himself. This is also readily apparent from the Complaint, which alleges, *inter alia*, that "from at least 2014 to 2017, the Energy NGO was a 'domestic concern' and [the defendant] was an officer, director, employee, and agent of a domestic concern, within the meaning of the [FCPA]." (Compl. ¶ 18(c).) Thus, the defendant is

8

indisputably on notice that he is being charged as an officer, director, and agent of a domestic concern, not as a domestic concern himself.[2]

Because the defendant is an agent of a domestic concern—not a domestic concern himself—he may be prosecuted not only under Section 78dd-2 (the domestic concern statute), but also under Section 78dd-3 (the territorial jurisdiction statute). Section 78dd-3 excludes only (1) "issuer[s] . . . subject to section 78dd-1" and (2) "domestic concern[s] (as defined in section 78dd-2[)]." 15 U.S.C. § 78dd-3(a). The plain language of the FCPA thus makes clear that a nonresident alien, such as the defendant, may be prosecuted under *any* or *all* of the statutes: Section 78dd-1 (if the defendant is an officer, director, or agent of an issuer), Section 78dd-2 (if the defendant is an officer, director, or agent of a domestic concern), and/or Section 78dd-3 (if the defendant takes one or more applicable acts within the United States).

Ignoring the plain statutory text, the defendant asserts that legislative history shows that when Congress added Section 78dd-3 to the FCPA, its intention was "to broaden the scope of the FCPA to cover persons and entities who were not already covered by it." (MTD Br. 8.) But because the statutory text is abundantly clear—indeed, could not be more clear—there is no occasion to attempt to decipher Congress's intent from legislative history. "When interpreting a statutory provision, we begin with the language of the statute. . . . If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) (citing *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003); *Rubin v. United States*, 449 U.S. 424, 430 (1981); *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998)). Only "[i]f . . . the terms are ambiguous . . . may

---

[2]     In light of the defendant's professed concern and the facts of this case, the Government has no objection to redacting the language in the Indictment alleging that the defendant is himself a domestic concern in the version of the Indictment provided to the jury.

[courts] consider legislative history and other tools of statutory interpretation." *Id.*; *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (The Supreme Court "ha[s] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (citing cases) (internal quotation marks omitted)).[3]

The defendant next invokes the rule of lenity (MTD Br. 10), but this argument fails for the same reason. That canon of construction has no application where a statute is unambiguous. *See, e.g.*, *United States v. DiCristina*, 726 F.3d 92, 97 (2d Cir. 2013).

Nor is there any significance to the fact—assuming *arguendo* that it is true—that, as the defendant asserts, he is the second individual (out of a total of 23) to have been charged under both Sections 78dd-2 and 78dd-3. (MTD Br. 10-11.) As an initial matter, the defendant fails to note that there are at least two other cases (in addition to *United States v. Ng Lap Seng, et al.*, No. 15 Cr. 706 (S.D.N.Y.)) in which defendants have been charged with conspiring to violate both Sections 78dd-2 and 78dd-3: *United States v. Anthony Mace*, No. 17 Cr. 618 (S.D. Tex.),

---

[3]    The defendant cites *United States v. Bordeaux*, 886 F.3d 189, 195 (2d Cir. 2018), for the proposition that courts may rely on legislative history "to clarify statutory purpose." (MTD Br. 8.) But the issue in *Bordeaux* was how to interpret the reference in the Armed Career Criminal Act ("ACCA") to offenses committed "on occasions different from one another." *Bordeaux*, 886 F.3d at 195. The term "occasions" is itself inherently ambiguous, so the Second Circuit justifiably consulted ACCA's legislative history to determine what Congress intended the term to mean. Here, by contrast, there is no ambiguity as to whether an officer, director, or agent of a domestic concern falls within Section 78dd-3's list of exclusions. That list includes *only* "issuers" and "domestic concerns." 15 U.S.C. § 78dd-3. Officers, directors, and agents of issuers and domestic concerns are unambiguously *not* contained in the list of exclusions. If Congress had intended for officers, directors, and agents of domestic concerns to be excluded from Section 78dd-3, it could have, and would have, said so.

and *United States v. Lawrence Hoskins and William Pomponi*, No. 12 Cr. 238 (D. Ct.).[4]  Thus, it

is simply not correct that other prosecuting offices have treated these statutes as if they are

mutually exclusive under all circumstances.

