

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**BENJAMIN E. ROSENBERG**

benjamin.rosenberg@dechert.com
+1 212 698 3622 Direct
+1 212 698 0495 Fax

May 16, 2018

**VIA EMAIL**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Chi Ping Patrick Ho*, 17 Cr. 779 (KBF)

Dear Judge Forrest:

This letter is respectfully submitted on behalf of Defendant Chi Ping Patrick Ho in the above-referenced action. At the May 2nd hearing, the Court asked each side to submit a letter addressing several points. Our responses to the Court are as follows:

1.   <u>Additional Security for the Bail Package</u> - At the hearing, the Court suggested the defense explore with the government arrangements that would allow the government readily to satisfy any breach of Dr. Ho's bail obligations out of the substantial equity in the houses of Dr. Ho's mother and brother in Hong Kong (in addition to the $2 million in cash from Dr. Ho and the obligations of five co-signers of the bond). We have made two such proposals to the government, described below, and continue to discuss other alternatives with international banks that have operations here and in Hong Kong. In our last conversation with the prosecutor, however, it was made clear that the government will not agree to any such proposal however constructed.

Specifically, we first proposed, after consulting real estate experts in Hong Kong, that the deeds to the two homes, free of any debt,[1] be delivered here in the United States to the Court with the equivalent of a judgment of confession that would allow the Court to hand over the deeds to the government if Dr. Ho were to flee. The government could then sell the properties to a third party or move to evict Dr. Ho's mother and brother in summary proceedings in Hong Kong and then sell the properties.[2] In response, the government summarily rejected this proposal despite the

---

[1]   Dr. Ho's brother, Joseph, has agreed, despite the burden on him, to pay off the existing debt to facilitate this proposal.

[2]   If the government did not want to be a party to litigation in Hong Kong, it could readily assign its rights to a third party, which is apparently a common practice in Hong Kong.



Hon. Katherine B. Forrest
May 16, 2018
Page 2

well-established eviction procedures in Hong Kong because it was concerned that the Chinese government might somehow override the judicial processes in Hong Kong as a political matter. The government has not provided any evidence that such an act has happened before much less that China would do so in this case involving a Hong Kong resident.

We then proposed that in lieu of delivering the deeds to the Court, the government consider accepting an additional $2,000,000 - $3,000,000 that Dr. Ho's relatives would raise using their homes as collateral even though that arrangement would be very expensive and cumbersome for Dr. Ho's relatives. The government rejected that idea because in the prosecution's view it is possible that the Chinese Energy Company (the "Company") would pay off the debts to the banks if Dr. Ho fled. Again the government has not provided any factual basis to believe that such an occurrence is likely, particularly since a creditor's committee now controls the finances of the Company.[3]

In any event, given the prosecution's apparent unwillingness to consider any bail package, we make the following proposal to the Court: In addition to the $10 million bond secured by $2 million in cash from Dr. Ho and 5 co-signers as well as the electronic monitoring and global extradition waiver, Dr. Ho's mother and brother are willing to (a) deposit the unencumbered deeds to their homes in Court, plus (b) $1 million in additional cash, both subject to documentation permitting the Court summarily to turn-over the deeds and the cash to the government if Dr. Ho flees. Thus, the $10 million bond will be secured by more than $7M in assets, including the homes of his brother and mother, as well as the signatures of Dr. Ho and 5 friends who are United States residents. Given Dr. Ho's steadfast determination to vindicate his name rather than flee, we strongly believe this bail package is more than sufficient to satisfy the Bail Reform Act and constitutional standards.

2.      *Pimentel* Calculation – The Court also asked for a calculation of the Guidelines range should Dr. Ho be convicted of all of the counts in the indictment. We continue to believe that the chart of actual sentences in FCPA cases is the more relevant indicator of motive to flee. Nonetheless, our initial review of guidelines calculation is as follows:

        A.      Because the applicable guidelines provision for each of the counts is either 2C1.1 or 2S1.1, all of the counts are grouped. *See* § 3D1.2(d).

---

[3] We have also explored the possibility of an international bank taking the deeds in Hong Kong and providing a line of credit to the government here so that the government could then draw upon the line of credit in the event of Dr. Ho's flight. We have been unable to date to find an international bank that wishes to engage in such an unusual transaction especially (1) with persons who are not currently customers of the band, and (2) in the context of a criminal case.



Hon. Katherine B. Forrest
May 16, 2018
Page 3

B.   The offense level applicable to the single group under the FCPA guideline (2C1.1) is 34;[4] the offense level applicable to the single group under the money laundering guideline (2S1.1) is 26.[5] The higher level is used. *See* 3D1.3(b).[6]

C.   Dr. Ho has no criminal history points.

D.   Therefore, assuming a conviction after trial, Dr. Ho's Guidelines range would be 151-188 months.

3.   *Curcio* Hearing – As was stated at the May 2 hearing, Dr. Ho's legal bills have been paid to date by the Company or its affiliates. While we hope that the Company will continue to honor the indemnification obligations, there is no guarantee it will do so. Nonetheless, we do not

---

[4]

| | | | |
|---|---|---|---|
| Base offense level: | | 12 | [2C1.1(a)(2)] |
| Adjustment for more than one bribe | | + 2 | [2C1.1(b)(1)] |
| Adjustment for the amount of the alleged bribe (between $1,500,000 and $3,500,000): | | + 16 | [2C1.1(b)(2); 2B1.1(I)] |
| Adjustment because alleged bribe involved an elected official | | + 4 | [2C1.1(b)(3)] |
| No further adjustments | | +/- 0 | Chapter 3A-3C |
| **Total** | | **34** | |

