1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              17 Cr. 779 (KBF)

5   CHI PING PATRICK HO,

                                            Hearing
6            Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            June 11, 2018
9                                           1:10 p.m.

10

    Before:
11
                    HON. KATHERINE B. FORREST,
12
                                            District Judge
13
                            APPEARANCES
14
    GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16  DANIEL RICHENTHAL
    PAUL A. HAYDEN
17       Assistant United States Attorney

18  MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
         Attorneys for Defendant (*Curcio*)
19  RICHARD D. WEINBERG

20  DECHERT, LLP
         Attorneys for Defendant
21  ANDREW J. LEVANDER
    BENJAMIN E. ROSENBERG
22
    KRIEGER KIM & LEWIN LLP
23       Attorneys for Defendant
    EDWARD KIM
24  JONATHAN L. BODANSKY
    JONATHAN BOLZ
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

1          (Case called)

2          THE COURT:  Good afternoon, folks.  We're here today

3    because there had been a question raised at one point, I think

4    sort of two sessions ago that related to Dr. Ho's fees being

5    paid by an entity that we're calling the "Energy Company" and

6    whether that created any kind of *Curcio* issue.

7          We proceeded as follows.  I had suggested that

8    Mr. Levander -- who sort of suggested that he could do this if

9    it was necessary -- have Mr. Weinberg come in and meet with

10   Mr. Ho and discuss any issues with Mr. Ho that could or might

11   arise as a result of the payment of the fees, that that

12   independent counsel could then give Mr. Ho independent advice

13   on the issue, and that we could reconvene and discuss it

14   further.

15         That had then been done.  Mr. Levander represented

16   that it had been done at the last session.  So we're now ready

17   to get a report from you, Mr. Weinberg, on whether or not

18   you've, in fact, been able to meet with Mr. Ho at this point?

19         MR. WEINBERG:  I have, your Honor.  I've met with

20   Dr. Ho on three separate occasions and I've explained to him

21   what I believe to be the potential conflict.  I've discussed

22   the matter with him, I believe, extensively and I believe we're

23   prepared to proceed with the *Curcio* hearing.

24         THE COURT:  Tell me, Mr. Weinberg, do you understand

25   whether or not at this point in time, Mr. Ho is prepared to

1   waive any potential conflict?  What's your understanding?  I'll

2   ask him directly, but your understanding?

3           MR. WEINBERG:  He believe he is, your Honor.

4           THE COURT:  Do you believe, based upon what you

5   understand the issue to be, that that waiver is something that

6   as his legal advisor, you do not think is ill-advised?

7           MR. WEINBERG:  I do not believe it is ill-advised at

8   all, your Honor.

9           THE COURT:  Thank you.

10          Then let me talk to Dr. Ho then directly.

11          THE DEFENDANT:  Of course, your Honor.

12          THE COURT:  So Dr. Ho, the name *Curcio*, we call these

13  things *Curcio* hearings, because as I described at a prior

14  session -- if I didn't, I'll do it now -- it's named after an

15  individual who was a defendant in a case.  So it's come to be

16  called a *Curcio* hearing because that's the name of the person

17  where this doctrine arose.

18          Now, a *Curcio* hearing arises whenever there's any

19  question about whether or not the lawyers for a defendant could

20  have any kind of either potential conflict of interest or an

21  actual conflict of interest.  If there's any potential or

22  actual conflict of interest, the Court has a duty of inquiry,

23  first, to determine, first, what the parameters -- what the

24  contours of that potential conflict or actual conflict are,

25  what it's all about; and then to also inquire of the defendant,

I6CRSH1C                                                                    4

1    ensure that the defendant understands the issue and then

2    inquire of the defendant, whether the defendant wants to waive

3    any potential conflict.

4            So let me circle back for a moment and tell you what I

5    understand the issue is and then I'm going to ask people to

6    fill if in if they think there's something else.

7            First, under the Sixth Amendment of the U.S.

8    Constitution, you are entitled to, Dr. Ho, to counsel, to

9    lawyers that are free from any and every kind of conflict.

