

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2018

**BY ECF**

The Honorable Loretta A. Preska
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

     Re:    ***United States v. Chi Ping Patrick Ho,***
          **17 Cr. 779 (LAP)**

Dear Judge Preska:

    The Government respectfully submits this letter in the above-captioned matter pursuant to the Court's order dated July 11, 2018 (Dkt. 105 ("July 11 Order")) in which the Court directed the Government to respond to certain arguments raised by the defendant in his reply brief in support of his motion to dismiss certain counts of the Indictment (Dkt. 92 ("Def. Rep.")).[1]

    A.  <u>The Defendant's Request to Inspect Grand Jury Minutes</u>

    The Court directed the Government to respond to the defendant's "request to inspect the Grand Jury minutes regarding evidence and instructions as to Counts Four and Five." (July 11 Order 1.) The defendant's request is baseless and should be denied.

        1.  <u>Applicable Law</u>

    The "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979) (noting that the "Supreme Court has consistently recognized" this premise). Indeed, "[s]ince the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye. The rule of grand jury secrecy . . . is an integral part of our criminal justice system." *Id.* at 218 n.9. A party seeking disclosure of grand jury material accordingly must make "a strong showing of particularized need" for the material sought. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958).

---

[1]   This letter does not respond to every argument in the defendant's reply brief, but only those for which the Court requested a response.

Honorable Loretta A. Preska
United States District Judge
July 18, 2018
Page 2

The presumption of secrecy applies equally to legal instructions given to the grand jury, and thus those seeking access to such instructions must likewise demonstrate a particularized need for the pertinent portions of the transcript. *See, e.g.*, *United States v. Stein*, 429 F. Supp.2d 633, 640 (S.D.N.Y. 2006) (defense claim of improper legal instructions, based on public statements made by Department of Justice officials, failed to overcome "presumption of regularity" of grand jury proceedings); *United States v. Johnson*, No. 92 Cr. 39A, 1994 WL 805243, at *7 (W.D.N.Y. May 26, 1995) ("As with a request for a review of grand jury minutes, the secrecy of the grand jury will not be compromised by an order to disclose grand jury instructions without a showing of 'particularized need.'"), *aff'd*, 108 F.3d 1370 (2d Cir.1997); *United States v. Abounnajah*, No. CR-91-00146 (CBA), 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991) ("A defendant is not routinely entitled to grand jury testimony or instructions in order to engage in a fishing expedition in hopes of uncovering an impropriety or defect in the proceedings where he had no basis to conclude that such an impropriety or defect exists"); *United States v. Keystone Automotive Plating Corp.*, Criminal No. 83-306, 1984 WL 2946, at *7 (D.N.J. Jan. 9, 1984) ("[T]he prosecutor's instructions typically . . . involve a weaving of the applicable law with the testimony presented to the grand jury" and "clearly reveal matters occurring before the grand jury").

Moreover, there is no requirement that detailed legal instructions (like those delivered to petit juries) be delivered to grand juries *at all*. *See United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("prosecutor is under no obligation to give the grand jury legal instructions"); *United States v. Ko*, No. 91 Cr. 327, 1991 WL 183361, at *1 (S.D.N.Y. 1991) (same). Indeed, as one leading authority has noted, "[g]enerally, federal courts have deemed instructions sufficient if the prosecutor read the statutory language defining the offense." S. Beale, W. Bryson, J. Felman & M. Elston, *Grand Jury Law & Practice* § 9:10, at 9-59 (2005). Given this principle, "[c]hallenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face." *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986) (rejecting an attack on an erroneous legal instruction that had been provided to the grand jury).

2.  Discussion

The defendant has not remotely made "a strong showing of particularized need" for the grand jury minutes. *Sells Engineering, Inc.*, 463 U.S. at 443. He argues that "the Court should inspect the grand jury minutes to make certain that the grand jury was correctly instructed that it could not indict [him] on counts Four and Five based on his being a domestic concern . . . but only on his being an 'officer, director, employee, [or] . . . agent of a domestic concern.'" (Def. Rep. 5.) As an initial matter, this argument appears to either misunderstand or misconstrue the Indictment. Counts Four and Five are the substantive Foreign Corrupt Practices Act ("FCPA") territorial-jurisdiction charges. They charge the defendant with violating 78 U.S.C. § 78dd-3 based on actions taken in the United States, whereas Counts Two and Three charge the defendant under Section 78dd-2 based on his status as an officer, director, employee, or agent of a domestic concern. Thus, there is no reason whatsoever that the grand jury would have been instructed that

Honorable Loretta A. Preska
United States District Judge
July 18, 2018
Page 3

it could "indict [him] on counts Four and Five based on his being a domestic concern." (Def. Rep. 5.)

