**KRIEGER KIM & LEWIN** LLP

500 Fifth Avenue
New York, NY 10110

Telephone: (212) 390-9550
www.KKLllp.com

September 24, 2018

<u>By ECF</u>

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *United States v. Chi Ping Patrick Ho*, 17 Cr. 779 (LAP)

Dear Judge Preska:

  We represent Dr. Patrick Ho in the above-captioned case. We write to make a renewed application for bail.

  On September 14, 2018, the government took the extraordinary step of dismissing all charges against Dr. Ho's co-defendant, Dr. Cheikh Gadio, despite previously asserting that the strength of the case against Dr. Gadio was "apparent" and that "the core facts" pertaining to Dr. Gadio's case were "reasonably not subject to dispute." Bail Hr'g Tr. at 7:25, 8:14–15, *United States v. Gadio*, 17 Mag. 8611 (S.D.N.Y. Nov. 18, 2017), ECF No. 11.

  In the Complaint filed on November 16, 2017, the government alleged that Dr. Gadio and Dr. Ho conspired to bribe the President of Chad, despite the fact that contemporaneous documents demonstrate that this supposed "bribe" was, in fact, a charitable donation. Based on a *Brady* disclosure made by the government on May 15, 2018, we understand that in meetings with the government Dr. Gadio stated in part that he "did not advise Ho to offer a payment for the personal benefit of the President of Chad or other Chadian officials, and he did not enter into an agreement with Ho to make any such payment." Exhibit A at 2. The government has thus far declined to produce the specific statements made by Dr. Gadio or any relevant agreements associated with the dismissal of Dr. Gadio's case, but its decision to dismiss charges against Dr. Gadio suggests that it has credited at least some portion of what Dr. Gadio has told the government.

  The dismissal of the charges against Dr. Gadio is relevant to bail because Judge Forrest's denial of bail was based on the perceived strength of the government's case.[1] Judge Forrest

---

[1] Bail has been extensively litigated in this case. Judge Freeman initially denied bail on December 1, 2017, but observed that it was not "an easy decision." Bail Hr'g Tr. at 40:14, Dec. 1, 2017, ECF No. 22. On December 18, 2017, the case was assigned to Judge Forrest, who denied bail on February 5, May 2, and again on May 17. Conf. Tr., Feb. 5, 2018, ECF No. 49; Conf. Tr., May 2, 2018, ECF No. 81; Conf. Tr., May 17, 2018, ECF No. 83; *see also* Order, May 17, 2018, ECF No. 80. Judge

previously described the weight of the evidence as "exceedingly important" to her decision, Conf. Tr. at 67:11, Feb. 5, 2018, and noted that "a very significant portion of the court's view is based upon its lack of any reason at this point to have anything seriously to undermine the weight of the evidence as proffered by the government," *id.* at 76:22–25. At the time, the only basis in the record to assess the weight of the evidence was the Complaint.

Now the government may have accepted at least in part an account that repudiates much of what was alleged in the Complaint, seriously undermining its case against Dr. Ho in the process. With respect to the alleged Chad scheme, the government's evidence that Dr. Ho acted corruptly consists primarily of statements made by Dr. Gadio. *See, e.g.*, Compl. ¶ 24, ECF No. 1 (quoting Dr. Gadio discussing "secret or very confidential financial assistance" for the President of Chad); *id.* ¶ 27 (quoting Dr. Gadio advising Dr. Ho to "reward" the President of Chad with a "nice financial package"); *id.* ¶ 29 (quoting Dr. Gadio describing the contribution to Chad as a "gift" to the President). The Complaint described these statements as veiled references to bribes. However, based on the government's *Brady* disclosure, if called to testify at trial, Dr. Gadio would presumably deny that he was soliciting a bribe. If this is the case, the government would be arguing that the statements at issue were benign when Dr. Gadio wrote them, but corrupt when Dr. Ho received them, which is a considerably different theory than that articulated in the Complaint that Judge Forrest relied upon in making her bail determination.

Given the government's treatment of Dr. Gadio and its retreat from the allegations of the Complaint,[2] the Bail Reform Act factors now strongly favor release. We therefore respectfully renew our request that Dr. Ho be released on bail subject to the following conditions:

- home incarceration in an apartment in the Southern District of New York;

- electronic monitoring;

- a global waiver of extradition; and

- a $10 million personal recognizance bond, co-signed by five lifelong friends in the United States and secured by (a) $2 million in cash provided by Dr. Ho, (b) $1 million in cash from his mother and brother, and (c) the unencumbered deeds to the homes of Dr. Ho's mother and brother in Hong Kong.

For reasons addressed at length in our prior submissions, these conditions are more than sufficient to assure Dr. Ho's appearance at trial. First, Dr. Ho has no intention of fleeing. He is a respected international figure with a decades-long career in medicine and public service. He

---

Forrest also described the bail decision as "difficult." Conf. Tr. at 74:9, Feb. 5, 2018. Judge Forrest's May 17 ruling, which incorporated her prior rulings by reference, *see* Conf. Tr. at 2:20–3:4; 37:12–14, 48:24–49:2, May 17, 2018, was subsequently upheld by the Second Circuit, Mandate, ECF No. 116.

[2] As discussed in our April 16, 2018 letter, the issues concerning Dr. Gadio are far from the only deficiencies in the government's case. *See* Letter to Ct. at 4–6, Apr. 16, 2018, ECF No. 65.

has no criminal history and has been charged with non-violent crimes. His reputation depends on him defending this case, and he fully expects to be exonerated at trial.

      Second, even if Dr. Ho was otherwise inclined to flee, our proposed conditions of release would make it unthinkable for him to act on that desire. The proposed bond of $10 million exceeds Dr. Ho's net worth by at least $2 million. He and his family are prepared to secure the bond with $3 million in cash that would be automatically forfeited if he fled. But even more importantly, fleeing would expose Dr. Ho's co-signers and his family, whose homes are being offered as additional security, to tremendous hardship. This is powerful moral suasion. The government's repeated suggestion that the Energy Company might be willing to make Dr. Ho's co-signers and family whole is baseless speculation and not a valid basis for denying bail. *See United States v. Bodmer*, No. 03 Cr. 947 (SAS), 2004 WL 169790, at *3 (S.D.N.Y. Jan. 28, 2004) (rejecting the government's argument that the defendant likely had "vast financial resources in undisclosed offshore accounts" as speculation); *United States v. Montoya-Vasquez*, No. 08 Cr. 3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009) ("Speculation is not evidence, much less preponderating evidence."). Dr. Ho is certainly not relying on such fantasy.

      Third, even if Dr. Ho was inclined to flee *and* willing to jeopardize the welfare of his family and friends to do so, any attempt at flight would be unsuccessful. Dr. Ho is sixty-nine-years old; he has no passport; and he would be subject to home incarceration with electronic monitoring—an extraordinarily burdensome form of "release" with a very high success rate. If Dr. Ho somehow managed to leave the United States, he would have nowhere to go. He would be subject to arrest and extradition in any country in which he could plausibly live.

      If Dr. Ho is released subject to the conditions outlined above, he will appear.

      Respectfully submitted,
KRIEGER KIM & LEWIN LLP

By: _____
Edward Y. Kim
Paul M. Krieger
Jonathan F. Bolz
Jonathan L. Bodansky

cc:    All counsel of record