UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-2-18

---------------------------------

UNITED STATES OF AMERICA,

           Plaintiff,

  -against-

CHI PING PATRICK HO,

           Defendant.

---------------------------------x

:    17 Cr. 779 (LAP)

:    MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Defendant Chi Ping Patrick Ho ("Ho") moves the Court to
suppress all evidence obtained or derived under the Foreign
Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 et
seq., ("FISA information") and disclose to the defense the FISA
application(s), order(s), and related materials (collectively,
"FISA materials"). As discussed, infra, after conducting a
careful and thorough in camera and ex parte review of the FISA
materials at issue, the Court denies Ho's Motion to Suppress and
for Disclosure of FISA Materials (the "Motion"), dated Apr. 16,
2018 [dkt. no. 66], concludes that there is no need for a
hearing on this issue and orders that the FISA materials and the
Government's classified submissions be maintained under seal by
the United States. Although "the Court is 'necessarily
circumspect in [its] discussion'" given the classified nature of

1

the materials, <u>United States v. Medunjanin</u>, No. 10-CR-19 1
(RJD), 2012 WL 526428, at *1 (E.D.N.Y. Feb. 16, 2012) (quoting
<u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 130 (2d Cir. 2010)),
the rationale for this ruling is set forth in further detail
below.

## I.   BACKGROUND

On December 18, 2017, Ho was charged with one count of
Conspiracy to Violate the Foreign Corrupt Practices Act, in
violation of 18 U.S.C. § 371, four violations of the Foreign
Corrupt Practices Act, in violation of 15 U.S.C. §§ 78dd-2
and/or 78dd-3, and 18 U.S.C. § 2, one count of Conspiracy to
Commit Money Laundering, in violation of 18 U.S.C. § 1956(h),
and two counts of Money Laundering, in violation of 18 U.S.C.
§§ 1956(a)(2)(A) and 2.  (<u>See</u> Indictment, dated Dec. 18, 2017
[dkt. no. 24].)

On February 8, 2018, pursuant to 50 U.S.C. §§ 1806(c) and
1825(d), the Government notified Ho and the Court of its intent
to introduce into evidence at trial information obtained
pursuant to FISA.  (<u>See</u> Notice of Intent to Use Foreign
Intelligence Surveillance Act Information (the "Notice"), dated
Feb. 8, 2018 [dkt. no. 45], 1.)

Ho's Motion followed on April 16, 2018.  Ho asked the Court
to review the FISA materials <u>in camera</u> and <u>ex parte</u>, and

suppress all FISA information that it determines was unlawfully obtained or derived from the FISA electronic surveillance and physical searches conducted by the Government. (*See* Defendant's Memorandum of Law in Support of His Motion to Suppress and for Disclosure of FISA Materials ("Def. Mem."), dated Apr. 16, 2018 [dkt. no. 67], 2.) Should the Court encounter questions in the FISA materials as to the lawfulness of the FISA activity or otherwise finds that the FISA activity warrants defense counsel's perspective or an adversarial proceeding during its review, Ho asked that the Court disclose to the defense, under the appropriate security procedures and protective orders, portions of the FISA materials to the extent necessary to facilitate an accurate determination of the legality of the electronic surveillance and physical searches. (*Id.*) Ho reserved the right to move for disclosure if "due process [so] require[d]" it under 50 U.S.C. §§ 1806(g), 1825(h) once the defense "had an opportunity to review the Government's anticipated production of classified discovery." (*Id.* at 6 n.3.)

In response, on July 13, 2018, the Government submitted a detailed unclassified memorandum in opposition to the Motion as well as a comprehensive classified response and Sealed Appendix. (*See* The Government's Unclassified Memorandum of Law in Opposition to the Defendant's Motion to Suppress and for

Disclosure of FISA Materials ("Govt. Opp."), dated July 13, 2018 [dkt. no. 106].) The Government included with its opposition a Declaration and Claim of Privilege of the Attorney General of the United States ("Decl. of Attorney Gen."), dated July 13, 2018 [dkt. no. 106-1], in which the Attorney General asserted under oath that disclosure of the Government's classified FISA materials or an adversary hearing would harm the national security of the United States. (Id. at ¶ 3.) In its opposition, the Government refuted Ho's arguments regarding the lawfulness of the electronic surveillance and physical search as well as Ho's arguments in support of suppression and disclosure, arguing instead that the FISA materials should be maintained by the United States under seal. (See Govt. Opp. at 32-33.)

