UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X
                                                    :

UNITED STATES OF AMERICA         :

            v.                               :

CHI PING PATRICK HO,               :         No. 17 Cr. 779 (LAP)
   a/k/a "Patrick C.P. Ho,"            :
   a/k/a "He Zhiping,"                :

               Defendant.     :

---------------------------------------------X

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTIONS *IN LIMINE*

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel: (212) 390-9550

DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Tel: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Chi Ping Patrick Ho*

# TABLE OF CONTENTS

                                     **Page**

I.  THE TESTIMONY OF GARDNER WALKUP SHOULD BE EXCLUDED ................. 1

  A.  Testimony Regarding Standard Bidding and Negotiation Processes in the "Global Petroleum Industry" Is Irrelevant ............................. 1

  B.  Mr. Walkup Lacks Expertise Regarding Chad ........................................ 3

  C.  Testimony Regarding Standard Processes in Uganda Is Irrelevant and Mr. Walkup Is Not Qualified to Give It .................................. 6

  D.  Mr. Walkup Lacks Expertise Regarding "CSR" ..................................... 7

II.  THE COURT SHOULD PRECLUDE CHEIKH GADIO FROM CHARACTERIZING THE PAYMENT TO PRESIDENT DÉBY AS A BRIBE OR OTHERWISE OPINING ON DR. HO'S STATE OF MIND OR INTENT ............... 7

  A.  The Government's Proffer of Dr. Gadio's Testimony Includes Lay Opinion ................................................................. 8

  B.  Dr. Gadio Should Not Be Permitted to Opine on Dr. Ho's State of Mind ............ 9

  C.  The Probative Value of the Government's Other Proffered Bases for Admissibility Is Vastly Outweighed by Undue Prejudice to Dr. Ho .................... 11

III.  THE OUT-OF-COURT STATEMENTS OF PRESIDENT IDRISS DÉBY MAY NOT BE ADMITTED AS STATEMENTS OF A CO-CONSPIRATOR ....................... 13

CONCLUSION ............................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ..............................2

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ...................................................................5

*McCullock v. H.B. Fuller*,
    61 F.3d 1038 (2d Cir. 1995)....................................................................................4

*Mitroff v. Xomox Corp.*,
    797 F.2d 271 (6th Cir. 1986) ................................................................................10

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)....................................................................................4

*Primavera Familienstifung v. Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001).....................................................................3

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).....................................................................2

*Stagl v. Delta Air Lines, Inc.*,
    117 F.3d 76 (2d Cir. 1997)......................................................................................5

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    576 F. Supp. 2d 457 (S.D.N.Y. 2007).....................................................................5

*United States v. Awadallah*,
    401 F. Supp. 2d 308 (S.D.N.Y. 2005)...................................................................10

*United States v. Brown*,
    776 F.2d 397 (2d Cir. 1985)....................................................................................5

*United States v. Gadson*,
    763 F.3d 1189 (9th Cir. 2014) ................................................................................9

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002)..................................................................................11

*United States v. Ginsberg*,
    758 F.2d 823 (2d Cir. 1985)....................................................................................2

*United States v. Grady*,
    645 F. App'x 1 (2d Cir. 2016) ................................................................................2

*United States v. Kaplan*,
 490 F.3d 110 (2d Cir. 2007) ........................................................................................... 9

*United States v. Litvak*,
 808 F.3d 160 (2d Cir. 2015) ........................................................................................... 2

*United States v. Rea*,
 958 F.2d 1206 (2d Cir. 1992) .................................................................................. 10, 11

*United States v. Rowland*,
 826 F.3d 100 (2d Cir. 2016) ......................................................................................... 11

*United States v. Sanabria*,
 645 F.3d 505 (1st Cir. 2011) ........................................................................................ 10

*United States v. Skelly*,
 442 F.3d 94 (2d Cir. 2006) ........................................................................................... 11

*United States v. Urlacher*,
 979 F.2d 935 (2d Cir. 1992) ......................................................................................... 11

**Other Authorities**

Fed. R. Evid. 701 ................................................................................................................. 9

Fed. R. Evid. 704 ............................................................................................................... 11

Defendant Dr. Chi Ping Patrick Ho respectfully submits this reply memorandum in further support of his motions *in limine*.