Furthermore, even as to the cases the defendant identifies to the Court, he makes no effort

to determine how many of those 23 defendants were nonresident aliens who both (i) served as

officers, directors, employees, or agents of domestic concerns (making them chargeable under

Section 78dd-2), and (ii) took acts within the United States in furtherance of corrupt payments or

offers (making them chargeable under Section 78dd-3).  Nor does the defendant distinguish

between cases that were charged and immediately resolved—*i.e.*, cases in which the charges

were brought as part of an agreed-upon resolution, where the government may have voluntarily

agreed not to proceed on certain charges—and cases, like this one, where there is a contested

prosecution.  The defendant's "Stanford Clearinghouse" dataset (MTD Br. 10-11) thus provides

no insight whatsoever as to whether Sections 78dd-2 and 78dd-3 are mutually exclusive under

the circumstances present in this case.  In any event, the defendant's challenge is a statutory one.

It must be resolved by reference to the statute, not alleged past practice.

In sum, although Sections 78dd-2 and 78dd-3 may be mutually exclusive as to certain

types of individuals and entities, they are not mutually exclusive here.  The defendant can be

prosecuted simultaneously as an officer, director, and agent of a domestic concern under Section

78dd-2, and as a person who took actions within the United States in furtherance of a corrupt

payment or offer under Section 78dd-3.

---

[4]    *See* https://www.justice.gov/criminal-fraud/file/1017326/download (*Mace* information);
https://www.justice.gov/sites/default/files/criminal-fraud/legacy/2013/08/05/de50-second-
superseding-indictment.pdf (*Hoskins* indictment).

**B. Even If The FCPA Charges Were Mutually Exclusive, The Government May Charge In The Alternative And Present Alternative Theories To The Jury**

The defendant argues that Section 78dd-2 and 78dd-3 are mutually exclusive "alternatives." (MTD Br. 11.) As set forth above, he is wrong. But even if he were correct, the remedy would not be to dismiss the Section 78dd-3 counts, as the defendant requests. Rather, the Government may permissibly charge in the alternative and present alternative theories to the jury. As this Court explained in a different case:

> In moving to dismiss [certain counts of the indictment], [the defendant] does not dispute that the [indictment] informs him of the charges against him and provides sufficient detail to enable him to plead double jeopardy in a future prosecution. . . . Rather, [the defendant] seeks to dismiss the . . . counts on the ground that these counts rest on inconsistent theories of liability. . . . **[The defendant's] premise appears to be that an indictment cannot allege alternative theories of liability. This is incorrect.** "An indictment is not defective simply because it charges a defendant with alternative offenses." *Whitfield v. Ricks*, No. 01 Civ. 11398 LAK, 2006 WL 3030883, at \*12 (S.D.N.Y. Oct.24, 2006). In fact, the Government not only may *charge* a defendant based on alternative theories of liability, it may present those alternative theories to a jury. *See United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir.1996) ("When the jury is properly instructed on two alternative theories of liability, as here, we must affirm when the evidence is sufficient under either of the theories." (citing, *inter alia*, *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991))).

*United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5410049, at \*3-4 (S.D.N.Y. Oct. 24, 2014) (bold added, italics in original) (footnote omitted); *see also, e.g.*, *United States v. King*, No. 10 Cr. 122 (JGK), 2011 WL 1630676, at \*3 (S.D.N.Y. Apr. 27, 2011) ("[I]t is proper for an indictment to charge alternate theories of liability." (citing *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir. 1973))); *United States v. Garcia*, No. 88 Cr. 852 (LBS), 1990 WL 200652, at \*4 (S.D.N.Y. Dec. 8, 1990) ("The government often proceeds on multiple theories in

indictments . . . ."), *aff'd*, 938 F.2d 12 (2d Cir. 1991); *United States v. Skelly*, 442 F.3d 94, 99 (2d Cir. 2006) (Government was entitled to pursue an "alternative theory of liability" that was encompassed within the indictment).