[5]

| | | | |
|---|---|---|---|
| Base offense level: | | 8 | [2S1.1(a)(2)] |
| Adjustment for the amount of the alleged bribe (between $1,500,000 and $3,500,000): | | + 16 | [2S1.1(a)(2); 2B1.1(I)] |
| Adjustment because alleged offense violated 18 U.S.C. § 1956(a) | | + 2 | [2S1.1(b)(2)(B)] |
| No further adjustments | | +/- 0 | Chapter 3A-3C |
| **Total** | | **26** | |

[6] The government has shared its views of the guidelines calculations with us, and we and the government disagree on two points. First, the government contends that 2S1.1(a)(1) applies, whereas we contend that 2S1.1(a)(2) applies. The difference is two levels. Second, the government contends that the guidelines level should be increased by four levels pursuant to 3B1.1(a) (organizer or leader); we believe that a role enhancement is unsupported by the record and, even accepting the government's rendition of the facts, may support a downward adjustment. In any event, we believe that it is probably prudent to assume that any role in the offense adjustments must await full development of the record, and we therefore propose no adjustments.

16548967



Hon. Katherine B. Forrest
May 16, 2018
Page 4

object to the Court holding a *Curcio* hearing. We note that the hypothetical scenario the government has described that may give rise to a potential conflict—that the defendant would want to raise a defense with which the Company would be unhappy (May 2 hearing transcript at 11-12)—could arise in in every case in which a defendant has been indemnified by an entity. The government has not commonly requested that other courts in this district hold *Curcio* hearings in such cases, yet it chose to raise the issue in this case in connection with its opposition to bail.

If the Court were to determine to hold a *Curcio* hearing, we would respectfully submit that it would be appropriate for Dr. Ho first to be afforded an independent lawyer, at his own expense, to advise him about potential conflicts posed by the Company paying his legal fees. We would propose that the independent lawyer be Richard Weinberg of the law firm Morvillo Abramowitz Grand Iason & Anello PC. Mr. Weinberg is an experienced practitioner. We have proposed his name to the government, and the government has no objection to him being the independent lawyer to advise Dr. Ho. A copy of Mr. Weinberg's curriculum vitae is attached. We would anticipate submitting in advance of the hearing proposed questions for the Court's consideration to pose to Dr. Ho.

Respectfully submitted,

Benjamin E. Rosenberg

Enclosures

cc:  All counsel of record
     Mr. Richard Weinberg, Esq.

16548967

# Morvillo Abramowitz
# Grand Iason & Anello PC

## Richard D. Weinberg

Richard D. Weinberg has substantial expertise and experience in representing individuals and corporations in investigations by the Securities and Exchange Commission, the Financial Industry Regulatory Authority, the United States Department of Justice, and state regulatory agencies, and in conducting corporate internal investigations.

He represents clients in highly sensitive and complex civil litigation and regulatory enforcement matters such as those involving allegations of improper trading, misleading or incomplete disclosure, market manipulation, and other forms of financial fraud. He also represents individual and corporate clients in parallel investigations conducted by both the Securities and Exchange Commission and the United States Department of Justice.

Named a leading lawyer by *Chambers USA: America's Leading Lawyers for Business* in the areas of Litigation: White Collar Crime & Government Investigations and Securities: Regulation: Enforcement, Rick has been described as a "really excellent lawyer and the most calming person on the planet." He is recommended by *The Legal 500 United States* for Securities Litigation and White Collar Criminal Defense. *Benchmark Litigation: The Definitive Guide to America's Leading Litigation Firms & Attorneys* recognized Rick as a "Litigation Star" in the area of White-Collar Crime/Enforcement/Investigations. He has been recognized in the area of Criminal Defense: White Collar by *Best Lawyers in America*. In addition, Who's *Who Legal – The International Who's Who of Business Lawyers* has recognized Rick as a leading business crime defense lawyer and described him as "smart, intelligent and thoughtful." Rick has also been recognized in Thomson Reuters' *Super Lawyers*.

Rick rejoined Morvillo Abramowitz as a partner in 2006. He had been a partner at Morvillo Abramowitz during most of the 1990s and left the firm in July 2000 to take a position as Assistant General Counsel and First Vice President of Merrill Lynch.

He began his legal career as a law clerk for the Honorable Harold R. Medina of the U.S. Court of Appeals for the Second Circuit. After his clerkship, he served as an Assistant Special Prosecutor in the Watergate Special Prosecution Force and later as an Assistant U.S. Attorney for the Southern District of New York where he served as Chief Appellate Attorney.

**Education**

Columbia University Law School, J.D.; Editor, *Columbia Law Review*

Cornell University, B.S.

**Admissions**

New York

United States Court of Appeals for the District of Columbia Circuit

United States Court of Appeals for the Second Circuit

United States Court of Appeals for the Fifth Circuit

United States Court of Appeals for the Ninth Circuit

United States District Court for the Eastern District of New York

United States District Court for the Southern District of New York

**Experience**

Law Clerk, Honorable Harold R. Medina, United States Court of Appeals for the Second Circuit

Assistant Special Prosecutor, Watergate Special Prosecution Force

Assistant United States Attorney, United States Attorney's Office, Southern District of New York

Chief Appellate Attorney, Southern District of New York

Assistant Deputy Commissioner of Investigation, City of New York

Assistant General Counsel and First Vice President, Merrill Lynch, 2000–2006

© 2018 Morvillo Abramowitz Grand Iason & Anello PC, All Rights Reserved.