10   There are two types of duties that lawyers owe to you:  A duty

11   of loyalty and a duty of confidentiality.  And you are entitled

12   to counsel who are free from any conflict at all in terms of

13   their loyalty to you and that they should maintain your

14   confidences entirely, just between you and them, and not reveal

15   them to anybody else.  So that conflict-free counsel is

16   something that you are entitled to.

17           And the issue that brings us here now is that the

18   energy company, which plays a role, as you know, in the

19   indictment and in the complaint, the energy company, as I

20   understand it from our discussions on the record at prior

21   sessions, may be paying or are paying your fees.

22           The question is whether or not that could, down the

23   road, lead to any issue as to whether or not the energy company

24   could be providing instructions to your lawyers.  Mr. Levander

25   has said they are not, that this is not more than just the

1  common type of practice that we are all familiar with, where

2  companies often pay for their employees' lawyers, but there's a

3  question as to whether or not there was any kind of

4  instructions that either have been given or could be given --

5  Mr. Levander has said that there are not -- and also issues as

6  to whether or not potentially in communicating about any

7  finances, there could be any leakage of confidential

8  information, and/or whether there could be other communications

9  that could result in leakage of information.

10        I want to be quite clear about this.  I have no reason

11  to believe that any of the counsel of record in this matter

12  would ever violate any duties that they owe you, Dr. Ho.  I

13  have no reason to believe that.  It's my obligation to explain

14  to you what has been raised and what could be a concern.

15  Because I can't know exactly -- nobody can really know exactly

16  how it might come up in the future, how many issues might arise

17  in the future.  So that's where we are.

18        You've got this company who's named in the papers

19  relating to this criminal matter who are paying your fees and

20  we want make sure that that does not result in any way in your

21  lawyers saying or doing anything that could veer, in any way at

22  all, away from their duties, their clear duties to you.

23        Do you understand the issue?

24        THE DEFENDANT:  Yes, I do, your Honor.

25        THE COURT:  So describe to me what you understand the

6

I6CBSCH1C

1  issue to be.  Don't talk to me about the advice you've gotten

2  from Mr. Weinberg, Mr. Levander, or Mr. Kim or anyone else.

3  Just tell me what you think the issue is so I can be sure that

4  you understand the issue.

5       THE DEFENDANT:  Fine.  Your Honor, I understand that

6  when the company pays for the legal fees, sometimes the lawyers

7  might listen to the company instead of representing the true

8  interests of this defendant.  And when that happens, that could

9  be a potential conflict of interest.

10       THE COURT:  Right.  Now, at this point in time we

11  don't have any reason to believe that there is any kind of, as

12  I said, direction coming from the company or anything that has

13  created an actual conflict, but do you understand that we just

14  can't know right now how this issue could come up?

15       THE DEFENDANT:  I understand.  Yes, your Honor.

16       THE COURT:  And do you understand if you end up

17  waiving your right to conflict-free counsel -- in other words,

18  you could choose to have lawyers where you pay for them

19  directly or pay for them in some other manner, other than

20  having the energy company pay for them, and in fact, if you

21  couldn't pay the Court would then appoint a lawyer for you who,

22  again, would be free of any of these issues.

23       Do you understand that that's a possibility?

24       THE DEFENDANT:  I understand, your Honor.

25       THE COURT:  Mr. Levander, can you just confirm now on

1    this transcript that you're not receiving any direction and

2    don't expect to receive any direction in terms of how to handle

3    Mr. Ho's legal representation from the company.

4               MR. LEVANDER:  No problem, your Honor.  I've not been

5    given, I don't anticipate getting, and I certainly would not

6    listen to any directions to represent my client other than I

7    think is appropriate to represent him.  I will also further

8    state for the record, we are in the "maybe paying" as opposed

9    to "are paying" category.

10              THE COURT:  I see.  Thank you, sir.  Then I think that

11   that then is consistent with what we had previously talked

12   about.

13              But Mr. Ho, let me go back to my question before.  Do

14   you understand that there are lots of things that might come up

15   down the road?  For instance, the energy company could end up

16   having a witness who could end up coming to the United States

17   who could testify against your interests?  Do you understand

18   that that's a possibility?

19              THE DEFENDANT:  I understand.  Yes, your Honor.

20              THE COURT:  And that we can't be sure how that could

21   or could not impact representation of you.  Do you understand

22   that?