In any event, the defendant's request is meritless. He argues that there is a "significant possibility that the grand jury was confused about both the legal and evidentiary grounds on which it could indict [him] for violation of § 78dd-3." (Def. Rep. 5.) As support for this proposition, he points to (1) the fact that "[t]he [G]overnment asserts that Dr. Ho is not a 'domestic concern'" even though the Indictment includes the standard statutory language alleging that he is a domestic concern, and (2) "the [G]overnment says that § 78dd-3 does not require the use of interstate commerce . . . but it does, *see* § 78dd-3." (*Id.*)

As to the first point: As the Government previously stated, and the defendant does not dispute (Def. Rep. 1), "it is the typical and longstanding practice in this district and elsewhere to include each component of a statute in the charging language of an indictment or complaint" (Gov't opposition to motion to dismiss (Dkt. 77) ("Gov't Opp.") 8). As such, merely pointing to that language in the Indictment plainly does not establish a *particularized need* for grand jury minutes in this case. Nor does the inclusion of that charging language somehow demonstrate a "significant possibility" (Def. Rep. 5) that the grand jury was incorrectly instructed on the law. It demonstrates merely that the Government followed the long-standing and typical practice in this district of an indictment tracking statutory language.[2]

As to the second point: The defendant's argument is refuted by the plain language of the statute. Section 78dd-3 makes it unlawful for specific persons, "while in the territory of the United States, corruptly to make use of the mails or any means or instrumentality of interstate commerce *or to do any other act in furtherance of*" a corrupt payment or offer. 78 U.S.C. § 78dd-3 (emphasis added). Thus, the Government was entirely correct in noting that Section 78dd-3 does not *require* the use of the mails or a means or instrumentality interstate commerce. In arguing to the contrary, the defendant cites nothing, apart from selectively quoting the statute and omitting the key language. (Def. Rep. 5.) Furthermore, the defendant's argument fails for an even more fundamental reason: he does not even attempt to link the Government's description of Section 78dd-3's "any other act" element with his claim that there is a "significant possibility" that the grand jury was confused about whether, as an officer, director, employee, or agent of a domestic concern, he could be charged under Section 78dd-3. His argument is a complete *non sequitur*. The Court need not reach the question of whether Section 78dd-3 requires the use of the mails or a means or instrumentality of interstate commerce in order to find that the defendant has failed to establish a particularized need for the grand jury minutes.

Finally, as the Second Circuit has made clear, "[i]n order for prosecutorial misconduct to require a dismissal of the indictment, the prosecutor's conduct must amount to 'a knowing or reckless misleading of the grand jury as to an essential fact,' . . . or 'systematic and pervasive

---

[2]   Even assuming *arguendo* that the defendant were somehow prejudiced by the inclusion of the language at issue, the Government can remedy the issue simply by seeking a superseding indictment that omits the language alleging that the defendant is, himself, a domestic concern.

Honorable Loretta A. Preska
United States District Judge
July 18, 2018
Page 4

prosecutorial misconduct as would undermine fundamental fairness.'" *United States v. Restrepo*, 547 F. App'x 34, 44 (2d Cir. 2013) (citing *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007); *United States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990)).  In the absence of any colorable claim of prosecutorial misconduct—let alone misconduct rising to level that would justify dismissal—there is no basis to inspect the grand jury minutes.  *See United States v. Payden*, 613 F. Supp. 800, 813 (S.D.N.Y. 1985) (denying motion to inspect grand jury minutes, and citing cases).  Here, the defendant makes no such allegation, nor could he.  At most, the defendant alleges merely that he suspects the grand jury may have been "confused" about the elements of Section 78dd-3.  (Def. Rep. 5.)  This unsubstantiated speculation is plainly insufficient to overcome the presumption of regularity that attaches to grand jury proceedings.

## B.   The Defendant's Motion to Dismiss Count One of the Indictment

The Court also directed the Government to respond to the defendant's argument that if the Court dismisses Counts Four and Five (the substantive FCPA territorial-jurisdiction counts), it should also dismiss Count One (the FCPA conspiracy count).   (July 11 Order 1.)   As the Government previously argued, the defendant, as an officer, director, employee, and agent of a domestic concern (and not a domestic concern himself), may be prosecuted not only under Section 78dd-2 (the domestic concern statute), but also under Section 78dd-3 (the territorial jurisdiction statute).   The plain language of the FCPA is abundantly clear that Section 78dd-3 excludes only (1) "issuer[s] . . . subject to section 78dd-1" and (2) "domestic concern[s] (as defined in section 78dd-2[)]."  15 U.S.C. § 78dd-3(a).  Officers, directors, employees, and agents of issuers and domestic concerns are unambiguously *not* contained in the list of exclusions. Accordingly, a nonresident alien, such as the defendant, may be prosecuted under *any* or *all* of the statutes:  Section 78dd-1 (if the defendant is an officer, director, employee, or agent of an issuer), Section 78dd-2 (if the defendant is an officer, director, employee, or agent of a domestic concern), and/or Section 78dd-3 (if the defendant takes one or more applicable acts within the United States).