The Government also reserved the right to respond to a future argument by Ho that due process requires disclosure under 50 U.S.C. §§ 1806(g), 1825(h), (see id. at 15 n.15.), which Ho ultimately made in his October 3, 2018 reply. (See Defendant's Reply Memorandum of Law in Further Support of His Motion to Suppress and for Disclosure of FISA Materials ("Def. Reply"), dated Oct. 3, 2018 [dkt. no. 133], 2.) Thereafter, on October 30, 2018, the Government submitted a sur-reply on this issue. (See The Government's Sur-Reply in Response to the Defendant's Reply Memorandum of Law in Further Support of His Motion to

Suppress and for Disclosure of FISA Materials ("Govt. Sur-Reply"), dated Oct. 30, 2018 [dkt. no. 154].)

## II.  LEGAL STANDARD

### A. FISA Application

Enacted in 1978, and subsequently amended, FISA establishes a statutory framework under which the executive branch may conduct electronic surveillance and physical searches and collect "foreign intelligence information," as defined at sections 1801(e) and 1821(1) of the statute, within the United States.  See 50 U.S.C. § 1801 et seq.  In passing FISA, Congress intended to settle the unresolved question of the applicability of the Fourth Amendment warrant requirement to electronic surveillance for foreign intelligence purposes and to state unequivocally that such surveillance, when carried out through the proper procedural channels, is lawful.  Medunjanin, 2012 WL 526428, at *1 (citing United States v. Stewart, 590 F.3d 93, 126 (2d Cir. 2009)).  "Accordingly, courts within the Second Circuit repeatedly have upheld the legality of FISA's provisions in light of the requirements imposed on the Government in conducting surveillance to acquire foreign intelligence information in particular cases."  Medunjanin, 2012 WL 526428, at *1 (citing United States v. Abu-Jihaad, 531 F. Supp. 2d 299 (D. Conn. 2008), aff'd, 630 F.3d 102 (2d Cir. 2010); United

5

States v. Sattar, No. 02-CR-395 (JGK), 2003 WL 22137012
(S.D.N.Y. Sept. 15, 2003), aff'd sub nom. United States v.
Stewart, 590 F.3d 93 (2d Cir. 2009); United States v. Rahman,
861 F. Supp. 247 (S.D.N.Y. 1994), aff'd, 189 F.3d 88 (2d Cir.
1999)). As originally enacted, FISA covered only electronic
surveillance; however, it was amended in 1994 to cover physical
searches as well. See In re Sealed Case, 310 F.3d 717, 722
(FISA Ct. Rev. 2002). As such, FISA's provisions regarding
physical searches largely mirror those regarding electronic
surveillance. See id.

FISA authorizes the Chief Justice of the United States to
designate 11 district court judges to sit as judges on the
Foreign Intelligence Surveillance Court ("FISC"). 50 U.S.C.
§ 1803(a)(1). The statute creates a procedure by which the
executive branch may apply for a judicial order from the FISC,
authorizing the use of electronic surveillance, physical
searches, or both within the United States, where a significant
purpose is the collection of foreign intelligence information.
Id. §§ 1804(a)(6)(B), 1823(a)(6)(B).

The FISA application process begins with the Government's
filing of an ex parte, under seal, application with the FISC.
The application must be reviewed and approved by the Attorney
General and must include certain specified information. See

id. §§ 1804(a), 1823(a). FISA applications to conduct electronic surveillance pursuant to FISA must contain, among other things: (1) the identity of the federal officer making the application; (2) the identity, if known, or a description of the specific target of the electronic surveillance; (3) a statement of the facts and circumstances supporting probable cause to believe that the target is a "foreign power," as defined at 50 U.S.C. §§ 1801(a), 1821(1), or an "agent of a foreign power," as defined at 50 U.S.C. §§ 1801(b), 1821(1), and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; (4) a statement of the proposed minimization procedures to be followed; (5) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance; (6) a certification, discussed below, of a high-ranking official; (7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance; (8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and (9) the proposed duration of the electronic surveillance. See id. §§ 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain information similar to an application to conduct electronic surveillance except that an application to conduct a physical search must also contain a statement of the facts and circumstances that justify an applicant's belief that "the premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from" the target. Id. §§ 1823(a)(1)-(8), (a)(3)(B)-(C).