I.   **THE TESTIMONY OF GARDNER WALKUP SHOULD BE EXCLUDED**

   A.   <u>Testimony Regarding Standard Bidding and Negotiation Processes in the "Global Petroleum Industry" Is Irrelevant</u>

The government has proffered Mr. Walkup to testify about "standard practices and procedures in the global petroleum industry." (Rosenberg Decl., Ex. 1 ("Walkup Ltr.") at 1, ECF No. 125-1.) The defense moved to exclude such testimony because those practices and procedures are irrelevant to this case. (Def. Walkup Br. at 2-3, ECF No. 124.) The issue in this case is whether bribes were paid, and if so by whom. The defense does not intend to argue that bribes are "standard practices and procedures" in any industry.

The government states that Mr. Walkup would testify, "that the petroleum industry is a global one, that it follows known and established practices, and that this is no different in Chad." (Gov't Opp. at 4, ECF No. 139.) Such testimony would be not only irrelevant, but also prejudicial and confusing. The issue in this case is not whether negotiations between CEFC Energy and Chad diverged from what Mr. Walkup, or the petroleum industry broadly, would consider "standard." The issue is whether, in his dealings with Chadian officials, Dr. Ho offered or paid a bribe. An opinion that the government of Chad or CEFC Energy failed to follow what Mr. Walkup considers industry "established practices," (*id.*) has no bearing on that question.

Mr. Walkup's proposed testimony would imply that because, in its negotiations with CEFC Energy, the Chadian government did not adhere to practices that Mr. Walkup has encountered elsewhere, something untoward (a bribe) must have occurred. But the government's position is that the defendant offered a bribe and President Déby did not accept it. (*See id.* at 13-14.) An opinion that the negotiations between Chad and CEFC Energy differed from standard

1

practice would not make it any more or less likely that the unsuccessful bribe attempt described by the government occurred.

Nor would a divergence between the negotiations in Chad and standard practice support, counter to the government's narrative, a conclusion of successful bribery. Mr. Walkup lacks knowledge of Chad specifically and plans to testify about practices "throughout the world." (Walkup Ltr. at 2.) But the government of Chad may negotiate with respect to its natural resources differently than other countries "throughout the world," or even countries "in the region in which Chad is located" (Gov't Opp. at 2, 4) where Mr. Walkup has experience. The differences, if they exist, may be explained by any number of political, cultural, historical or geographic dissimilarities. A discrepancy between the methods selected by the Chadian government to market and allocate its natural resources, and the methods selected elsewhere in the world, could give a false and unwarranted impression to the jury that Chad's methods involving Dr. Ho must have been improper and corrupt.

The cases cited by the government do not suggest that expert testimony regarding practices and procedures utilized by countries other than Chad would be admissible to help the jury understand negotiations with Chad. (*Id.* at 5.) Two of the cases concern the admission of expert testimony about narcotics distribution in the United States, where the defendant was charged with precisely that offense. *United States v. Grady*, 645 F. App'x 1, 3-4 (2d Cir. 2016) (summary order); *United States v. Ginsberg*, 758 F.2d 823, 830 (2d Cir. 1985). Three concern expert testimony on specialized or highly technical aspects of U.S. securities markets, in cases involving such trading in those markets. *United States v. Litvak*, 808 F.3d 160, 181-85 (2d Cir. 2015) (valuation and trading of RMBS); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 680-82 (S.D.N.Y. 2013) (transactions involving synthetic CDOs); *In re Blech Sec. Litig.*, No. 94 Civ.

7696, 2003 WL 1610775, at *19-22 (S.D.N.Y. Mar. 26, 2003) (manipulative trading in the stock brokerage industry). Another involves testimony regarding fair market pricing for securities, which was relevant to the calculation of the plaintiff's damages. *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 522 (S.D.N.Y. 2001). And in *United States v. Bilzerian*, the court excluded testimony regarding how a particular term was "generally understood" in the securities industry, and specifically cautioned against questions "blurring the line between testimony regarding industry practice and an opinion on the legality of defendant's conduct." 926 F.2d 1285, 1295 (2d Cir. 1991).