Indeed, it is both fair, logical, and in the public interest that the Government may present alternative theories to the jury. The only issue this raises is one of proper jury instructions. Here, for instance, although the Government alleges that the defendant was an officer, director, and agent of a domestic concern, the defendant may argue to the jury that this is incorrect. In theory he could, for instance, argue that an alleged domestic concern is not, in fact, a domestic concern; or that even if it is a domestic concern, the defendant was not its officer, director, or agent. If, hypothetically, the jury were not persuaded that the defendant was an officer, director, or agent of a domestic concern, then the jury would acquit the defendant of the Section 78dd-2 charges. In that circumstance—even assuming *arguendo* that Sections 78dd-2 and 78dd-3 were mutually exclusive as to this defendant—there is no reason why the jury should not be free to consider whether the defendant is guilty of violating (and conspiring to violate) Section 78dd-3.

This is the same reason why the Government routinely charges defendants with both principal liability and aiding-and-abetting liability, even when a defendant cannot logically be guilty under both theories. *See, e.g.*, *Rosemond v. United States*, 134 S. Ct. 1240, 1243-44 (2014) ("Consistent with the indictment, the Government prosecuted the § 924(c) charge on two alternative theories. The Government's primary contention was that [the defendant] himself used the firearm during the aborted drug transaction. But recognizing that the identity of the shooter was disputed, the Government also offered a back-up argument: Even if it was [a different person] who fired the gun as the drug deal fell apart, [the defendant] aided and abetted the § 924(c) violation."); *United States v. Fitzgerald*, 542 F. App'x 30, 34 (2d Cir. 2013); *United*

*States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008); *United States v. Frampton*, 382 F.3d 213, 224 (2d Cir. 2004); *see also United States v. House*, 636 F. App'x 50, 53 (2d Cir. 2016) (different theories of obstruction of justice); *United States v. Fofanah*, 765 F.3d 141, 154 (2d Cir. 2014) (actual knowledge versus conscious avoidance). There is no logical distinction between (i) the Government arguing, in one case, that a defendant committed a particular crime himself, or alternatively, as an aider-and-abettor; and (ii) the Government arguing, here, that the defendant violated the FCPA's domestic concern statute (and conspired to do so), or alternatively, violated the FCPA's territorial jurisdiction statute (and conspired to do so).

In sum, even if the two FCPA statutes were mutually exclusive alternatives (which they are not here), the Government would be permitted to present both theories to the jury. The defendant is entitled to proper jury instructions, not the windfall of pretrial dismissal.

## II. COUNTS SIX THROUGH EIGHT ADEQUATELY ALLEGE VIOLATIONS OF THE MONEY LAUNDERING STATUTE AND DO NOT VIOLATE DUE PROCESS

The defendant does not dispute that the Indictment alleges each and every element of the applicable money laundering charges and sets forth the time and place of the violations in approximate terms. Since nothing further is required to withstand a motion to dismiss, his motion should be denied on that basis alone. In any event, the defendant's arguments fail on the merits. He claims that his wire transfers from Hong Kong did not go "to" the United States or "from" the United States. (MTD Br. 12.) He is wrong. The evidence at trial is expected to show that each of those wires went from Hong Kong to New York, and then from New York to Dubai or Uganda. The defendant's contention that these wires are categorically excluded from Section 1956(a)(2)(A) merely because they may be correspondent bank transfers has no support in the text of the statute, no support in logic, and has been explicitly rejected by multiple courts. Finally, there is no merit to the defendant's claim that it would somehow violate his due process

rights to prosecute him for money laundering.  As alleged, he used U.S. dollars, the U.S.

financial system, and a U.S.-based organization that is registered with the Internal Revenue

Service and maintains U.S. bank accounts, to further two foreign bribery schemes, including

through multiple meetings in New York, New York.  This prosecution does not remotely infringe

on his due process rights.

### A.  Counts Six Through Eight Adequately Allege Violations of Section 1956(a)(2)(A)

#### 1.  Applicable Law

The law is well-settled that "[a]n indictment returned by a legally constituted and

unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."

*Costello v. United States*, 350 U.S. 359, 363 (1956).  Accordingly, dismissal of an indictment is

an "extraordinary remedy reserved only for extremely limited circumstances implicating

fundamental rights."  *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal

quotation marks omitted).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must

be a plain, concise, and definite written statement of the essential facts constituting the offense

charged.'"  *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Fed. R. Crim. P.

7(c)(1) (alterations omitted)).  "An indictment is sufficient if it 'first, contains the elements of the

offense charged and fairly informs a defendant of the charge against which he must defend, and,

second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same

offense.'"  *United States* v. *Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v.