23              THE DEFENDANT:  I understand that, your Honor.

24              THE COURT:  Do you also understand that if you waive a

25   potential conflict like this, you give that issue up forever?

1    In other words, you can't raise it later on as an appeal issue

2    or any kind of trial error issue or any other kind of issue.

3    It's gone.  You've waived it forever.

4            Do you understand that?

5            THE DEFENDANT:  I do, your Honor.

6            THE COURT:  And is anybody forcing you or requiring

7    you to waive this issue?

8            THE DEFENDANT:  No, your Honor.

9            THE COURT:  Has anybody from the energy company called

10   you and asked you to waive any potential conflict?

11           THE DEFENDANT:  Absolutely not, your Honor.

12           THE COURT:  Let me just see if there are any other

13   issues.

14           Is your mind clear right now?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Are you on any kind of medications

17   affecting the clarity of your thinking?

18           THE DEFENDANT:  Absolutely not, your Honor.

19           THE COURT:  Does any counsel have any doubt as to

20   Dr. Ho's competency.

21           MR. RICHENTHAL:  I do not, your Honor.

22           MR. WEINBERG:  I do not, your Honor.

23           THE COURT:  Mr. Levander.

24           MR. LEVANDER:  None.

25           THE COURT:  The Court certainly doesn't.  He's looking

1    me in the eyes.  He's speaking very articulately and very

2    clearly.  I certainly think he is competent to make this

3    decision.  Let me just look and see if there are any other

4    issues.

5         I don't think there's anything else I need to raise.

6    Is there anything else, Mr. Richenthal that you think the Court

7    needs to before I ask the defendant his final decision?

8         MR. RICHENTHAL:  No, I would make two points for the

9    record, both of which have made in prior letters on this

10   subject.

11        First, according to media reports the energy company

12   is now controlled, at least in large part, by the Chinese

13   government.  So our view is when your Honor spoke of the

14   interest of the energy company, it may also be that there are

15   interests here are foreign sovereign that may or may not be

16   aligned with Mr. Ho.  It may be worth confirming his

17   understanding of that as well.

18        THE COURT:  I don't want to go into what he may or may

19   not understand about the ownership of the company, but let me

20   just do this.

21        Dr. Ho, I don't know who the energy company is owned

22   by.  You may or you may not.  I don't know.  But let's assume

23   for the moment that it's owned by China or by some agency of

24   the Chinese government.  Would that in any way change your view

25   as to the decision you're making on the potential conflict?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  So your view is unaffected by the

3    ownership of the energy company?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Even if that ownership happened to be the

6    Chinese government?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Mr. Richenthal.

9          MR. RICHENTHAL:  Then similarly, as is true with many

10   conglomerates, while we speak of the energy company, it has

11   many subsidiaries and affiliates, including U.S. incorporated

12   affiliates, which may be legally distinct, albeit colloquially

13   controlled or directed.  We just ask your Honor to confirm,

14   again, that Mr. Ho's answer would not change if technically the

15   fees were flowing through, say, a U.S. subsidiary as opposed to

16   a conglomerate of a legally distinct method.

17         THE COURT:  Dr. Ho, when I talk about the energy

18   company, I'm talking about the energy company and any of its

19   affiliates anywhere in the world.  Is there any affiliate -- if

20   there was a U.S. affiliate or if it was an affiliate from any

21   other part of the world, would it change your position right

22   now?

23         THE DEFENDANT:  It would not change my position, your

24   Honor.

25         THE COURT:  All right.  Anything else?

1        MR. RICHENTHAL:  Nothing further, your Honor.

2        THE COURT:  So Mr. Weinberg and Mr. Levander, do you

3  have any reason to believe that the defendant, again -- I've

4  asked this before of Mr. Weinberg -- should not waive any

5  potential conflict?

6        MR. WEINBERG:  I have no reason to believe that, your

7  Honor.

8        THE COURT:  And Mr. Levander, any reason that you know

9  of?

10        MR. LEVANDER:  None.

11        THE COURT:  Dr. Ho, you have the right to waive any

12  potential conflict, but it's a permanent waiver.  If you end up

13  being convicted of a crime in this matter, you're not going to

14  be able to use that issue of a potential conflict in any way.