Even if the defendant were correct that the territorial-jurisdiction counts were inconsistent with the domestic-concern counts (and he is not correct), the proper remedy would not be to dismiss any counts, but rather to instruct the jury that if the Government has met its burden as to either alternative theory, then the defendant is guilty.  (*See* Gov't Opp. 12-14.)  For the same reason, the proper remedy as to Count One would not be to dismiss this count, but rather to instruct the jury about the circumstances in which a defendant may violate Sections 78dd-2 versus 78dd-3, and to further instruct the jury that "to convict, they must find an agreement on at least one of the unlawful objectives and they must be unanimous as to which objective it was."  *Camacho v. United States*, 204 F. Supp. 2d 667, 671 (S.D.N.Y. 2002).

Indeed, as the defendant does not dispute (Def. Rep. 4-5), there have been at least three other cases in which defendants were charged with conspiring to violate *both* the FCPA territorial-jurisdiction statute *and* the FCPA domestic-concern statute.  *See United States v. Ng Lap Seng*, No. 15 Cr. 706 (VSB) (S.D.N.Y.); *United States v. Anthony Mace*, No. 17 Cr. 618 (S.D. Tex.); *United States v. Lawrence Hoskins and William Pomponi*, No. 12 Cr. 238 (D. Ct.).   That is

Honorable Loretta A. Preska
United States District Judge
July 18, 2018
Page 5

unsurprising given the settled law that the Government may allege and prove multiple and/or alternative theories.

    C.    <u>The Defendant's Motion to Dismiss the Money Laundering Charges</u>

Finally, the Court directed the Government to respond to the defendant's argument that "Congress's omission of that 'through' language from § 1956(a)(2) means that it was not intended to apply to transfers that are through a U.S. bank." (July 11 Order 2 (quoting Def. Rep. 12).) The defendant's argument draws a false analogy between two different statutes.

Section 1956(a)(1) makes it unlawful to knowingly "conduct[] or attempt[] to conduct . . . a financial transaction" involving "the proceeds of specified unlawful activity" with the intent to, *inter alia*, promote or conceal the specified unlawful activity. 18 U.S.C. § 1956(a)(1). The term "transaction" is defined to

> include[] a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.

*Id.* § 1956(c)(3).

Unlike Section 1956(a)(1), Section 1956(a)(2)(A) does not require a "transaction." Rather, it applies broadly to any "transport[ation], transm[ission], or transfer[]" of "a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States," with the intent to promote the carrying on of specified unlawful activity. *Id.* § 1956(a)(2)(A).

There is no merit to the defendant's contention that because Section 1956(a)(1) requires a "transaction," which is defined to include payments "through" a financial institution, and Section 1956(a)(2) does not require a "transaction," the latter statute does not apply to correspondent bank wires, such as those in this case. If anything, the fact that Congress did not restrict Section 1956(a)(2)(A) to "transactions" indicates that Congress intended it to apply even *more* broadly than Section 1956(a)(1). In other words, while Section 1956(a)(1) requires conduct that meets the statutory definition of "transaction," Section 1956(a)(2) does not, and a violation of that provision may be established by *any* conduct that results in the movement of funds to or from the United States.

Moreover, it would make no sense for Congress to specify that Section 1956(a)(2) applies to transfers "by, through, or to a financial institution." For purposes of Section 1956(a)(2), it is

Honorable Loretta A. Preska
United States District Judge
July 18, 2018
Page 6

irrelevant whether funds go "by, through or to a financial institution"—or, indeed, whether a financial institution is involved *at all*. All that matters for purposes of this statute is that the funds go from outside the United States to inside the United States, or vice versa, even if transported by hand-delivery. *See also* 18 U.S.C. § 1956(i)(3) (transfer can be via "wire or any other means"). The manner of that movement of funds is irrelevant. As explained in the Government's opposition brief, the Government expects to prove at trial that the wires at issue went from Hong Kong to New York and then on to a foreign country, and, accordingly, they fall within the statutory ambit of Section 1956(a)(2)(A) because they both went "to" the United States "from" a place outside of the United States, and "from" the United States "to" a place outside of the United States. Whether they may also be deemed to have gone "through" the United States is a red herring. (*See* Gov't Opp. 18-24.)

* * *

For the foregoing reasons, and those in the Government's opposition brief, the defendant's motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     s/ Douglas S. Zolkind
        Daniel C. Richenthal
        Douglas S. Zolkind
        Thomas McKay
        Assistant United States Attorneys
        (212) 637-2109/2418/2268

        SANDRA MOSER
        Acting Chief, Fraud Section
        Criminal Division

By:     s/ Paul A. Hayden
        David A. Last
        Paul A. Hayden
        Trial Attorneys
        (202) 616-5651/353-9370

cc:     (by ECF)

        Counsel of Record