Each FISA application must include a certification by the Attorney General or another high-ranking executive branch official with national security or defense responsibilities that includes the following: (1) that the certifying official deems the information sought to be foreign intelligence information; (2) that a significant purpose of the surveillance or search is to obtain foreign intelligence information; (3) that such information cannot reasonably be obtained by normal investigative techniques; (4) that the type of foreign intelligence information being sought corresponds to the categories describes in section 1801(e) of this title; and (5) includes a statement of the basis for the certification that the information sought is the type of foreign intelligence information designated, and such information cannot reasonably

be obtained by normal investigative techniques.  See id.
§§ 1804(a)(6), 1823(a)(6).

FISA applications must contain a statement of the proposed
minimization procedures to be followed by the Government.  FISA
requires that such minimization procedures be "reasonably
designed in light of the purpose and technique of the
particular" electronic surveillance, physical search, or both,
"to minimize the acquisition and retention, and prohibit the
dissemination, of nonpublicly available information concerning
unconsenting United States persons consistent with the need of
the United States to obtain, produce, and disseminate foreign
intelligence information."  Id. §§ 1801(h)(1), 1821(4)(A).
"United States person" is a defined term under FISA.  See id.
§§ 1801(i), 1821(1).

FISA requires the Attorney General to adopt minimization
procedures.  See id.  To fulfill this statutory requirement, the
Attorney General has adopted standard minimization procedures
that apply to every FISA application.  See United States v.
Sherifi, 793 F. Supp. 2d 751, 756 (E.D.N.C. 2011).  As the
Government notes, "the FISA-obtained or -derived information in
this case was acquired, retained, and disseminated by the FBI in
accordance with FISA's minimization requirements, the standard

minimization procedures ('SMPs') adopted by the Attorney General and approved by the FISC." (Govt. Opp. at 26.)

## B. FISC Order

After review of the FISA application, a FISC judge shall enter an _ex parte_ order granting the Government's application for electronic surveillance, physical search, or both, provided the judge makes certain specific findings, including that on the basis of the facts submitted by the applicant there is probable cause to believe that: (1) the target of the electronic surveillance or physical search is a foreign power or an agent of a foreign power, except that no United States person may be considered an agent of a foreign power solely upon the basis of activities protected by the First Amendment to the Constitution of the United States; and (2) for electronic surveillance, each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; or (3) for physical searches, the premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from an agent of a foreign power or a foreign power. See 50 U.S.C. §§ 1805(a)(2), 1824(a)(2).

In addition to the probable cause findings, the FISC judge must also find that: (1) the application has been made by a

federal officer and approved by the Attorney General; (2) the proposed minimization procedures meet the respective definitions of minimization procedures for electronic surveillance and physical searches; and (3) the application contains all statements and certifications required by 50 U.S.C. § 1804 for electronic surveillance and 50 U.S.C. § 1823 for physical searches and, if the target is a United States person, the certification or certifications are not clearly erroneous on the basis of the statement made under 50 U.S.C. §§ 1804(a)(7)(E) and 1823(a)(6)(E) and any other information furnished under 50 U.S.C. §§ 1804(d) and 1823(c). See id. §§ 1805(a), 1824(a).

As indicated, supra, if the FISC judge finds the Government has satisfied the statute's requirements, the judge then must issue an ex parte order approving the electronic surveillance, physical search, or both. Id. Such an order must describe, among other things, the target, the information sought, and the means or manner of acquiring such information. Id. §§ 1805(c)(1), 1824(c)(1). The order must also set forth the period of time during which the electronic surveillance or physical searches are approved. See id. §§ 1805(c)(1)(E), 1824(c)(1)(E). Under FISA, electronic surveillance or physical searches targeting a United States person may be approved for up to 90 days, and those targeting a non-United States person may be approved for up to 120 days. See id. §§ 1805(d)(1),

1824(d)(1). Extensions may be granted, but only if the Government submits another application that complies with FISA's requirements. See id. §§ 1805(d)(2), 1824(d)(2).

## C. FISA and Criminal Prosecution

If the Attorney General approves the use of information collected pursuant to FISA in a criminal prosecution, and the Government intends to offer into evidence, or otherwise use or disclose the information at the trial of an "aggrieved person," as defined at 50 U.S.C. §§ 1801(k), 1821(2), the Government must first notify the aggrieved person and the court of its intent. See id. §§ 1806(c), 1825(d). After receiving such notice, the aggrieved person may move to suppress the use of the FISA information on the basis that it was obtained unlawfully or that the electronic surveillance or physical search was not conducted in compliance with an order of authorization or approval. See id. §§ 1806(e), 1825(f).