The government argues at length that Mr. Walkup's testimony should be admitted because CEFC Energy and Dr. Ho were sophisticated and understood that it was inappropriate to "offer a large amount of cash hidden in a box, or a 'donation' to a 'charity' of a government official's choosing." (Gov't Opp. at 6; *see also id.* at 6-8.) The testimony in dispute—Mr. Walkup's opinion on standard approaches to negotiation and bidding—would not help a jury to understand these points.

### B. Mr. Walkup Lacks Expertise Regarding Chad

The defense also moved to exclude Mr. Walkup's proffered testimony about "standard practices and procedures" *in Chad*, because even if such practices were relevant, Mr. Walkup has no experience in or firsthand knowledge about that country. (Gov't Opp. at 4-6.) Mr. Walkup has never worked in Chad or worked with companies doing business in Chad, and he is unqualified to testify about practices used by the government of Chad. (Def. Walkup Br. at 4-6.) The government answers that Mr. Walkup has experience "in the region in which Chad is located." (Gov't Opp. at 8.) Just as someone who has done business with the Canadian government does not thereby become an expert on the United States, Mr. Walkup's experience in other African countries does not render him an expert on Chad.

The government also suggests that Mr. Walkup is qualified to testify because he has reviewed "respected industry publications," which is the "standard practice of anyone who keeps up with market developments." (*Id.* at 9.) The publications listed by Mr. Walkup, however, do not relate to practices and procedures for bidding and negotiation in Chad. They do not describe Chadian energy policy or practices, and do not support a conclusion that energy contracting in Chad conforms to "global" petroleum industry standards. They do not make up for Mr. Walkup's lack of direct experience.

The government uses a strawman analogy to suggest that the defense would object to the testimony of an insurance expert simply because he or she has not "worked at every type and size of company in the market." (*Id.*) That is not the defense's position. It would be more apt to say that an insurance expert who has only ever worked in Turkey, Estonia, and Greece should not be permitted to testify about insurance practices in the United Kingdom, a market in which the expert has no experience. By the same logic, Mr. Walkup should not be permitted to testify regarding the limited matters at issue here—in particular, negotiations surrounding the alleged Chad Scheme—where he has no experience or knowledge of Chad at all, in connection with work for any type or size of company.

The government's authorities cited at page 10 of its brief do not support the admission Mr. Walkup's testimony. In those cases, the expert's proffered testimony was improperly admitted, *Nimely v. City of New York*, 414 F.3d 381, 392-99 (2d Cir. 2005) (reversing judgment where expert's testimony went beyond the field in which he qualified as an expert and went to the credibility of certain witnesses), or was properly admitted, but only where the expert was plainly knowledgeable about issues that were relevant to the jury's deliberations and about which the jury was presumably not knowledgeable. *See, e.g.*, *McCullock v. H.B. Fuller Co.*, 61 F.3d

1038, 1041-44 (2d Cir. 1995) (industrial engineer experienced in ventilation systems qualified to testify about "breathing zone" of fumes, and certified otolaryngologist qualified to testify about throat ailment and its causes); *United States v. Brown*, 776 F.2d 397, 399-400 (2d Cir. 1985) (undercover officer with extensive experience in Harlem who engaged in the undercover sales that were at issue in the case permitted to testify as an expert about Harlem drug sales); *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285-91 (E.D.N.Y. 2007) (physicians permitted to testify on matters helpful to the jury and within their areas of expertise); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458-59 (S.D.N.Y. 2007) (in bench trial, expert who had been qualified as an expert several times before, and who designed and implemented a statistical study for plaintiff, was permitted to testify about that study, even though he had no academic training in statistical sampling, because he had "taken courses in statistical sampling through work and various seminars, . . . has performed statistical sampling in hundreds of surveys throughout his career, and . . . has extensive practical experience in using statistics in litigation."). Finally, in *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76 (2d Cir. 1997), the testimony of a licensed and experienced mechanical engineer was ruled admissible, although he did not have specific expertise in baggage claim area design, because demanding such expertise would have limited the pool of potential experts to those "in the employ of the company or industry whose practices are being challenged." *Id.* at 81. Requiring experience or knowledge of Chad does not present the same concern; it would not, as in *Stagl*, permit those who are "inevitably" on one side of a case to "define what is reasonable." *Id.* In no case that the government cites was an expert permitted to testify about standard contracting practices in a country where he had never worked or even studied, as the government proffers Mr. Walkup would do here.