United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102,

108 (2007).  On a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), the

allegations of an indictment must be taken as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

Nor may a defendant seek dismissal of an indictment based on his assertion that the evidence at trial will be insufficient to prove his guilt. "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009) (internal quotation marks and alteration omitted). Rather, a defendant must wait until after the close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. *See* Fed. R. Crim. P. 29; *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992).

### 2. Discussion

Section 1956(a)(2)(A) makes it unlawful to "transport[], transmit[], or transfer[], or attempt[] to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A). There are thus two straightforward elements: "a defendant must have: (1) transmitted or transferred a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, (2) with the intent to promote the carrying on of specified unlawful activity." *United States v. Zarrab*, No. 15 Cr. 867 (RMB), 2016 WL 6820737, at *15 (S.D.N.Y. Oct. 17, 2016).

The Indictment here is indisputably "valid on its face." *Costello*, 350 U.S. at 363. The Indictment explicitly alleges that the defendant "agreed to transmit and cause to be transmitted" (Count Six) and "transmitted and caused to be transmitted" (Counts Seven and Eight) "funds from China to and through the United States, and from the United States to foreign countries," and that such transfers furthered the alleged bribery schemes. (Ind. ¶¶ 9-12.) The defendant does not argue that the Indictment fails to allege one or more elements of the charged money laundering offenses, or that it fails sufficiently to inform him of the charges against which he must defend. Yet, that is all that an Indictment must do to withstand a motion to dismiss. *See Costello*, 350 U.S. at 363; *Stringer*, 730 F.3d at 124. The defendant argues that, in his view, "[n]one of [the applicable wires] was 'from a place in the United States' or 'to a place in the United States'" (MTD Br. 13 (quoting 18 U.S.C. § 1956(a)(2)(A))), but the Indictment explicitly alleges that the defendant transmitted (and agreed to transmit) funds both "to" the United States and "from" the United States. Because these allegations are sufficient on their face, the defendant's motion to dismiss should be denied.

Indeed, rather than challenging the adequacy of the allegations in the Indictment, the defendant challenges the sufficiency of the evidence that he presumes the Government will offer at trial to prove those allegations. (*See* MTD Br. 13 (arguing about "[t]he three wires on which the government predicates counts 6 and 7," even though no specific wires are mentioned in the Indictment).) This is plainly improper. *See Perez*, 575 F.3d at 166-67 (sufficiency of evidence not appropriately addressed on a pretrial motion to dismiss); *see also, e.g.*, *United States v. Elie*, No. 10 Cr. 33, 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) ("[T]here is no summary judgment in criminal cases. . . . [A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." (internal quotation marks

omitted)); *United States v. Bout*, No. 08 Cr. 365, 2011 WL 2693720, at *5 n.73 (S.D.N.Y. July 11, 2011) ("To the extent [the defendant's] challenges are to the sufficiency of the Government's evidence to *satisfy*—as opposed to the sufficiency of the Indictment to *allege*—the federal elements of the crimes charged, those arguments are not appropriately decided on a motion to dismiss." (internal quotation marks omitted; emphasis in original)).

In any event, even if the Court reaches the merits of the defendant's arguments, the motion to dismiss should be denied, for the reasons set forth below.

### B. The Correspondent Bank Wires Were Transmitted "To" the United States and "From" the United States Within the Meaning of Section 1956(a)(2)(A)

The Government presently intends to offer evidence as to Counts Six through Eight establishing that the defendant agreed to transmit, transmitted, and/or caused to be transmitted at least the following wires in furtherance of the charged bribery schemes:

| **DESCRIPTION** | **WIRE FROM** | **WIRE TO** |
|---|---|---|
| March 25, 2015 transfer of $200,000 to Gadio's firm | HSBC (Hong Kong) – account of Energy NGO | HSBC (New York) – correspondent account |
| | HSBC (New York) – correspondent account | Mashreq Bank (New York) – correspondent account |
| | Mashreq Bank (New York) – correspondent account | Mashreq Bank (Dubai) – account of Gadio's firm |
| July 3, 2015 transfer of $200,000 to Gadio's firm | HSBC (Hong Kong) – account of Energy NGO | HSBC (New York) – correspondent account |
| | HSBC (New York) – correspondent account | Mashreq Bank (New York) – correspondent account |
| | Mashreq Bank (New York) – correspondent account | Mashreq Bank (Dubai) – account of Gadio's firm |
| May 6, 2016 transfer of $500,000 to account designated by Ugandan Foreign Minister | HSBC (Hong Kong) – account of Energy NGO | Deutsche Bank (New York) – correspondent account |
| | Deutsche Bank (New York) – correspondent account | Stanbic Bank (Uganda) – account of purported charitable foundation |