15        What is your final decision?  Would you like to waive

16  any potential conflict that may result from the energy

17  company's payment of your fees or not waive?

18        THE DEFENDANT:  Your Honor, I would waive.

19        THE COURT:  The Court does find a voluntary and

20  knowing waiver by Dr. Ho of any potential conflict of interest

21  that may result from the energy company's payment, or potential

22  payment, of his fees in this matter.

23        Thank you, Dr. Ho.  You may be seated, sir.

24        I want to thank Mr. Weinberg for taking on this

25  matter.  I know you took it on quickly, I have know you have a

1    very busy practice, I very much appreciate it, and the fact

2    that you met with the defendant three times is very much

3    appreciated.  So thank you.

4            MR. WEINBERG:  Thank you for your comments, your

5    Honor.

6            THE COURT:  Is there anything else that we should do

7    right now.  I've got a lot of people here.  I know that we

8    wanted to tie this up to get this issue resolved once and for

9    all.  From my perspective I think we've done that.

10           Is there anything else we can usefully do?

11           MR. RICHENTHAL:  No, just with respect to scheduling,

12   I think the next date on the calendar is July 12.  Your Honor

13   has set that as a tentative hearing date.  Our view is no

14   hearing is warranted.  In any event, it probably makes sense --

15   I talked to the defense about this -- to have some sort of

16   conference for discovery or any other issues that may arise.  I

17   don't  know if your Honors wants to keep that date or set that

18   date.  It might be a productive thing to do while we're here.

19           THE COURT:  You're talking about the hearing on the

20   now fully briefed motion?

21           MR. RICHENTHAL:  Yes, your Honor.

22           THE COURT:  Let us keep that date for a moment.  Let

23   me suggest an agenda for you folks, whether it be that motion

24   or something else, and this might be one of the times when oral

25   argument on this motion might be useful.  But let me send you

1    an agenda on that and also we have the materials that are now

2    by June 30, I think going to be provided to the Court on the

3    other issue and we'll figure out then how to proceed.  I think

4    it's June 30.

5            MR. RICHENTHAL:  If your Honor is referring to the

6    CIPA, Section 4, that's correct.

7            THE COURT:  When we decide how to deal with that

8    issue, I'd like to be very specific, if people are going to be

9    asking for certain proceedings to occur at certain locations,

10   with or without the presence of other people.  Let's just be

11   had very explicit about that so we know where we're going to be

12   doing it, whether we're going to be sealing the courtroom or in

13   the robing room or how we're going to be doing it step by step,

14   because I don't want to run into issues with people not knowing

15   who's invited, who's not invited.  I want everyone to know

16   exactly when things are happening, etc.

17           Anything else that we need to do.  The 13th at 2 p.m.

18           MR. RICHENTHAL:  I had it in my calendar as the 12th.

19           MR. LEVANDER:  The 13th.

20           THE COURT:  Yes, sir.

21           MR. RICHENTHAL:  I don't recall if your Honor had

22   excluded time through today or through the 13th.  I think it

23   was through today.  We would ask in an abundance of caution

24   that it be excluded through the 13th for a variety of reasons

25   including pending motions, production of classified discovery,

1    and the CIPA motions.

2              THE COURT:  I think it's automatically excluded due to

3    the pendency of the currently pending motion that's not yet

4    been resolved.  Let me just take it as an application that in

5    the event that it's resolved before the 13th, that there's an

6    exclusion up to the 13th, and see whether anybody has any issue

7    with that.  It may be form over substance, but let's just see

8    if you have an issue.

9              MR. LEVANDER:  No, your Honor.

10             THE COURT:  The Court does find that it's in interest

11   of justice to prospectively exclude time between today and

12   July 13, 2018, to allow for motion practice to be completed in

13   all respects as well as any CIPA and other issues.  Those

14   interests are in the interest of justice and outweigh the

15   interest of the defendant and the public in a speedy trial.

16   That time is prospectively excluded.

17             Thank you very much, folks.  We're adjourned.

18             (Adjourned)

19

20

21

22

23

24

25