If an aggrieved person moves to suppress FISA information or for disclosure of the FISA material, then, upon the filing of an affidavit by the Attorney General stating under oath that disclosure of such material or an adversary hearing would harm the national security of the United States, the court must review the FISA materials in camera and ex parte to determine whether the electronic surveillance or physical search of the

aggrieved person was lawfully authorized and conducted. See id. §§ 1806(f), 1825(g).

The court may disclose "portions of" the FISA materials to the aggrieved person "only where such disclosure is necessary to make an accurate determination of the legality" of the electronic surveillance or physical search. Id. §§ 1806(f), 1825(g). Thus, the propriety of the disclosure of any FISA materials to a defendant may not even be considered unless and until the court has first concluded that it is unable to make an accurate determination of the legality of the acquired collection after reviewing the Government's submissions, as well as any supplemental pleadings that the court may request, in camera and ex parte.

Here, the Government has notified Ho and the Court that it intends to offer into evidence, or otherwise use or disclose, FISA information in this case. (See Notice at 1.) Ho has filed the Motion seeking suppression and disclosure. (See Motion at 1.) Additionally, the Government has filed a declaration from the Attorney General stating, under oath, that disclosure of the FISA materials at issue or an adversarial hearing with respect to such materials would harm the national security of the United States. (See Decl. of Attorney Gen. at ¶ 3.) Accordingly, the

Court's duty to perform an in camera and ex parte review is triggered, and the Court has carefully engaged in such a review.

## III. DISCUSSION

### A. Constitutionality of the Court's Review

At the outset, the Court is satisfied that FISA's in camera and ex parte review provisions comport with the Constitution's due process requirements. The constitutionality of these provisions has been affirmed by every federal court that has considered the matter, including the Court of Appeals. See Abu-Jihaad, 630 F.3d at 129 (affirming district court's determination that "its in camera, ex parte review permitted it to assess the legality of the challenged surveillance and the requirements of due process did not counsel otherwise"); Stewart, 590 F.3d at 126 (noting that "the procedures fashioned in FISA [are] a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information" (citation omitted)); United States v. Fishenko, No. 12-CV-626 (SJ), 2014 WL 4804215, at *2 (E.D.N.Y. Sept. 25, 2014) (citing numerous decisions by district courts in this Circuit and concluding that "there is no question as to the constitutionality of FISA"); see also United States v. El-Mezain, 664 F.3d 467, 567 (5th Cir. 2011), as revised (Dec. 27, 2011) (agreeing with district court that its

14

in camera, ex parte review ensured the defendant's constitutional and statutory rights were not violated); United States v. Damrah, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an ex parte, in camera review of FISA materials does not deprive a defendant of due process"); United States v. Ott, 827 F.2d 473, 476-77 (9th Cir. 1987) (finding FISA's review procedures do not deprive a defendant of due process). Accordingly, this Court's in camera and ex parte review of the FISA materials at issue does not violate Ho's constitutional due process rights.

## B. Legality of the Electronic Surveillance and Physical Search

In evaluating the legality of the electronic surveillance and physical search, a reviewing court's in camera and ex parte review should determine: (1) whether the certification submitted by the executive branch in support of a FISA application was properly made; (2) whether the application established probable cause, as required by FISA; and (3) whether the electronic surveillance and physical search were properly minimized. See Abu-Jihaad, 630 F.3d at 130-31; United States v. Elshinawy, No. 16-CR-0009 (ELH), 2017 WL 1048210, at *2 (D. Md. Mar. 20, 2017). The Court is satisfied that these requirements have been met.

### 1. Certification

A certification submitted in support of a FISA application should be "subject to 'minimal scrutiny by the courts'" and "should be presumed valid." See, e.g., Abu-Jihaad, 630 F.3d at 130 (citations omitted). In reviewing a FISA application presented to the FISC, a FISC judge is not to "second-guess" the executive branch's certification that the objective of the electronic surveillance or physical search was foreign intelligence information. Sattar, 2003 WL 22137012, at *13 (citation omitted). FISA's text further indicates Congress's intent that a court reviewing the propriety of the FISC order is to have "no greater authority to second-guess the executive branch's certifications than has the" FISC judge. Stewart, 590 F.3d at 128 (citation omitted).