### C. Testimony Regarding Standard Processes in Uganda Is Irrelevant and Mr. Walkup Is Not Qualified to Give It

The defense understood that Mr. Walkup's testimony would relate principally to the alleged Chad Scheme rather than the alleged Uganda Scheme, and so has focused its argument, in its opening brief and in this reply brief, on the irrelevance of Mr. Walkup's testimony to the Chad Scheme and his disqualifying absolute lack of experience in Chad. In its opposition, however, the government contends that Mr. Walkup's testimony would apply to both alleged schemes. (Gov't Opp. at 4.)

Mr. Walkup's proposed testimony regarding Uganda should be excluded for the same reasons explained above. *See supra* Points I.A-B. However, the proffered testimony would be even more irrelevant and confusing as it relates to Uganda, considering the expected evidence in this case. The defense anticipates that the evidence will not show any actual bidding or negotiation with the government of Uganda for "allocation of petroleum exploration, development, and production rights or licenses." (Walkup Ltr. at 1.) Where no such bidding or negotiation ever occurred, Mr. Walkup's proposed testimony about the customary ways that such bidding would typically take place in the global petroleum industry is irrelevant and likely to confuse the jury. In all events, the key to the Uganda Scheme, just like the Chad Scheme, is whether a bribe was paid, and if so by whom. The standards and practices of the industry are not relevant to that question. Finally, even if such testimony might, in other circumstances, be relevant, Mr. Walkup is not qualified to give it: His resume does not disclose any experience in Uganda.

### D. Mr. Walkup Lacks Expertise Regarding "CSR"

Mr. Walkup is also proffered to testify about "corporate social responsibility" or "CSR." (*Id.* at 3-4.) But he has no experience or knowledge that would make him qualified to testify beyond matters of common knowledge regarding corporate giving. (Def. Walkup Br. at 6-8.)

The government contends that Mr. Walkup will not testify on matters obvious to a lay person, but will explain "*how* energy companies engage in such charitable giving, and how they do so in less-developed countries, in particular." (Gov't Opp. at 12.) That is no answer to the fact that Mr. Walkup does not appear to have any experience whatsoever in this area: He has never been responsible for a company's CSR initiatives, never provided consulting advice in the area of CSR, and never published or presented on CSR. His opinion does not appear to be based on any particular methodology, other than a haphazard review of a smattering of company websites.

In response to the defense's point that Mr. Walkup has no experience or knowledge regarding the practice of CSR by non-Western companies like CEFC Energy, the government also asserts that CEFC Energy has "repeatedly touted that it engaged in CSR" on its website. (*Id.* at 12.) That does not change the fact that Mr. Walkup has no relevant experience and no basis to testify that Chinese companies subscribe to identical "standard practices and procedures" relating to CSR as Western companies do, particularly where he has no background in CSR at all.

### II. THE COURT SHOULD PRECLUDE CHEIKH GADIO FROM CHARACTERIZING THE PAYMENT TO PRESIDENT DÉBY AS A BRIBE OR OTHERWISE OPINING ON DR. HO'S STATE OF MIND OR INTENT

The defense also moved *in limine* to preclude Dr. Gadio from characterizing the payment to President Déby as a bribe or otherwise opining on Dr. Ho's state of mind or intent. Conceding that such testimony would be plainly inadmissible, the government states in its opposition that it

"has no intention of asking [Dr.] Gadio what the defendant understood or was thinking." (*Id.* at 13.) Instead, the government claims that it will limit itself to asking Dr. Gadio what *he* understood about Dr. Ho's state of mind, which it contends is "common and proper." (*Id.*) This is a distinction without a difference. All lay opinions reflect the witness's understanding. If the strictures of Rule 701 could be circumvented merely by framing the lay opinion as the "witness's understanding," then the Rule would be a dead letter. Dr. Gadio's "understanding" of Dr. Ho's state of mind is textbook lay opinion, and it is inadmissible under Rule 701. The probative value of the government's other proffered bases for admitting this testimony is vastly outweighed by the undue prejudice that would result if such improper lay opinion were admitted.