As set forth above, each of these sets of transactions involved a wire from a foreign country "to" the United States—*i.e.*, the wire from HSBC (Hong Kong) to HSBC's correspondent bank in New York (either HSBC or Deutsche Bank)—as well as a wire "from" the United States to a foreign country—*i.e.*, the wire from the correspondent bank in New York to the bank of the ultimate beneficiary in Dubai or Uganda.

The defendant contends that, in his view, these wires did not go "to" and "from" the United States, but instead solely went "through" the United States. (MTD Br. 13.) His argument

proceeds as follows: (i) the statute "uses all three terms" (to, from, and through) and thus the terms must "have distinct meanings," (ii) if the correspondent bank wires set forth above went "to" and "from" the United States, then "anytime a transfer goes 'through' the United States, it also goes 'to' it and 'from' it," and (iii) since the Government's interpretation would thus "render the term 'through' superfluous," the Court should hold that correspondent bank wires fall outside the statutory ambit of Section 1956(a)(2)(A). (*Id.* 14.) But this syllogism rests on a faulty premise: to accept that the wires described above went "to" and "from" the United States does *not* require finding that the same is true "anytime a transfer goes 'through' the United States" (*id.* 13). If, for example, someone were to fly from Canada to Mexico carrying $10,000 cash, then the question would be squarely presented whether funds that were transported *through* the United States—but which never came to a rest, even momentarily, in the United States—went "to" or "from" the United States within the meaning of Section 1956(a)(2)(A). But that is not what happened here. Here, the evidence is expected to show that there were multiple discrete wire transfers, in which funds were transmitted and credited to bank accounts in New York, and then debited from those accounts and transferred outside the United States to other bank accounts. Thus, to hold that the wires here went "to" and "from" the United States does not require holding that the term "through" has no meaning.

The Government's position in this respect is not just in accord with the statute's language, but also is supported by precedent. The Second Circuit has explained, in the analogous context of a civil forfeiture proceeding, that correspondent bank wires involve discrete financial transactions "to" and "from" the United States, rejecting the contention that such wires merely pass "through" the United States:

> Claimants argue that [electronic funds transfers ("EFTs"),
> *i.e.*, wire transfers] are not seizable properties for purposes

of the civil forfeiture statutes because they are merely electronic communications. They claim that an EFT is not a direct transfer of funds, but rather a series of contractual obligations to pay. . . .

The claimants' conception of the intermediary banks as messengers who never hold the goods, but only pass the word along, is inaccurate. On receipt of EFTs from the originating banks, the intermediary banks possess the funds, in the form of bank credits, for some period of time before transferring them on to the destination banks. While claimants would have us believe that modern technology moved the funds from the originating bank through the intermediary bank to their ultimate destination without stopping, that was not the case. **With each EFT at least two separate transactions occurred: first, funds moved from the originating bank to the intermediary bank; then the intermediary bank was to transfer the funds to the destination bank** . . . . While the two transactions can occur almost instantaneously, sometimes they are separated by several days. Each of the amounts at issue was seized at the intermediary bank after the first transaction had concluded and before the second had begun.

*United States v. Daccarett*, 6 F.3d 37, 54 (2d Cir. 1993) (emphasis added).