Although not contested here by Ho, the Court notes that it adheres to the finding of the Court of Appeals that the "significant purpose" standard contained in 50 U.S.C. §§ 1804(a)(6)(B) and 1823(a)(6)(B)'s certification requirements is constitutional. See Abu-Jihaad, 630 F.3d at 131 ("[W]e identify no constitutional infirmity in Congress's decision to allow FISA warrants to issue on certification of a 'significant purpose' to obtain foreign intelligence information." (citation omitted)); see id. at 128-29 ("[W]e hold that certification of a

significant purpose to obtain foreign intelligence information, together with satisfaction of all other FISA requirements, is reasonable and, therefore, sufficient to support the issuance of a warrant under the Fourth Amendment."). After conducting a careful in camera and ex parte review of the certifications at issue here, and affording this discussion the "necessar[y] circumspect[ion]" given the classified nature of the materials at issue, Abu-Jihaad, 630 F.3d at 130, the Court has no difficulty concluding that the certifications were made in accordance with FISA's requirements.

### 2. Probable Cause

When a defendant moves to suppress FISA information or seeks disclosure of FISA materials, the defendant's motion is evaluated using FISA's probable cause standard. See, e.g., Medunjanin, 2012 WL 526428, at *2. Although federal courts are not in agreement as to whether the FISC's probable cause determination should be reviewed de novo or afforded due deference, the Court of Appeals affords due deference to the determinations of the FISC. See Stewart, 590 F.3d at 128.

As indicated, supra, FISA requires a finding of probable cause to believe that: (1) the target of the electronic surveillance or physical search is a foreign power or an agent of a foreign power, except that no United States person may be

17

considered an agent of a foreign power solely upon the basis of activities protected by the First Amendment to the Constitution of the United States; and (2) for electronic surveillance, each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; or (3) for physical searches, the premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from an agent of a foreign power or a foreign power. See 50 U.S.C. §§ 1805(a)(2), 1824(a)(2). It is this standard—not the standard applicable to criminal search warrants—that this Court must apply. Medunjanin, 2012 WL 526428, at *6 ("[N]o branch of Government—whether executive or judicial—need make a probable cause finding of actual or potential criminal activity to justify a FISA warrant."). As the Government correctly points out, federal courts have uniformly held that FISA's different probable cause standard does not violate the Fourth Amendment's reasonableness requirement. See, e.g., Abu-Jihaad, 630 F.3d at 120 (rejecting defendant's Fourth Amendment claim and listing 16 cases that stand for the proposition that FISA does not violate the Fourth Amendment).

Here, having reviewed the FISC's probable cause determinations while affording these findings the requisite due deference, the Court concludes that the FISA application(s)

readily meet FISA's probable cause standard and do so with clarity and specificity. "The Court cannot say more without the risk of divulging classified information." Medunjanin, 2012 WL 526428, at *11. Accordingly, the Court finds that there was sufficient probable cause to establish that the FISA information in this case was lawfully acquired.

### 3. Minimization

Once a reviewing court is satisfied that the electronic surveillance and physical search were properly certified and the FISA information was lawfully acquired pursuant to FISA, it must then examine whether the electronic surveillance and physical search were lawfully conducted. See 50 U.S.C. §§ 1806(e)(2), 1825(f)(1)(B). In order to do so, the reviewing court must determine whether the Government followed the relevant minimization procedures to minimize appropriately the information acquired pursuant to FISA. See Elshinawy, 2017 WL 1048210, at *11.

FISA expressly states that the Government is not required to minimize information that is "evidence of a crime," whether or not it is also foreign intelligence information. 50 U.S.C. §§ 1801(h)(3), 1821(4)(c); see also United States v. Isa, 923 F.2d 1300, 1304 (8th Cir. 1991) ("There is no requirement that the 'crime' be related to foreign intelligence."). As a result,

to the extent that certain communications of a United States person may be evidence of a crime or otherwise may establish an element of a substantive or conspiratorial offense, such communications need not be minimized. See Isa, 923 F.2d at 1305.