### A. The Government's Proffer of Dr. Gadio's Testimony Includes Lay Opinion

The government previously represented that it would elicit testimony at trial from Dr. Gadio (1) that the payment made to President Déby was an "obvious bribe" and (2) that Dr. Ho "appeared to have no interest in doing charitable works in Chad." (Ltr. to Hon. Loretta A. Preska at 2, Sept. 28, 2018, ECF No. 122.) In its opposition, the government does not appear to defend either of these statements, nor could it plausibly do so. Instead, the government provides a more comprehensive summary of Dr. Gadio's expected testimony (Gov't Opp. at 13-14), most of which appears to be unobjectionable, provided that the testimony arises out of Dr. Gadio's personal observations and matters about which he has direct knowledge.

However, the government's proffer still contains at least two impermissible assertions. First, the government seeks to elicit testimony that when "a CEFC China executive stated [after conferring with Dr. Ho] that the $2 million [in] cash had been a mere 'donation,'" Dr. Gadio "did not believe that." (*Id.* at 14.) Similarly, the government seeks to elicit testimony that Dr. Gadio "understood that the $2 million in cash had been intended to benefit President Déby personally." (*Id.* at 20.) Both statements are impermissible lay opinion. To say that a payment was made is

to report an observable fact. But to imply that the payment was a bribe—which both of these statements do—is to opine that the payor had corrupt intent. There is no way for Dr. Gadio to characterize the payment as a bribe without opining on Dr. Ho's intent.[1]

### B. Dr. Gadio Should Not Be Permitted to Opine on Dr. Ho's State of Mind

Dr. Gadio's proffered testimony regarding the intent behind the payment is inadmissible under Rule 701. His opinion would be neither "rationally based on [his] perception" nor "helpful" to the jury. Fed. R. Evid. 701(a)-(b). It is increasingly clear that Dr. Gadio's opinion is—at least in substantial part—based not on his own perception, but on hearsay. According to the factual proffer in the government's opposition, Dr. Gadio only concluded that the payment to President Déby was a bribe after hearing President Déby and his staff say that the payment had been conveyed in cash. (Gov't Opp. at 13-14.) Rule 701(a) does not permit opinions based on hearsay, but requires "first-hand perceptions." *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007); *see also United States v. Gadson*, 763 F.3d 1189, 1207 (9th Cir. 2014) (observing that lay opinion based on "speculation or hearsay" "is not based on the witness's perception").[2]

Furthermore, Dr. Gadio's proffered testimony about intent would "usurp the jury's role as fact-finder." *Kaplan*, 490 F.3d at 118. Lay opinion testimony regarding a defendant's general knowledge or intent is not "helpful" within the meaning of Rule 701(b), especially when the

---

[1] The government's proffer suggests that it intends to elicit testimony from Dr. Gadio about whether he believed a statement made by yet another individual—identified only as "a CEFC China executive." (Gov't Opp. at 14.) As an initial matter, Dr. Gadio's belief about the intent of someone else is completely irrelevant to the issue of Dr. Ho's intent. Moreover, such testimony would be even further afield from subjects about which Dr. Gadio is qualified to testify.

[2] Additionally, if Dr. Gadio lacks personal knowledge of the payment—which appears to be the case—then he has no business testifying about it at all. If Dr. Gadio's 3500 material confirms that his awareness of the payment arose only based on the hearsay statements of others, then the defense will move to preclude him from testifying about it.