The decision in *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1 (D.D.C. 2008) ("*Julius Baer I*") relied on *Daccarett* and is directly on point. There, the court addressed "whether the money laundering statutes [including Section 1956(a)(2)] apply to defendant properties that were transferred from a foreign bank, through a United States financial institution, and then to another foreign bank," thus making them subject to civil forfeiture. *Julius Baer I*, 571 F. Supp. 2d at 11. The "[c]laimants argue[d] that jurisdiction cannot be based on these provisions because the funds or the transactions did not originate in or end in the United States or involve a United States person." *Id.* The court rejected this argument, noting that "the United States has identified numerous transactions that occurred via United States financial institutions," and concluding that "[t]o require more would be to suppose

that Congress did not intend to criminalize the use of United States financial institutions as clearinghouses for criminal money laundering and conversion into United States currency." *Id.* at 12. With respect to Section 1956(a)(2) in particular, the claimants raised the exact same argument the defendant raises here: that "the transactions at issue [should be viewed] as a single transfer—that is, for example, that a transaction that began in [Country 1], went from [Country 1] to a United States financial institution, and from that United States financial institution to [Country 2], should be viewed as a single transaction or transfer from [Country 1] to [Country 2]." *Id.* at 13. Rejecting this contention, and relying on the Second Circuit's decision in *Daccarett*, the court stated that it "disagreed with Claimants' analysis of the movement of the assets" and held that correspondent bank wires constitute separate transfers "to" and "from" the United States, and thus fall within Section 1956(a)(2). *Id.* (citing *Daccarett*, 6 F.3d at 54).

The court adhered to this holding in *United States v. All Assets Held at Bank Julius Baer & Co. Ltd.*, 251 F. Supp. 3d 82 (D.D.C. 2017) ("*Julius Baer II*"). The court noted that, in *Julius Baer I*, the claimants argued that international wires did not fall within Section 1956(a)(2) "because each EFT is a single transaction from a foreign bank account to another foreign bank account that only incidentally passes through a U.S. financial institution," and noted that "[t]he [c]ourt rejected this argument" and held, "[b]ased on Second Circuit precedent," that each transaction involved separate wires "to" and "from" the United States. *Julius Baer II*, 251 F. Supp. 3d at 93. After rejecting the claimants' new arguments, the court "again conclude[d] that EFTs are two transactions: one transaction into the United States and one transaction out of the United States." *Id.* at 94 (footnote omitted). The court explained, "To conclude that the money laundering statute does not reach EFTs simply because [the claimant] himself did not choose a U.S. bank as the correspondent or intermediate bank for his wire transfers would frustrate

Congress's intent to prevent the use of U.S. financial institutions as clearinghouses for criminals." *Id.* at 95 (internal quotation marks omitted).[5]

Indeed, Judge Pauley recently relied on *Julius Baer II* to reach the same conclusion: that correspondent bank wires go "to" and "from" the United States. *See United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 693 (S.D.N.Y. 2017) ("[I]nternational wire transfers do not merely ricochet off of U.S. correspondent banks. . . . Rather, each transfer requires two separate transactions that cross the U.S. border—once upon entering a U.S. account and once upon exiting a U.S. account." (internal quotation marks omitted) (citing *Julius Baer II*)); *see also Zarrab*, 2016 WL 6820737, at *15 (indictment adequately alleged a violation of Section 1956(a)(2)(A) where it alleged that "[an entity linked to the defendant] . . . caused an international wire transfer from [one country] to [another country] . . . which was processed by a United States bank").

The defendant relies principally on *United States v. Harris*, 79 F.3d 223 (2d Cir. 1996) (cited at MTD Br. 14), but it does not support his position. There, the court simply held that the defendant could not avoid criminal liability under Section 1956(a)(2) by structuring his wire transfers into separate stages, where the first wire—from New York to Connecticut—was

---

[5]       The defendant ignores *Julius Baer I*. He addresses *Julius Baer II* in the last paragraph of his argument, stating that it "provides a recent and instructive contrast to this case." (MTD Br. 18.) The defendant claims that the court's analysis was based on the definition of the term "transaction" in Section 1956(c). (*Id.* 19 (citing *Julius Baer II*, 251 F. Supp. 3d at 95).) That is incorrect. The court stated that "[t]he definition of the term 'transaction' in 18 U.S.C. § 1956(c) *is further indication* that Congress intended Section 1956 to cover EFTs." *Julius Baer II*, 251 F. Supp. 3d at 95 (emphasis added). The defendant's suggestion that the court somehow distinguished between Section 1956(a)(1), which uses the term "transaction," and Section 1956(a)(2), which does not, is wholly absent from the court's actual opinion. This distinction played no role in the court's analysis. Rather, as set forth above, the court's conclusion that Section 1956 reaches correspondent bank wires was based on Second Circuit precedent establishing that such wires are "to" and "from" the United States.