Importantly, minimization requirements "are subject to a rule of reason." United States v. Aziz, 228 F. Supp. 3d 363, 378 (M.D. Pa. 2017) (quoting United States v. Rosen, 447 F. Supp. 2d 538, 553 (E.D. Va. 2006)). FISA's legislative history reflects that Congress envisioned "the court's role" as determining "whether a good faith effort to minimize was attempted." Aziz, 228 F. Supp. 3d at 378 (quoting S. REP. No. 95-701, at 39-40 (1978) (hereinafter "Senate Report")). "Congress did not intend for nominal failure to abide the minimization procedures to undercut entire investigations." Aziz, 228 F. Supp. 3d at 378 (citing Senate Report at 21-22). Absent evidence that "on the whole" there has been a "complete[ ]" disregard for the minimization procedures, the fact that some communications should have been minimized does not affect the admissibility of others that were properly acquired and retained. Senate Report at 39-40 (citations omitted); see also Medunjanin, 2012 WL 526428, at *12 (finding disclosure and suppression not warranted where "failure to adhere to [the minimization] protocol was de minimis").

Based on the foregoing, and having reviewed the Government's submissions on this point thoroughly and in their entirety, the Court finds that the electronic surveillance and physical search were conducted in conformity with an order of authority or approval and furthermore, that the electronic surveillance and physical search were lawfully conducted under the minimization procedures adopted by the Attorney General and approved by the FISC. Specifically, the Court is satisfied that the minimization procedures utilized by the Government were "reasonably designed in light of the purpose and technique of the particular" electronic surveillance and physical search involved. 50 U.S.C. §§ 1801(h)(1), 1821(4)(A); see also Medunjanin, 2012 WL 526428, at *11.

The Court is also satisfied that the "minimization procedures [were] followed" in this case. 50 U.S.C. §§ 1805(c)(2)(A), 1824(c)(2)(A); see also Medunjanin, 2012 WL 526428, at *12. Although the Government acknowledged that in "limited occasions described herein[,] . . . certain communications were not properly minimized," the Court finds that the Government's failure to abide by minimization procedures in these instances was de minimis and that "on the whole the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion." Medunjanin, 2012 WL 526428, at *12.

(quoting Senate Report at 39-40). Thus, the Court will not suppress the fruits of the electronic surveillance and physical search on this basis. See Medunjanin, 2012 WL 526428, at *12

Accordingly, the Court finds that the electronic surveillance and physical search were lawfully authorized and conducted in compliance with FISA. Because the Court has readily determined the lawfulness of the FISA activity based on the Government's submissions, the Court further finds that the disclosure of the FISA materials at issue, or any portions thereof, to Ho is not "necessary to make an accurate determination of the legality of" the electronic surveillance or physical search. 50 U.S.C. §§ 1806(f), 1825(g).

This conclusion falls in line with binding precedent. Federal courts, including the Court of Appeals, have repeatedly and consistently held that FISA anticipates that disclosure of FISA materials "is the exception and ex parte, in camera determination is the rule." Abu-Jihaad, 630 F.3d at 129 (quoting Stewart, 590 F.3d at 129); see also United States v. Omar, 786 F.3d 1104, 1110 (8th Cir. 2015) (stating disclosure to the defense and an adversarial hearing are the "exception occurring only when necessary." (quoting Isa, 923 F.2d at 1306)). Tellingly, every court that has addressed a motion to suppress FISA information or to disclose FISA materials, with

the exception of one whose ruling was subsequently overturned,
has been able to reach a conclusion on the legality of the
relevant FISA materials based on its in camera and ex parte
review. See, e.g., United States v. Gartenlaub, No. 16-50339,
2018 WL 4761630, at *2 (9th Cir. Oct. 2, 2018) (affirming
district court upon "conduct[ing] an in camera review of the
underlying FISA materials" and "conclud[ing] that the disclosure
of the FISA materials to [defendant] was not 'necessary to make
an accurate determination of the legality of the search'"
(citing 50 U.S.C. § 1825(g))); El-Mezain, 664 F.3d at 566
(quoting district court's statement that "no court has ever
ordered that FISA materials be disclosed or that an adversarial
hearing be conducted to assist the court in determining the
legality of FISA surveillance"); In re Grand Jury Proceedings of
Special Apr. 2002 Grand Jury, 347 F.3d 197, 203 (7th Cir. 2003)
(noting that no court has ever ordered disclosure of FISA
materials rather than conducting in camera and ex parte review
and rejecting appellant's argument that "this is that one-in-a-
million case where disclosure is necessary"); Medunjanin, 2012
WL 526428, at *10 (noting that "[n]o United States District
Court or Court of Appeals has ever determined that disclosure to
the defense of such materials was necessary to determine the
lawfulness of surveillance or searches under FISA" (quoting
United States v. Warsame, 547 F. Supp. 2d 982, 987 (D. Minn.