opinion concerns the ultimate issue in the case. (*See* Def. Gadio Br. at 3, ECF No. 130.)³ While Dr. Gadio may properly describe what Dr. Ho "was in a position to observe, what [he] was told, and what [he] said or did," his opinion regarding Dr. Ho's intent is not "helpful" "because the jury will be in as good a position as [Dr. Gadio] to" make that determination. *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992); *see also United States v. Awadallah*, 401 F. Supp. 2d 308, 314-15 (S.D.N.Y. 2005) (observing that "speculation about [the defendant's] state of mind" that is "based solely on what was said to and by [the defendant]" is not "helpful" and is therefore inadmissible under Rule 701), *aff'd*, 436 F.3d 125 (2d Cir. 2006).⁴ The only explanation the government offers for why Dr. Gadio's testimony will be helpful is that his opinion is based on "events that he personally participated in and witnessed." (Gov't Opp. at 16.) As noted in the preceding paragraph, that is not true. His opinion is based largely on hearsay. Furthermore, the government conflates the two requirements of Rule 701. Lay opinion is not automatically "helpful" just because it is based on the witness's first-hand knowledge. The proponent of lay opinion must show that the opinion does something more than just "tell the jury what result to

---

³ In a footnote, the government purports to distinguish "the out-of-circuit cases" that the defense cited in support of this proposition on the ground that the cases involved law enforcement witnesses whose opinions were not based on first-hand knowledge. (*See* Gov't Opp. at 18 n.6.) But like the witnesses in those cases, Dr. Gadio's opinion is based on information of which he appears to lack first-hand knowledge. Furthermore, nothing in those cases suggests that their holdings were intended to be limited to law enforcement witnesses. In fact, two of the cases, which the government notably fails to address, concerned non-law enforcement witnesses. *See United States v. Sanabria*, 645 F.3d 505, 515-16 (1st Cir. 2011); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986).

⁴ The language in *Awadallah* is dicta because, as the government notes, the Court ruled on other grounds. (*See* Gov't Opp. at 18.) *Awadallah* is not, however, helpful to the government's position. In *Awadallah*, Judge Scheindlin made clear that the proffered lay opinion could only be admissible if the government could demonstrate that it was based on something more than just "what was said to and by [the defendant]." 401 F. Supp. 2d at 315. The government has not done that here.

reach." *Rea*, 958 F.2d at 1215 (quoting Fed. R. Evid. 704 Advisory Committee Notes on 1972 Proposed Rules).  The government has not made that showing.

In support of its position, the government cites four cases in which the Second Circuit approved of lay witnesses interpreting the meaning of ambiguous statements in communications to which they were party.  *See United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016), *cert. denied,* 137 S. Ct. 1330 (2017); *United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006); *United States v. Garcia*, 291 F.3d 127, 140-41 (2d Cir. 2002); *United States v. Urlacher*, 979 F.2d 935, 939 (2d Cir. 1992).  The defense mentioned this line of cases in its moving brief (*see* Def. Gadio Br. at 3 (noting that "the Second Circuit has interpreted Rule 701 to permit witnesses to testify regarding their understanding of discrete topics such as the meaning of specific terms or codewords uttered by co-conspirators")) because they illustrate the difference between helpful and unhelpful lay opinion.  In these cases, the lay opinion helped the jury to understand conversations that were otherwise confusing and that the witness was uniquely situated to interpret.  *See, e.g.*, *Urlacher*, 979 F.2d at 939 (approving of the trial judge's decision to "restrict[ ] [the lay opinion] testimony to the explanation of statements or words on the tape that would be ambiguous or unclear to someone who was not a participant in the conversation").  The witnesses were not opining on whether the defendants in those cases had culpable intent, as the government seeks to have Dr. Gadio do in this case.  Such testimony would go far beyond what is helpful, and it is therefore inadmissible under Rule 701.

## C. The Probative Value of the Government's Other Proffered Bases for Admissibility Is Vastly Outweighed by Undue Prejudice to Dr. Ho

The government's argument that Dr. Gadio's lay opinion should be admitted to (1) prevent jury confusion, (2) provide context for other evidence, and (3) allow the government to preemptively impeach Dr. Gadio is meritless.  (*See* Gov't Opp. at 19-21.)  There is no shortage

-11-

of appropriate testimony that the government could elicit to achieve the points it says it wants to make.[5] And the defense is not seeking to have Dr. Gadio say anything that he does not believe. If he is precluded from opining on the intent behind the payment—which he should be—then the jury will be presented with a straightforward recitation of the facts and left to decide Dr. Ho's culpability for themselves. There would be no reason for the jury to assume, based on such a recitation, that Dr. Gadio necessarily credited CEFC Energy's explanation for the payment.

Dr. Gadio's lay opinion is likewise not "necessary to explain adequately and provide context for other evidence" or "to explain the actions that took place" after the payment. (*Id.* at 19-20.) The government professes to be concerned that the jury will be confused about statements that Dr. Gadio made prior to the payment about providing President Déby with "a nice financial package" and "[s]ecret or very confidential financial assistance." (*Id.* at 19 (quoting Compl. ¶¶ 24(a)(ii), 27(b), ECF No. 1).) But any such concerns are unfounded, as the defense is not seeking to preclude Dr. Gadio from explaining his own words.

Similarly, the government's purported fear that Dr. Gadio's testimony will "not make any sense" if Dr. Gadio cannot opine on Dr. Ho's culpability is overstated. (Gov't Opp. at 20.) The government would still be free to elicit testimony regarding "how the defendant and his associates offered" their explanation for the payment (*id.* at 21), and based on that description the jury would be equipped to make its own determination of whether that explanation was false or true. The only thing the defense is seeking to excise from Dr. Gadio's narrative is Dr. Gadio's opinion on the ultimate issue in this case: whether Dr. Ho acted with culpable intent. Leaving

---

[5] For example, the government could elicit from Dr. Gadio that in his prior communications with Dr. Ho he did not intend to solicit a cash payment and that he had no knowledge that a payment would be made at the meetings in Chad in December 2014.

this question to the jury is not an injustice to the government. It is exactly what Rule 701 requires.

The government's argument about its need to explain the circumstances surrounding Dr. Gadio's testimony is a *non sequitur*. (*Id.* at 20-21.) The defense's motion has nothing to do with Dr. Gadio's non-prosecution agreement, and the defense has no objection to the government asking him about it. As the defense explained in its moving brief, the anticipation of potential impeachment by the defense does not justify the government in eliciting testimony regarding Dr. Gadio's understanding of Dr. Ho's motivation for the alleged payment. (*See* Def. Gadio Br. at 6 n.2.) Should the Court grant the defense's motion *in limine*, the defense does not intend to impeach Dr. Gadio regarding his motivation for facilitating President Déby's acceptance of the donation. (*See id.*)

## III. THE OUT-OF-COURT STATEMENTS OF PRESIDENT IDRISS DÉBY MAY NOT BE ADMITTED AS STATEMENTS OF A CO-CONSPIRATOR

The defense also moved to preclude the government from eliciting testimony regarding out-of-court statements allegedly made by President Déby, to the extent that the government contends that they are admissible for the truth of the matter asserted as statements of a co-conspirator. (Def. Déby Br., ECF No. 127.) In response, the government indicates that it will not offer out-of-court statements of President Déby under Rule 801(d)(2)(E). (Gov't Opp. at 23.) As a result, this issue is moot.

The government indicates that it intends to offer evidence of statements made by President Déby and that "the statements it expects to offer are admissible." (*Id.* at 24.) The defense will address any alleged basis for admission of President Déby's out-of-court statements when the government identifies the statements in question and its arguments for their admission.

**Conclusion**

For the reasons stated above and in the defendant's opening briefs, the defendant respectfully requests that the Court (1) exclude the testimony of the government's proposed expert, Gardner Walkup, and (2) exclude testimony of Cheikh Gadio that would characterize the payment to President Déby as a bribe or otherwise opine on the defendant's state of mind.

Dated: November 2, 2018

Respectfully submitted,

By: _/s/ Benjamin E. Rosenberg_
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3622
Fax: (212) 698-3599
andrew.levander@dechert.com
benjamin.rosenberg@dechert.com
katherine.wyman@dechert.com

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel.: (212) 390-9550
Edward.Kim@KKLllp.com
Paul.Krieger@KKLllp.com
Jonathan.Bolz@KKLllp.com
Jon.Bodansky@KKLllp.com

*Attorneys for Chi Ping Patrick Ho*