"designed to conceal the nature, location, source, and ownership of the funds" but was purely domestic, and the second wire—from Connecticut to Switzerland—was international but had no purpose of concealment. *Harris*, 79 F.3d at 231. The court held that the defendant violated Section 1956(a)(2) because "each stage was an integral part of a single plan to transfer funds 'from a place in the United States to or through a place outside the United States.'" *Id.* (quoting 18 U.S.C. § 1956(a)(2)). To the extent that this decision is relevant to the issue here, it cuts strongly in favor of the Government's position. The court made clear that the money laundering laws apply expansively to courses of conduct in which defendants use the U.S. financial system to further criminal activity. In holding that the defendant in *Harris* could not escape liability through clever structuring, the court did not remotely suggest that criminals who utilize U.S. banks to move money internationally should be shielded from liability. Not surprisingly, it does not appear that any court has read *Harris* as the defendant proposes, and instead, as discussed above, multiple courts since *Harris* have continued to hold that correspondent bank wires involve discrete transfers "to" and "from" the United States. *See, e.g.*, *Prevezon*, 251 F. Supp. 3d at 693; *Julius Baer I*, 571 F. Supp. 2d at 11-13; *Julius Baer II*, 251 F. Supp. 3d at 93-95.

### C. This Prosecution Does Not Violate The Defendant's Due Process Rights

The defendant also contends that to prosecute him "for money laundering when the only connection between Dr. Ho and the United States that is relevant to the money laundering charges is that three wires momentarily passed through the United States would violate due process." (MTD Br. 20.) This argument should be rejected out of hand, because (i) it is not properly raised on a motion to dismiss, which may be directed solely at the legal sufficiency of the allegations in the Indictment, and (ii) in any event, the Government expects the evidence at trial to show that the defendant's offense conduct had multiple substantial connections with the United States.

### 1. Applicable Law

It is well established that, "as a general proposition, Congress has the authority to 'enforce its laws beyond the territorial boundaries of the United States.'" *United States v. Ramzi Yousef*, 327 F.3d 56, 86 (2d Cir. 2003) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)). The Supreme Court itself has never suggested that the Due Process Clause limits Congress's authority to do so with respect to criminal statutes, but the Second Circuit has held that "'[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.'" *Ramzi Yousef*, 327 F.3d at 111 (quoting *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990)). However, "cases in which even the extraterritorial application of a federal criminal statute has been 'actually deemed a due process violation' are exceedingly rare, and a defendant's burden 'is a heavy one.'" *United States v. Hayes*, 99 F. Supp. 3d 409, 422 (S.D.N.Y 2015) (quoting *United States v. Ali*, 718 F.3d 929, 944 n.7 (D.C. Cir. 2013)), *aff'd*, 118 F. Supp. 3d 620, 628-29 (S.D.N.Y. 2015); *see also United States v. Mostafa*, 965 F. Supp. 2d 451, 460 (S.D.N.Y. 2013) (Forrest, J.) (locating only two reported cases finding due process violation on nexus grounds, both of which involved "no allegation of harm to U.S. persons or interests").

A due process challenge based on an alleged lack of territorial nexus with the United States is particularly disfavored "where the prosecution is challenged at the pleading stage." *Hayes*, 99 F. Supp. 3d at 422. This is because a motion to dismiss is restricted to the face of the Indictment and cannot prejudge the sufficiency of the Government's expected evidence— including evidence of a nexus between the offense conduct and the United States. *Id.* (citing *United States v. Mohamed Ibrahim Ahmed*, No. 10 Cr. 131, 2011 WL 5041456, at *3 (S.D.N.Y.

Oct. 21, 2011) ("[W]hether the government can adequately prove an effect o[n] interstate and foreign commerce should not be resolved prior to trial as long as the indictment itself is sufficient on its face."); *United States v. Remire*, 400 F. Supp. 2d 627, 630-31 (S.D.N.Y. 2005) ("Given the limited information that is before the Court, it is not possible to undertake the detailed factual analysis required to assess whether the government will be able to meet its jurisdictional burden.")).

### 2. Discussion

As an initial matter, there is no basis in law for the defendant to assert that the Indictment fails to allege, with respect to the money laundering charges, a sufficient nexus between the offense conduct and the United States. "[T]he Government is not required to set out the nature of the nexus to the United States in the indictment itself." *United States v. Ahmed*, 94 F. Supp. 3d 394, 425 (E.D.N.Y. 2015). Rather, an indictment "need only provide sufficient detail to . . . state the elements of the offense charged." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). And a territorial "nexus" with the United States is not a distinct element of any of the crimes charged here. *Cf. United States v. Jamal Yousef*, 750 F.3d 254, 260 (2d Cir. 2014) (territorial nexus is not an element of an offense under the material support statute and need not be alleged in the indictment). The defendant's due process claim can, and should, be rejected on that basis.

In any event, the Government expects the evidence at trial to establish that the defendant's offense conduct had multiple and substantial connections to the United States. For instance, (i) the defendant carried out the bribery and money laundering schemes in his capacity as the Secretary-General of an organization, the Energy NGO, which was based, in part, in Northern Virginia, was registered as a charitable organization with the Internal Revenue Service,

maintained U.S. bank accounts, and had multiple connections to the UN, which is headquartered in New York, New York, including that the Energy NGO was designated as an NGO with "Special Consultative Status" with the UN's Economic and Social Council; (ii) the defendant carried out the schemes to benefit the Energy Company, affiliates of which are incorporated in New York State and maintained an office in New York, New York; (iii) the three sets of international wires described above, which the defendant transmitted or caused to be transmitted in furtherance of the schemes, were sent from a Hong Kong-based account of the same NGO that was based, in part, in Northern Virginia; (iv) the defendant carried out the schemes through his use of the U.S. financial system, including paying and offering bribes in U.S. dollars and paying Gadio in U.S. dollars, thus taking advantage of the sophisticated and reliable framework (including New York-based correspondent banks) available within the United States to enable such payments to be executed efficiently; (v) the defendant carried out the schemes using email accounts maintained by U.S. service providers (in particular, Google) and U.S.-based email servers; and (vi) the defendant applied for and received a U.S. visa, and traveled to the United States to attend meetings that furthered the schemes, including meetings in New York, New York, with Gadio and with the Ugandan Foreign Minister, who at the time was the President of the UN General Assembly.

The defendant argues that the correspondent bank wires were "[t]he only acts underlying the crime of money laundering that took place in the United States." (MTD Br. 21.) That is plainly incorrect. The defendant is charged under Section 1956(a)(2)(A) which has, as an essential element, that the defendant acted "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A). The defendant is also charged with conspiracy to commit money laundering. Thus, in evaluating the nexus between the defendant's

offense conduct and the United States, the Court must consider all of the defendant's conduct in relation to the charged schemes. *See, e.g.*, *United States v. Budovsky*, No. 13 Cr. 368 (DLC), 2015 WL 5602853, at *5 (S.D.N.Y. Sept. 23, 2015) (denying motion to dismiss on basis of alleged due process violation, finding that the defendant's "nexus argument is meritless" because of the anticipated evidence that the defendant "engaged in money laundering with the object of transferring funds in and out of the United States," and also noting various other alleged facts, unrelated to the transfer of money, which would "establish a sufficient nexus with the United States").

In sum, the defendant has not remotely met his burden of establishing—especially on a motion to dismiss the indictment—that it would be "arbitrary or fundamentally unfair," *Ramzi Yousef*, 327 F.3d at 111, to prosecute him for money laundering. The defendant carried out his scheme using, among other things, U.S. dollars and the U.S. financial system. "If . . . United States currency has been the bedrock of international trading and commerce, then Congress was justified in attempting to oversee the use of United States financial institutions and in seeking to prevent their use as clearinghouses for criminals." *Julius Baer I*, 571 F. Supp. 2d at 12. This does not "make the United States the 'policeman of the world.' . . . [I]t only makes the United States government the police of criminal conduct that takes place, at least in part, in this country." *Id.*

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss should be denied.

Dated: New York, New York
       May 15, 2018

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

                     By:      s/ Douglas S. Zolkind
                              Daniel C.  Richenthal
                              Douglas S. Zolkind
                              Thomas McKay
                              Assistant United States Attorneys
                              (212) 637-2109/2418/2267

                              SANDRA MOSER
                              Acting Chief, Fraud Section
                              Criminal Division

                     By:       s/ David A. Last
                              David A. Last/Paul A. Hayden
                              Trial Attorneys
                              (202) 616-5651/353-9370