2008)); Sattar, 2003 WL 22137012, at *6 ("[T]his court knows of no instance in which a court has required an adversary hearing or disclosure in determining the legality of a FISA surveillance." (quoting United States v. Nicholson, 955 F. Supp. 588, 592 (E.D. Va. 1997)); United States v. Thomson, 752 F. Supp. 75, 79 (W.D.N.Y. 1990) (noting that no court "has found disclosure or an adversary hearing necessary").  As indicated, supra, the only district court to order disclosure was swiftly overturned on appeal.  See United States v. Daoud, No. 12-CR-723, 2014 WL 321384, at *3 (N.D. Ill. Jan. 29, 2014), rev'd, 755 F.3d 479, 481-85 (7th Cir. 2014), reh'g en banc denied, 761 F.3d 678 (7th Cir. 2014), cert. denied, --- U.S. ----, 135 S.Ct. 1456, 191 L.Ed.2d 369 (2015).

Accordingly, in light of the Court's conclusion that the electronic surveillance and physical search were lawfully authorized and conducted, "it need not, and does not, reach" the Government's argument that "the 'good faith' exception to the exclusionary rule [articulated in United States v. Leon, 468 U.S. 897 (1984)] applies in this case."  Abu-Jihaad, 531 F. Supp. 2d at 313 n.12.  (See Govt. Opp. at 22-23.)

## C. Exculpatory Materials

After making a determination of the legality of the electronic surveillance and physical search, the Court then must

determine whether the FISA materials at issue contain
exculpatory materials that due process requires be disclosed to
the defense.  See 50 U.S.C. § 1806(g) ("If the court determines
that the surveillance was lawfully authorized and conducted,"
the court "shall" deny motions to suppress and disclose FISA
materials, "except to the extent that due process requires
discovery or disclosure"); see also id. § 1825(h) (same as to
physical searches).

"In enacting FISA[,] Congress intended to restrict, as much
as constitutionally possible, discovery of FISA materials."
United States v. Spanjol, 720 F. Supp. 55, 59 (E.D. Pa. 1989).
50 U.S.C. §§ 1806(g) and 1825(h)'s due process exceptions "limit
permissible discovery to that which is constitutionally
mandated, such as the obligations articulated in Brady v.
Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)."
Aziz, 228 F. Supp. 3d at 370; see also Thomson, 752 F. Supp. at
83 (finding "discovery beyond that constitutionally mandated by
Brady . . . is inapplicable to discovery of" FISA materials).

Under Brady, the Government is obligated "to disclose
favorable evidence to the accused where such evidence is
'material' either to guilt or to punishment."  United States v.
Coppa, 267 F.3d 132, 139 (2d Cir. 2001).  Evidence is "material"
under Brady only if disclosure of the evidence would lead to "a

'reasonable probability' of a different result" in the outcome of a trial. Kyles v. Whitley, 514 U.S. 419, 434 (1995).

The Court's in camera and ex parte review of the FISA materials at issue reveals no exculpatory material that must be disclosed to Ho on the basis of Brady and its progeny. See Aziz, 228 F. Supp. 3d at 370; see also Abu-Jihaad, 630 F.3d at 129 (affirming denial of defense motion and stating that, "upon our own review of the materials, . . . the requirements of due process did not counsel otherwise"); Stewart, 590 F.3d at 129 (finding, upon the court's "own review of the materials, . . . no error in the district court's determination that disclosure was unnecessary for an accurate determination of the legality of the surveillance at issue or to satisfy the requirements of due process"). Accordingly, the Court rejects Ho's claim that the FISA materials at issue, even if lawful, are "highly likely to contain Brady material," (Def. Reply at 2), and finds that 50 U.S.C. §§ 1806(g) and 1825(h) do not mandate disclosure.

## IV. CONCLUSION

For the reasons stated above, the Court denies Ho's Motion to Suppress and for Disclosure of FISA Materials [dkt. no. 66], concludes that there is no need for a hearing on this issue, and orders that the FISA materials and the Government's classified submissions be maintained under seal by the United States.

SO ORDERED.

Dated:     New York, New York
           November 2, 2018

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge